**Bidding Procedures**

CTB AZ, LLC, an Arizona limited liability company (the "Stalking Horse Bidder") has submitted a Qualified Bid (as defined below) to acquire, directly or indirectly (including through one or more Affiliates (as defined in the Bankruptcy Code)), from Community Provider of Enrichment Services, Inc., an Arizona corporation ("CPES" or "Debtor") substantially all of the assets owned by the Debtor (the "Purchased Assets"), as set forth more fully in, and pursuant to the terms and conditions of, the Asset Purchase Agreement dated September 3, 2020 between the Stalking Horse Bidder and Debtor (the "Stalking Horse Agreement") and related documents and agreements (the "Stalking Horse Bid").[1] As approved by the Bidding Procedures Order dated _____, 2020 (the "Bidding Procedures Order"), the following procedures shall govern any competing bids that may be made with respect to the Purchased Assets (the "Bidding Procedures"):

1) ***Participation Requirements and Due Diligence***

    a) To participate in the bidding process, the auction for a Proposed Transaction (as defined below), if any (the "Auction"), or otherwise be considered for any purpose hereunder, a person or entity interested in acquiring the Purchased Assets (each, a "Potential Bidder") must first deliver the following materials to the Debtor and its advisors:

        i) An executed confidentiality agreement in form and substance acceptable to the Debtor and its advisors (the "Confidentiality Agreement") (to be delivered prior to the distribution of any confidential information by the Debtor to any Potential Bidder), whereby the Potential Bidder agrees that all non-public information about the Debtor received by a Potential Bidder will be kept strictly confidential in accordance therewith and used only in connection with analyzing a proposed transaction (a "Proposed Transaction") for the purchase of the Purchased Assets pursuant to section 363 of the Bankruptcy Code.

        ii) Written evidence that enables the Debtor and its advisors to reasonably determine whether a Potential Bidder has the financial and other ability to close a Proposed Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed in connection therewith.

        iii) Full disclosure of whether the Potential Bidder and any members of its investor group, if applicable, or any equity holders in the case of a Potential Bidder which is an entity specially formed for the purpose of effectuating a Proposed Transaction, has any connections or relationships (business or otherwise) to, or agreements or understandings with, the Debtor or any of its Affiliates and/or any officer, director or equity security holder of the Debtor or any of its Affiliates and, if so, the complete nature of such connections or relationships and the complete terms of such agreements or understandings.

    b) The Debtor or its advisors shall post in the Debtor's electronic data room (the "Data Room") these Bidding Procedures, together with a WORD copy of the Stalking Horse Agreement (as approved by the Bankruptcy Court pursuant to the Bidding Procedures

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Stalking Horse Agreement.

{0006244.0000/01124021.DOCX / 3}

ACTIVE.124842240.04

Order as the "stalking horse" bid for the Purchased Assets). All Potential Bidders, whether deemed Qualified Bidders (as defined below) or not, consent to the jurisdiction of the Bankruptcy Court to determine matters concerning a Proposed Transaction and their bids (each, a "<u>Bid</u>") (whether or not one is made), the Auction, or the marketing process generally and waive any right to any other venue.

c) Any qualified Potential Bidder wishing to conduct due diligence concerning a Proposed Transaction shall be granted (subject to execution and delivery of the required Confidentiality Agreement) (i) reasonable access to the Debtor's management during normal business hours and (ii) access to all relevant information regarding the business of the Debtor and its Affiliates reasonably necessary to enable a Potential Bidder to evaluate a Proposed Transaction. The Debtor shall make such document access available to Potential Bidders through the Data Room as soon as reasonably practicable following (x) execution of the Confidentiality Agreement and (y) the Potential Bidder's provision of preliminary proof of its financial capacity to close a Proposed Transaction. Potential Bidders interested in conducting due diligence should contact Jeffrey R. Manning, CohnReznick Capital, 500 East Pratt Street, Ste. 400 Baltimore MD. 21202, 410-690-8788, [jeff.manning@cohnreznickcapital.com](mailto:jeff.manning@cohnreznickcapital.com). Notwithstanding the foregoing, CohnReznick Capital is not required to provide confidential, business-sensitive or proprietary information to any person or entity if the Debtor reasonably believes that such disclosure would be detrimental to the interests of the Debtor's estate. All due diligence must be completed before the Bid Deadline (as defined below). No condition(s) allowing or regarding further due diligence after the Bid Deadline will be permitted in any Bid unless otherwise determined by the Debtor, provided that the Debtor shall continue to provide due diligence to the Stalking Horse Bidder. Potential Bidders are required to exercise their own discretion before relying on any information provided by the Debtor regarding a Proposed Transaction. Neither the Debtor nor its representatives or advisors (X) are responsible for, or will bear any liability with respect to, any information obtained by Potential Bidders pursuant hereto and (Y) shall be obligated to furnish any information of any kind whatsoever to any person or entity that is not a Potential Bidder.

d) The Debtor and its advisors shall, in their reasonable discretion: (i) receive and evaluate any Bids from Potential Bidders; (ii) negotiate offers made to purchase the Purchased Assets; (iii) request information from Potential Bidders, engage in discussions with Potential Bidders, and take such other actions to determine whether any Bid constitutes or could lead to a Qualified Bid; and (iv) take any other actions contemplated under these Bidding Procedures.

2) *Submission of Bids*

a) Any Potential Bidder interested in a Proposed Transaction must submit a Bid prior to 4:00 p.m. prevailing Pacific Time on [_____], 2020 (or such later date and time as the Debtor may announce, subject to the terms of the Stalking Horse Agreement) (the "<u>Bid Deadline</u>"). In order for a Bid to be considered, it must be a "Qualified Bid". A Potential Bidder will be deemed to be a "<u>Qualified Bidder</u>" if the Debtor and its advisors, in their sole discretion, determine that such Potential Bidder submitted a Qualified Bid. For the

avoidance of doubt, the Stalking Horse Bidder is deemed a Qualified Bidder and may, but is not required to, participate in the Auction. The Stalking Horse Bid is a Qualified Bid.

b) A Bid, other than the Stalking Horse Bid, will be considered a "Qualified Bid" only if the Bid (w) is in writing; (x) is for an acquisition of all or substantially all of the Purchased Assets (an "All Assets Bid") pursuant to a purchase agreement in the form of the Stalking Horse Agreement that contains substantially all of the terms and conditions contained in the Stalking Horse Agreement (except for an increased purchase price) and otherwise contains terms no less favorable to the Debtor's estate than the Stalking Horse Agreement, as determined by the Debtor, and (y) fulfills, inter alia, at a minimum, the following requirements prior to the Bid Deadline:

i) Provides that the Bid shall remain irrevocable until the consummation of the Proposed Transaction (the "Effective Date") implementing the Winning Bid(s) or the Backup Bid(s) (each, as defined below) (such date, the "Bid Expiration Date");

ii) Is made by a person or entity that reasonably demonstrates evidence of fully committed and unconditional financing for such Bid and other ability to consummate the applicable Proposed Transaction, in each case solely as acceptable to the Debtor;

iii) Provides written evidence, in form and substance reasonably satisfactory to the Debtor, that the Potential Bidder has obtained authorization and approval from the Potential Bidder's board of directors (or comparable governing body) or, if required, the equity holders of the Potential Bidder, with respect to the submission of its Bid and the execution, delivery, performance and closing of the agreements associated therewith, or a representation that no such authorization or approval is required;

iv) Provides that the total consideration for all of the Purchased Assets in the aggregate will be an amount or value equal to or greater than $500,000 (such sum, the "Initial Overbid Amount"), and otherwise has a value to the Debtor, in the exercise of its reasonable business judgment, after consultation with its advisors, that is greater or otherwise better than the value offered under the Stalking Horse Agreement; or (2) such other combination of cash, assumed liabilities and/or excluded assets that, in the Debtor's determination, exceeds the value of the Stalking Horse Agreement to the Debtor.

v) Is accompanied by, or is followed prior to the Bid Deadline by, a wire transfer of immediately available funds to an escrow agent designated by the Debtor at least two business days before the Bid Deadline (the "Escrow Agent") of an earnest money cash deposit of not less than ten percent (10%) of the total purchase price proposed by the competing Bid (a "Good Faith Deposit");

vi) Provides written evidence satisfactory to the Debtor that the Potential Bidder or group of Potential Bidders has existing experience, expertise, and sophistication in managing and providing behavior healthcare services for organizations of similar size. The Potential Bidder must be reasonably likely to obtain prompt regulatory approval from

  DDD and any other regulatory body that might be required to approve the Proposed Transaction prior to closing;

vii) Is submitted in the form of a legally binding purchase agreement, together with such exhibits, schedules, annexes, appendices and attachments thereto as required by the Debtor in their reasonable discretion and all in the form of those documents used in the Stalking Horse Agreement, fully executed by the Potential Bidder in a clean copy and accompanied by a redlined version of all such documents, marked to show the proposed changes from the Stalking Horse Agreement and applicable exhibits, schedules, annexes, appendices and attachments thereto, that further:

  (1) Fully discloses the identity of the Potential Bidder and any members of its investor group, if applicable, or any equity holders in the case of a Potential Bidder which is an entity specially formed for the purpose of effectuating the Proposed Transaction, and whether any such person or entity is an insider (as defined in section 101 of the Bankruptcy Code) of the Debtor;

  (2) Is not subject to any conditions, representations, or terms that the Debtor determines to be unacceptable;

  (3) Describes with specificity the total consideration proposed to be paid for the Purchased Assets;

  (4) Is not conditioned upon the Bankruptcy Court's approval of, and includes an express acknowledgement and representation that the Potential Bidder is not entitled to, any Bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment in connection with its Bid;

  (5) Is not conditioned upon tax or other due diligence or the receipt of financing;

  (6) Does not contain any condition to closing of a Proposed Transaction relating to the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approval or third party consents required under the Stalking Horse Agreement);

  (7) Expressly acknowledges and represents that the Potential Bidder: (A) has had an opportunity to conduct any and all due diligence regarding the Debtor (as defined in the Stalking Horse Agreement) and the applicable Proposed Transaction prior to making its Bid, (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Debtor in making its Bid, and (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets, the business of the Debtor or the Proposed Transaction, or the completeness or accuracy of any information provided in connection therewith or with the Auction, except as expressly stated in the representations

and warranties contained in the purchase agreement ultimately accepted and executed by the Debtor;

(8) Identifies with particularity each and every executory contract and unexpired lease that the Potential Bidder desires the Debtor to assume and assign at the closing and provides evidence of such Potential Bidder's ability to provide adequate assurance of future performance to counterparties to such contracts or leases to be assumed (as required by section 365(b)(1)(C) of the Bankruptcy Code) along with the Bid, which shall include: (i) the Potential Bidder's most recent audited financial statements (or unaudited, if audited financials are not available); and (ii) financial projections or financial pro-formas for the Potential Bidder (collectively, the "Adequate Assurance Information");[2]

(9) States that the Potential Bidder consents to the jurisdiction of the Bankruptcy Court;

(10) Includes a commitment to close the applicable Proposed Transaction within the timeframe contemplated by the Stalking Horse Agreement; and

(11) Contains such other information reasonably requested by the Debtors and its advisors;

viii) Provides that the Potential Bidder agrees to serve as a Backup Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or otherwise best bid (or one of a combination of Qualified Bids) after the Winning Bid;

ix) Sets forth the representatives who are authorized to appear and act on behalf of the Potential Bidder at the Auction;

x) Contains written confirmation that the Potential Bidder has not engaged in any collusion with respect to the bidding or the sale process; and

xi) Represents that the Bid constitutes a good faith, *bona fide* offer to effectuate the Proposed Transaction.

c) A Potential Bidder that desires to make a Bid must deliver written electronic copies of its Bid prior to the Bid Deadline to (x) the Debtor, Mark Monson, President/CEO, 4805 Speedway Blvd, Tucson, Arizona, 85712, 520-495-6203, mmonson@cpes.com and (y) the following representatives of the Debtor: (i) Faegre Drinker Biddle & Reath LLP, Vincent P. Slusher, Esq., 1717 Main Street, Suite 5400, Dallas, Texas 75201, 469-357-2500; vince.slusher@faegredrinker.com; and (ii) Jeffrey R. Manning, CohnReznick Capital, 500

---

[2] By submitting a Bid, Potential Bidders agree that the Debtor may disseminate its Adequate Assurance Information to affected contract and lease counterparties in the event the Debtor determines such Bid to be a Qualified Bid.

East Pratt Street, Ste. 400 Baltimore MD. 21202, 410-690-8788, jeff.manning@cohnreznickcapital.com.

d) Promptly after the Bid Deadline, the Debtor shall determine, in consultation with its advisors, and notify each Potential Bidder whether such Potential Bidder has submitted acceptable Bid documents such that it is deemed a Qualified Bidder.

e) A Qualified Bid will be valued based upon several factors including, without limitation: (i) the amount of such Bid; (ii) the form of consideration of such Bid; (iii) the risks and timing associated with consummating such Bid; (iv) any proposed revisions to the Stalking Horse Agreement (including any additional conditions to closing); and (v) any other factors deemed relevant by the Debtor including, without limitation, those factors identified in in Section 2(a) of these Bidding Procedures.

f) After the Bid Deadline, the Debtor shall determine which Qualified Bid represents the then-highest or otherwise best bid (the "Initial Highest Bid" and the person(s) or entit(y)(ies) submitting such Bid, collectively, the "Initial Highest Bidder") for the Purchased Assets, taking into account the factors that may be considered by the Debtor under Section 2(b) of these Bidding Procedures. At least one business day prior to the Auction, each Qualified Bidder that timely submitted a Qualified Bid will be advised of such Initial Highest Bid and, to the extent not previously received, shall receive from the Debtor copies of such Initial Highest Bid.

g) If a Qualified Bid for fewer than all of the Purchased Assets is submitted by the Bid Deadline or during the Auction with a proposed purchase price of at least the Initial Overbid Amount plus any applicable Minimum Bid Increment(s), the Stalking Horse Bidder may amend its Qualified Bid to encompass only the assets included in such Qualified Bid.

3) *Due Diligence From Potential Bidders or Qualified Bidders*

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtor or its advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with a Proposed Transaction. Failure by a Potential Bidder to comply with reasonable requests for additional information may be a basis for the Debtor and its advisors to determine that a Potential Bidder is not a Qualified Bidder. Similarly, each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtor or its advisors regarding such Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with a Proposed Transaction as the Auction progresses. Failure by a Qualified Bidder to comply with reasonable requests for additional information may be a basis for the Debtor and its advisors to determine that the Qualified Bidder may no longer participate in the Auction. Other than the Stalking Horse Bidder and the Stalking Horse Bid, the Debtor may disqualify any Qualified Bidder and Qualified Bid from participation in the Auction in the Debtor' discretion.

4) *"As Is, Where Is"*

The sale and transfer of the Purchased Assets shall be without representations or warranties of any kind, nature or description by the Debtor, its advisors, agents or estates or any other party, except to the extent set forth in the purchase agreement between the Debtor and the Winning Bidder(s).  Except as otherwise provided in the purchase agreement between the Debtor and the Winning Bidder(s), the Purchased Assets shall be sold and transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests therein (collectively, the "Claims") pursuant to section 363(f) of the Bankruptcy Code.

5) **The Auction**

   a) If one or more Qualified Bids has been submitted for the Purchased Assets in accordance with these Bidding Procedures, the Debtor will conduct an Auction **on [          ], 2020, at [          ] prevailing Pacific time** (or such later time as the Debtor shall timely notify the Auction Participants (as defined below)), with respect to such Qualified Bids in order to determine the Winning Bid(s) and the Backup Bid(s) to submit for approval by the Bankruptcy Court.  The Auction shall be organized and conducted by the Debtor at the offices of its counsel, Faegre Drinker Biddle & Reath LLP, 1800 Century Park East, Suite 1500, Los Angeles, California 90067 or such other location (including a virtual location) as may be announced prior to the Auction to the Auction Participants.  The Auction will be recorded by stenographic means by an authorized court reporter.

   b) The only persons or entities who will be permitted to Bid at the Auction are the authorized representatives of each Qualified Bidder and of any otherwise Qualified Bidder identified by the Debtor pursuant to Section 2(h) of these Bidding Procedures (the "Auction Participants").  While only the Auction Participants may make Qualified Bids at the Auction, the Auction may be attended and viewed also by (i) the Debtor; (ii) the United States Trustee; (iii) CohnReznick; (iv) any statutory committee appointed in the Debtor's chapter 11 case or, if no such committee is appointed, the entities holding the twenty largest unsecured claims against each Debtor's estate in this chapter 11 case, and (v) all Qualified Bidders, and their respective advisors and/or other authorized representatives.  Any such person wishing to attend the Auction may do so by contacting, no later than three (3) days prior to the start of the Auction, Faegre Drinker Biddle & Reath LLP, Kaitlin W. MacKenzie, 222 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, 302-467-4200, kaitlin.mackenzie@faegredrinker.com.

   c) Each Qualified Bidder shall be required to confirm on the record that it has not engaged in any collusion with respect to the marketing process or the Proposed Transactions, including communicating with other Potential Bidders during the Auction, concerning any aspect of the Auction or bidding without the consent of the Debtor on the record of the Auction.

   d) The Auction shall be conducted by the Debtor in accordance with such procedures and requirements as may be established at the discretion of the Debtor and its advisors to result in the highest or otherwise best offer for the Purchased Assets, which rules shall be announced prior to commencement of the Auction and may include the determination of the amount of time between Qualified Bids, the conducting of multiple rounds of open

bidding, and to declare that the Auction has ended when no further Bids are timely made or otherwise. The Debtor may, after consultation with its advisors, from time to time waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are: (i) not inconsistent with the Bidding Procedures Order, the Stalking Horse Agreement, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of the Bankruptcy Court, or any order of the Bankruptcy Court entered in connection with the Debtor's chapter 11 case and (ii) disclosed to each Qualified Bidder. Subject to the Debtor' fiduciary duties as Debtor and debtor-in-possession, the Debtor will present and request Bankruptcy Court approval of the Winning Bid(s) (as defined below) from the Auction at the Sale Hearing (as defined below).

e) With respect to the Purchased Assets, the first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidder for the applicable assets in the amount of the Initial Highest Bid. Thereafter, the Auction will continue in the manner determined by the Debtor above; provided, however, (i) additional Bids must be Qualified Bids (except that subsequent Qualified Bids made at the Auction by a Qualified Bidder need not be received by the Bid Deadline) and (ii) additional Qualified Bids must be made in higher increments of at least $25,000 in cash above the immediately preceding Bid (the "Minimum Bid Increment"). The Debtor may modify the Minimum Bid Increment from time to time as necessary to the extent the Debtor deems appropriate, which modification (if any) will be announced on the record at the Auction.

f) The Debtor shall determine whether a Qualified Bid by a Qualified Bidder at the Auction is higher or otherwise better than the prior Qualified Bid.

g) At the conclusion of the Auction, the Debtor, in the exercise of its reasonable, good faith business judgment, shall select the highest or otherwise best Bid or Bids (the "Winning Bid(s)") and the second highest or otherwise best Bid or Bids (the "Backup Bid(s)") that, in the exercise of their fiduciary duties, the Debtor in good faith believe are in the best interests of the Debtor's estate and stakeholders, which will be determined by considering, among other things:

   i) the total expected consideration to be received by the Debtor;

   ii) the likelihood of the Qualified Bidder's or Qualified Bidders' ability to close the Proposed Transaction and the timing thereof;

   iii) the ability of each Qualified Bidder to satisfy necessary regulatory approvals and the timing for obtaining such; and

   iv) the expected net benefit to the Debtor's estate, including enhanced treatment of the Debtor's creditors and other parties in interest.

In addition, at the conclusion of the Auction, the Debtor shall: (i) notify the Qualified Bidder(s) that made the Winning Bid(s) (the "Winning Bidder(s)") that such Bid or Bids have been determined by the Debtor to be the Winning Bid(s), subject only to Bankruptcy Court approval; (ii) notify the Qualified Bidder(s) that made the Backup Bid(s) (the

"Backup Bidder(s)") that such Bid has been determined by the Debtor to be the Backup Bid(s), subject only to Bankruptcy Court approval; and (iii) file a notice with the Bankruptcy Court announcing the Winning Bidder(s) and Backup Bidder(s) and approval of the same at a hearing to consider approval of the sale of the Purchased Assets (the "Sale Hearing").  Prior to the commencement of the Sale Hearing, the Winning Bidder(s) shall, collectively (X) provide, by wire transfer of immediately available funds, to the Escrow Agent an additional earnest money cash deposit of not less than an additional five percent (5%) of the total value of the purchase price of the Winning Bid(s), or, in the case of Backup Bid(s), an additional earnest money cash deposit of not less than an additional five percent (5%) of the total value of the purchase price for the Backup Bid(s), and (Y) complete and sign all agreements and documents as necessary to bind the Winning Bidder(s) to all of the terms and conditions contemplated by the Winning Bid(s).  The Stalking Horse Bidder has the option, but is not obligated, to increase its Bid at the Auction. In the event the Stalking Horse Bidder is not selected as the Winning Bidder and is not the Backup Bidder for the Purchased Assets at the conclusion of the Auction, its Good Faith Deposit shall be returned to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Agreement and the escrow agreement among the Stalking Horse Bidder, the Debtor and the escrow agent (the "Stalking Horse Deposit Escrow Agreement").

h) The Backup Bid(s) shall remain irrevocable until the Effective Date or the Bid Expiration Date.

i) If Debtor does not receive any Qualified Bids for the Purchased Assets other than the Stalking Horse Bid by the Bid Deadline , the Debtor shall not hold an Auction; the Stalking Horse Agreement shall be deemed the Winning Bid with respect to the Purchased Assets, and the Debtor shall seek approval of a sale of the Purchased Assets to the Stalking Horse Bidder at the Sale Hearing.

j) The Good Faith Deposit(s) of the Winning Bidder(s) shall be applied by the Debtor against the purchase price to be paid by the Winning Bidder(s) or held by the Debtor and forfeited, as the case may be, in accordance with the terms of the purchase agreement(s) associated with the Winning Bid(s).

k) The Debtor shall not be deemed to have finally accepted any Qualified Bid(s) unless and until such Qualified Bid(s) and the Debtor's acceptance thereof have been authorized by order of the Bankruptcy Court following the conclusion of the Sale Hearing.

6) **Sale Hearing**

A hearing to consider approval of the Winning Bid(s) and Backup Bid(s) (if any) will take place at a Sale Hearing, which will be held on [_____], 2020 at [_____] (prevailing Pacific Time), which may be adjourned (subject to the terms of the Stalking Horse Agreement, if applicable) to a later date by the Debtor by filing a notice of adjournment or making an announcement at the hearing.  No further notice of any such continuance will be required to be provided to any party.

7) *Good Faith Deposit(s)*

No later than three (3) business days after the Auction, the Debtor (or the Escrow Agent) shall return to each Qualified Bidder(s) other than the Winning Bidder(s) and the Backup Bidder(s) their respective Good Faith Deposit(s). If a Winning Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Winning Bidder, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Winning Bidder, which may be retained by the Debtor as liquidated damages, in addition to any and all rights, remedies and/or causes of action that may be available to the Debtor at law or in equity, and, the Debtor shall be free to consummate the applicable Proposed Transaction with the applicable Backup Bidder, without the need for an additional hearing or order of the Bankruptcy Court. Notwithstanding any provision hereof, the terms pertaining to (a) any good faith deposit submitted by the Stalking Horse Bidder pursuant to the Stalking Horse Agreement (including, without limitation, the entitlements of the Stalking Horse Bidder and Debtor to such good faith deposit and the timing of return of any good faith deposit to the Stalking Horse Bidder) and (b) any rights, remedies and causes of action of the Stalking Horse Bidder and the Debtor against one another shall be governed by the terms of the Stalking Horse Agreement, the Stalking Horse Deposit Escrow Agreement and the Bidding Procedures Order.

8) *Bid Protections*

   a) In recognition of the expenditure of time, energy, and resources, and because the agreement to make payment thereof is necessary to preserve the value of each of the Debtor's estate, the Debtor has agreed that, among other triggering events, if the Stalking Horse Bidder is not the Winning Bidder for the Purchased Assets, then the Debtor will pay the Stalking Horse Bidder, pursuant to and in accordance with the terms of the Stalking Horse Agreement the Break-up Fees (as defined therein, the "Break-up Fees"). The Break-up Fees shall be payable as provided for pursuant to the terms of the Stalking Horse Agreement, and nothing herein shall be deemed to limit or otherwise modify the terms thereof.

   b) Except for the Stalking Horse Bidder, no Qualified Bidder or other party submitting a bid shall be entitled to any expense reimbursement, break-up fee, termination or other similar fee or payment.

9) *Miscellaneous*

   a) The Auction and the Bidding Procedures are solely for the benefit of the Debtor and the Stalking Horse Bidder, and nothing contained in the Bidding Procedures Order, the Bidding Procedures or the Stalking Horse Agreement shall create any rights in any other person or bidder (including, without limitation, rights as third-party beneficiaries or otherwise) other than the rights expressly granted to the Winning Bidder(s) under the Bidding Procedures Order.

   b) Notwithstanding anything herein to the contrary, the Debtor reserves its rights to modify these Bidding Procedures in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction but not prior to the Bid Deadline, additional

customary terms and conditions on the applicable Proposed Transaction; <u>provided however</u>, that the Debtor may not modify the Break-up Fees or other bid protections afforded to the Stalking Horse Bidder in accordance with the Stalking Horse Agreement or otherwise modify these Bidding Procedures in a manner that would adversely affect the Stalking Horse Bidder, unless agreed in writing by the Stalking Horse Bidder.  For the avoidance of doubt, the Debtor may not modify the rules, procedures, or deadlines set forth herein, or adopt new rules, procedures, or deadlines that would impair in any material respect the Stalking Horse Bidder's right to payment of the Break-up Fees or otherwise adversely affect the Stalking Horse Bidder without the express written consent of the Stalking Horse Bidder. All such modifications and additional rules will be communicated to each of the Potential Bidders and Qualified Bidders (including the Stalking Horse Bidder) or announced at the Auction.

c) The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to implementation of the Bidding Procedures Order.