| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Jennifer C. Kalvestran (CA 242157)<br>Sean P. O'Brien (AZ 010540) (Admitted Pro Hac Vice)<br>Robert C. Williams (AZ 033213) (Admitted Pro Hac Vice)<br>GUST ROSENFELD, PLC<br>11900 W. Olympic Boulevard, Suite 800<br>Los Angeles, CA 90064<br>Tel: (310) 620-3083<br>Tel: (602) 257-7460<br>Fax: (602) 254-4878<br>E-Mail: jkalvestran@gustlaw.com<br>E-Mail: spobrien@gustlaw.com<br>E-Mail: rwilliams@gustlaw.com<br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Arizona Dept. of Economic Security | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

| In re:<br><br>Community Provider of Enrichment Services, Inc. d/b/a/ CPES Inc., et al.,<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 9:20-bk-10554-DS<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(ACTION IN NONBANKRUPTCY FORUM)** |
| | DATE: 09/14/2020<br>TIME: 11:30 am<br>COURTROOM: 201 |

**Movant**: Arizona Department of Economic Security, Division of Developmental Disabilities ("DES/DDD").

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☒ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                      Page 1                          **F 4001-1.RFS.NONBK.MOTION**

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☐ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☒ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☒ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  09/10/2020

Gust Rosenfeld, PLC
Printed name of law firm (if applicable)

Sean P. O'Brien, Attorney for Movant
Printed name of individual Movant or attorney for Movant

/s/ Sean P. O'Brien
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a.  ☐  Plaintiff

   b.  ☐  Defendant

   c.  ☒  Other (*specify*):  DES/DDD a government agency of the State of Arizona.

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a.  *Name of Nonbankruptcy Action*: DES/DDD's enforcement of its police and regulatory powers.

   b.  *Docket number*: N/A

   c.  *Nonbankruptcy forum where Nonbankruptcy Action is pending*:
       The State of Arizona

   d.  Causes of action or claims for relief (Claims):
       DES/DDD's enforcement of its police and regulatory powers pursuant to 11 U.S.C. § 362(b)(4).  Alternatively, limited relief from the 11 U.S.C. § 362 automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1).

3. **Bankruptcy Case History:**

   a.  ☒  A voluntary  ☐ An involuntary   petition under chapter    ☐ 7  ☒ 11  ☐ 12  ☐ 13
       was filed on (*date*)  04/24/2020  .

   b.  ☐  An order to convert this case to chapter   ☐ 7  ☐ 11  ☐ 12  ☐ 13
       was entered on (*date*) _____.

   c.  ☐  A plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a.  ☐  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b.  ☐  Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c.  ☐  Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d.  ☐  The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e.  ☒  The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                          Page 3                          **F 4001-1.RFS.NONBK.MOTION**

f. ☐ The bankruptcy case was filed in bad faith.

    (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

    (2) ☐ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

    (3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

    (4) ☐ The Debtor filed only a few case commencement documents.  No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g. ☒ Other (*specify*):
DES/DDD's enforcement of its police and regulatory powers pursuant to 11 U.S.C. § 362(b)(4) to complete the operational transition of members residing in Group Homes oeprated by CPES AZ.

5. **Grounds for Annulment of Stay.**  Movant took postpetition actions against the Debtor.

a. ☐ The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

c. ☐ Other (*specify*):


6. **Evidence in Support of Motion:  (*Important Note:  declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)**

a. ☒ The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

d. ☒ Other evidence (*specify*):
Memorandum of Points and Authorities, Qualified Vendor Agreement Section 6, DES/DDD Managed Care Contract with AHCCCS, Arizona Revised Statutes, and the Arizona Administrative Code.

7. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☐ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 4                        **F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☒ Other relief requested.

Date: __09/10/2020__

Gust Rosenfeld, PLC
_____
Printed name of law firm (*if applicable*)

Sean P. O'Brien, Attorney for Movant
_____
Printed name of individual Movant or attorney for Movant

/s/ Sean P. O'Brien
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 5                                    **F 4001-1.RFS.NONBK.MOTION**

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (*name of Declarant*) <u>Nicolette Fidel</u>, declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding (Nonbankruptcy Action) because:

    ☐ I am the Movant.
    ☐ I am Movant's attorney of record in the Nonbankruptcy Action.
    ☒ I am employed by Movant as (*title and capacity*): Assistant Director, Network Operations
    ☐ Other (*specify*):

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

3. In the Nonbankruptcy Action, Movant is:

    ☐ Plaintiff
    ☐ Defendant
    ☒ Other (*specify*): DES/DDD a government agency of the State of Arizona.

4. The Nonbankruptcy Action is pending as:

    a. *Name of Nonbankruptcy Action*: DES's enforcement of its police and regulatory powers.
    b. *Docket number*: N/A
    c. *Nonbankruptcy court or agency where Nonbankruptcy Action is pending*:
       The State of Arizona.

5. **Procedural Status of Nonbankruptcy Action**:

    a. The Claims are:
       DES/DDD's enforcement of its police and regulatory powers pursuant to 11 U.S.C. § 362(b)(4) to complete the transition of members residing in Group Homes oeprated by CPES AZ, pursuant to Arizona Law, including, without limitation, transitioning the members to Qualified Vendors.  Alternatively, limited relief from the 11 U.S.C. § 362 automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1).

    b. True and correct copies of the documents filed in the Nonbankruptcy Action are attached as Exhibit _____.

    c. The Nonbankruptcy Action was filed on (*date*) _____.

    d. Trial or hearing began/is scheduled to begin on (*date*) _____.

    e. The trial or hearing is estimated to require _____ days (*specify*).

    f. Other plaintiffs in the Nonbankruptcy Action are (*specify*):
       N/A

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 6                        **F 4001-1.RFS.NONBK.MOTION**

g. Other defendants in the Nonbankruptcy Action are (*specify*):

N/A

6. **Grounds for relief from stay:**

a. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.  The insurance carrier and policy number are (*specify*):

d. ☐ The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

(1) ☐ It is currently set for trial on (*date*) _____.

(2) ☐ It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____.  The basis for this belief is (*specify*):

(3) ☐ The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e. ☐ The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

(1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

(2) ☐ The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):

(3) ☐ Multiple bankruptcy cases affecting the Property include:

(A) Case name:
Case number:                          Chapter:
Date filed:          Date discharged:          Date dismissed:
Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(B)  Case name:
     Case number:                         Chapter:
     Date filed:             Date discharged:          Date dismissed:
     Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

(C)  Case name:
     Case number:                         Chapter:
     Date filed:             Date discharged:          Date dismissed:
     Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

     ☐  See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

     ☐  See attached continuation page for additional facts establishing that this case was filed in bad faith.

f.   ☒  See attached continuation page for other facts justifying relief from stay.

7.  ☐  Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a.  ☐  These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b.  ☐  Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

c.  ☐  For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

09-10-2020    Nicolette Fiche                       _NFiche_
_____  _____       _____
Date                  Printed name                       Signature

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                             Page 8                       F 4001-1.RFS.NONBK.MOTION

**CONTINUATION PAGE RE: NICOLETTE FIDEL
DECLARATION RE ACTION IN NONBANKRUPTCY FORUM**

1.      Movant requests immediate confirmation that it may take all actions necessary to complete the timely operational transition for members residing in group homes operated by CPES AZ—pursuant to Arizona law—including, without limitation, transitioning the members to DDD contracted Qualified Vendors in order to minimize the transitional impact on those members who are wholly dependent upon DES/DDD services.

2.      Importantly, Movant does not seek, by this relief, to usurp CPES AZ's ability to sell its assets or assume and assign its leases as part of its Chapter 11 bankruptcy proceedings subject to Bankruptcy Court approval.  CPES AZ will be able to negotiate directly with the DES/DDD approved Qualified Vendor(s) who are ultimately awarded the authorizations from the DDD to render residential services to the Group Home members, based on member choice.  In fact, it is anticipated and contemplated as being in the best interests of the members.

3.      Alternatively, Movant requests limited relief from the 11 U.S.C. § 362(a) automatic stay for cause, to permit DES/DDD to take all necessary actions to complete the timely operational transition of the members residing in group homes operated by CPES AZ, in accordance with Arizona law, including, without limitation, transitioning the Group Home members to contracted Qualified Vendors in order to minimize the transitional impact to the members wholly dependent upon DES/DDD services.

4.      Movant's Motion is additionally supported by a Memorandum of Points and Authorities, the Declaration of Nicolette Fidel, the Declaration of Carol Kachidurian, the Qualified Vendor Agreement Section 6: DES/DDD Standard Terms and Conditions for Qualified Vendors, the DES/DDD managed care contract with the Arizona Health Care Cost Containment System (AHCCCS), Arizona's Medicaid agency, filed

3889974.2  9/9/2020

1

1  concurrently with DES/DDD's Notice of Motion and Motion for Relief from the

2  Automatic Stay Under 11 U.S.C. § 362 (Action In Nonbankruptcy Forum), together with

3  the Arizona Revised Statutes, the Arizona Administrative Code, and all matters of record

4  and such other evidence, oral or documentary, as may be presented by DES/DDD at any

5  hearing on its Motion.

6        5.    I declare under penalty of perjury under the laws of the United States that

7  the forgoing is true and correct.

8        Executed this 10th day of September, 2020.

9

10                                          By: _____

11                                              Nicolette Fidel
                                                Assistant Director, Network Operations
12                                              Arizona Department of Economic Security,
                                                Division of Developmental Disabilities

13

14

15

16

17

18

19

20

21

22

23

24

25

26

3889974.2  9/9/2020

2

Jennifer C. Kalvestran - CA Bar #242157
Sean P. O'Brien - AZ Bar #010540
*Admitted Pro Hac Vice*
Robert C. Williams – AZ Bar #033213
*Admitted Pro Hac Vice*
**GUST ROSENFELD, PLC**
11900 W. Olympic Boulevard, Suite 800
Los Angeles, CA 90064
Tel: (310) 620-3083
Tel: (602) 257-7460
Fax: (602) 254-4878
E-Mail: jkalvestran@gustlaw.com
E-Mail: spobrien@gustlaw.com
E-Mail: rwilliams@gustlaw.com
Attorneys for the ***Arizona Department
of Economic Security, Division of Developmental Disabilities***

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION**

| | |
|---|---|
| In re: | Lead Case No. 9:20-bk-10554-DS |
| Community Provider of Enrichment Services, Inc. d/b/a/ CPES Inc., et al., | Jointly Administered With: Case No. 9:20-bk-10553-DS Case No. 9:20-bk-10994-DS |
| Debtors. | |
| | Chapter 11 |
| Movant: | **Requested Hearing**: |
| Arizona Department of Economic Security, Division of Developmental Disabilities ("DES/DDD"). | Date:  September 14, 2020 [Requested] Time:  11:30 a.m. Pace:  Via Zoom for Government Courtroom 201 United States Bankruptcy Court 1415 State Street Santa Barbara, CA 93101 |
| This Filing Applies To: | |
| Community Provider of Enrichment Services, Inc. d/b/a/ CPES Inc. et al, Debtors-In-Possession. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF:**

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY,
DIVISION OF DEVELOPMENTAL DISABILITIES
MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER
11 U.S.C. § 362 (ACTION IN NONBANKRUPTCY FORUM)**

1

# TABLE OF CONTENTS

TABLE OF CITATIONS.................................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................5

I.      Introduction.............................................................................5

II.     Relevant Law, Factual, and Procedural Background. .....................................6

III.    Legal Analysis ...................................................................... 18

    A. The 11 U.S.C. § 362(a) automatic stay does not apply to DES/DDD's
       actions necessary to complete the timely operational transition of the
       members residing in Group Homes operated by CPES AZ, pursuant to
       Arizona law, including, without limitation, transitioning the members to
       Qualified Vendors as DES/DDD is enforcing its police and regulatory
       powers pursuant to 11 U.S.C. § 362(b)(4), A.R.S. § 36-557, and Ariz.
       Admin. Code R6-6-2101 *et seq.*, to minimize the transitional impact to
       those members who are wholly dependent upon DES/DDD services..... 18

        i.  The Pecuniary Purpose Test................................................. 22

        ii. The Public Policy Test ...................................................... 23

    B.  Alternatively, DES/DDD is entitled to limited relief from the automatic
        stay for cause pursuant to 11 U.S.C. § 362(d)(1) to complete the timely
        operational transition of the members residing in Group Homes operated
        by CPES AZ, pursuant to Arizona Law, including, without limitation,
        transitioning the members to Qualified Vendors to minimize the
        transitional impact to those members who are wholly dependent upon
        DES/DDD services................................................................. 24

IV.     Conclusion ................................................................... 26

# APPENDICES

Exhibit A.   Declaration of Nicolette Fidel

Exhibit B.   Declaration of Carol Kachidurian

Exhibit C.   Qualified Vendor Agreement Section 6: DES/DDD Standard Terms
             and Conditions for Qualified Vendors

# TABLE OF CITATIONS

**Cases**

*In re Chapman*, 264 B.R. 565 (B.A.P. 9th Cir. 2001)...................................................23

*In re Conejo Enters., Inc.*, 96 F.3d 346 (9th Cir. 1996)...................................................25

*In re Dunbar*, 235 B.R. 465 (B.A.P. 9th Cir. 1999)
  *aff'd*, 245 F.3d 1058 (9th Cir. 2001)...................................................19

*In re Faires*, 34 B.R. 549, 553 (Bankr. S.D. Wash. 1983)...................................................25

*In re FirstEnergy Sols. Corp.*, 945 F.3d 431 (6th Cir. 2019).........................................24

*Mellor v. Pistole*, 734 F.2d 1396 (9th Cir. 1984).........................................26

*In re Univeral Life Church, Inc.*, 128 F.3d 1294 (9th Cir. 1997)
  *as amended*...................................................23

**Statutes**

11 U.S.C. § 361...................................................25, 26

11 U.S.C. § 362...................................................25, 27

11 U.S.C. § 362(a)...................................................6, 19

11 U.S.C. § 362(a)(1)...................................................6

11 U.S.C. § 362(a)(2)...................................................6, 19

11 U.S.C. § 362(a)(3)...................................................6

11 U.S.C. § 362(a)(6)...................................................6

11 U.S.C. § 362(b)...................................................19

11 U.S.C. § 362(b)(4)...................................................6, 19, 27

11 U.S.C. § 362(d)...................................................25

11 U.S.C. § 362(d)(1)...................................................25, 26

11 U.S.C. § 362(g)(2)...................................................25

28 U.S.C. § 157...................................................7

28 U.S.C. § 157(b)(2)...................................................7

28 U.S.C. § 1334...................................................7

3891127.1

42 C.F.R. 438.2 ................................................................................................. 8

42 C.F.R. 483 ................................................................................................. 14

A.R.S. § 36-132 ............................................................................................. 13

A.R.S. § 36-554 ............................................................................................... 8

A.R.S. § 36-557 ............................................................................... 11, 19, 20

A.R.S. § 36-557(B) .......................................................................................... 9

A.R.S. §36-560 ............................................................................................... 21

A.R.S. § 36-591 ............................................................................................. 13

A.R.S. § 36-2943 ........................................................................................... 20

A.R.S. § 41-1001(19) ................................................................................... 11

A.R.S. § 45-2501(P)(3) ................................................................................... 9

**Rules**

Ariz. Admin. Code R6-6-1502. .................................................................... 14

Ariz. Admin. Code R6-6-1503. .............................................................. 14, 15

Ariz. Admin. Code R6-6-2101 *et seq*. .............................................. 11, 19, 20

Ariz. Admin. Code R6-6-2101(36). .............................................................. 11

Ariz. Admin. Code R6-6-2101(37). .............................................................. 11

Ariz. Admin. Code R6-6-2104(B). ..................................................... 15, 23, 24

Fed. R. Bankr. P. 4001(a)(3). ............................................................... 26, 27

**Other Authorities**

Exhibit A, Declaration of Nicolette Fidel ............... 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19

Exhibit B, Declaration of Carol Kachidurian ................................. 9, 11, 16, 18

Exhibit C, Qualified Vendor Agreement Section 6: DES/DDD Standard Terms and Conditions for Qualified Vendors ...................................................... 15, 16

United State District Court for the Central District of California, General Order No. 13-05 ............................................................................... 7

United States Constitution ............................................................................. 7

3891127.1

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Arizona Department of Economic Security, Division of Developmental Disabilities ("DES/DDD"), moves the Court for an order confirming that DES/DDD may continue the enforcement of its police and regulatory powers pursuant to 11 U.S.C. § 362(b)(4).  Specifically, DES/DDD requests immediate confirmation that it may take all actions necessary to complete the timely operational transition for members residing in group homes operated by CPES AZ—pursuant to Arizona law—including, without limitation, transitioning the members to DDD contracted Qualified Vendors in order to minimize the transitional impact on those members who are wholly dependent upon DES/DDD services.  Importantly, DES/DDD does <u>not</u> seek, by this relief, to usurp CPES AZ's ability to sell its assets or assume and assign its leases as part of its Chapter 11 bankruptcy proceedings.  CPES AZ will be able to negotiate directly with the DES/DDD approved Qualified Vendor(s) who are ultimately awarded the authorizations from the DES/DDD to render residential services to the Group Home members.  In fact, it is anticipated and contemplated as being in the best interests of the members.  It is important to note that the 11 U.S.C. § 362(b)(4) exception to the automatic stay includes government acts much more aggressive to a debtor's bankruptcy estate than the limited relief that DES/DDD is requesting.  For example, even if DES/DDD were seeking relief as to CPES AZ's assets and leases, the broad language of 11 U.S.C. § 362(b)(4) specifically provides that the automatic stay does <u>not</u> operate as a stay to commencement or continuation of <u>acts to obtain possession of property of the estate or property from the estate</u> [11 U.S.C. § 362(a)(3)], in addition to: legal proceedings [11 U.S.C. § 362(a)(1)], enforcement of judgments, with some exceptions [11 U.S.C. § 362(a)(2)], or acts to collect, asses or recover claims against the debtor [11 U.S.C. § 362(a)(6)].

Alternatively, DES/DDD requests limited relief from the 11 U.S.C. § 362(a)

1    automatic stay for cause, to permit DES/DDD to take all necessary actions to complete

2    the timely operational transition of the members residing in group homes operated by

3    CPES AZ, in accordance with Arizona law, including, without limitation, transitioning

4    the Group Home members to contracted Qualified Vendors in order to minimize the

5    transitional impact to the members wholly dependent upon DES/DDD services.

6        DES/DDD's Motion is supported by this Memorandum of Points and Authorities,

7    the Declaration of Nicolette Fidel, the Declaration of Carol Kachidurian, the Qualified

8    Vendor Agreement Section 6: DES/DDD Standard Terms and Conditions for Qualified

9    Vendors, the DES/DDD managed care contract with the Arizona Health Care Cost

10   Containment System (AHCCCS), Arizona's Medicaid agency, the Arizona Revised

11   Statutes, and the Arizona Administrative Code, together with all matters of record and

12   such other evidence, oral or documentary, as may be presented by DES/DDD at any

13   hearing on its Motion.

14   **II.    RELEVANT LAW, FACTUAL, AND PROCEDURAL BACKGROUND**

15       1.    The Court has jurisdiction over the above-captioned bankruptcy cases

16   pursuant to 28 U.S.C. §§ 157 and 1334, and the Order of Reference from the United States

17   District Court for the Central District of California (General Order No. 13-05).

18   DES/DDD's Motion presents a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and

19   the Court may enter a final order consistent with Article III of the United States

20   Constitution.

21       2.    On April 24, 2020, Community Provider of Enrichment Services, Inc. d/b/a

22   CPES Inc. ("CPES AZ") and Novelles Developmental Services, Inc. ("Novelles") each

23   filed Voluntary Petitions for orders for relief under Chapter 11 of the Bankruptcy Code,

24   Case Nos 9:20-bk-10554-DS and 9:20-bk-10553 respectively.

25       3.    On August 11, 2020, CPES California, Inc. ("CPES CA"), filed a Voluntary

26   Petition for an order for relief under Chapter 11 of the Bankruptcy Code, Case No. 9:20-

3891127.1

bk-10994-DS.

4.  CPES AZ, CPES CA, and Novelles are collectively referred to herein as the "Debtors."

5.  The Debtors are operating as Chapter 11 Debtors-In-Possession.  No Committee of Unsecured Creditors has been appointed in these cases.

6.  CPES AZ currently operates fifty-three group homes throughout the State of Arizona (the "Group Homes") providing services to individuals with developmental disabilities.  CPES AZ, as a Qualified Vendor, pursuant to Arizona law, operates these Group Homes through a Qualified Vendor Agreement with the Department of Economic Security ("DES"), Division of Developmental Disabilities ("DDD").  Decl. of Nicolette Fidel at ¶ 7.

7.  Founded in 1982, AHCCCS is Arizona's Medicaid Program funded jointly by the federal and state government for indigent individuals and families.  Decl. of Nicolette Fidel at ¶ 8.

8.  AHCCCS operates under a fully integrated managed care system as authorized under the Social Security Act, 42 C.F.R. § 438.2.  Decl. of Nicolette Fidel at ¶ 9.

9.  AHCCCS requires its contracted health plans to coordinate and pay for physical, behavioral health care services, and Long Term Services and Supports ("LTSS").  Decl. of Nicolette Fidel at ¶ 10.

10.  For Arizonans with developmental disabilities, AHCCCS contracts with the DES/DDD as a fully integrated managed care organization.  Decl. of Nicolette Fidel at ¶ 11.

11.  The AHCCCS DES/DDD contract aligns with DES/DDD's statutory duties and obligations.  Pursuant to A.R.S. § 36-554, DES/DDD is tasked with developing, implementing, and monitoring statewide programs for Arizona's population with

3891127.1

developmental disabilities.

12.    The population with developmental disabilities includes vulnerable individuals who have manifestations or diagnosis of autism, cognitive disability, cerebral palsy, and epilepsy.  Some individuals with developmental disabilities also experience comorbid conditions including acute physical health conditions and behavioral disorders or severe mental illness, including schizophrenia and bipolar disorder.  Decl. of Nicolette Fidel at ¶ 12.

13.    DES/DDD is responsible for providing services and supports to over 44,000 Arizonans with developmental disabilities (DDD members).  Over 35,000 DDD members receive long term services and supports, integrated physical and behavioral healthcare, and case management services.  Over 8,000 DDD members receive case management services and access to community resources.  Decl. of Carol Kachidurian at ¶ 7.

14.    In carrying out its responsibilities, DES/DDD strives to support the choices of individuals with developmental disabilities and their families by promoting and providing flexible, quality, consumer-driven services, and support.  Decl. of Nicolette Fidel at ¶ 13.

15.    DES/DDD is guided by the belief that individuals with developmental disabilities are valued members of their communities and are involved and participating members based on their own choices.  Decl. of Nicolette Fidel at ¶ 14.

16.    DES/DDD aims to support services which promote: (a) healthy relationships with people; (b) individual and family priorities and choices; (c) equal access to quality services and support for all individuals and families; (d) partnerships and ongoing communication with individuals, family members, advocates, providers, and community members; (e) developmental approaches—changing conditions that affect people rather than changing people who are affected by conditions; (f) individual freedom from abuse, neglect and exploitation with a balance between the right to make choices

and experience life and individual safety; (g) a diverse workforce that is motivated, skilled and knowledgeable of and uses the most effective practices known; (h) an environment rich in diversity in which each person is respected and has the opportunity to reach their optimal potential; (i) an individual's right to choose to participate in and contribute to all aspects of home and community life; (j) a system of services and supports which are—(i) responsive: timely and flexible responses to internal and external customers; (ii) strength based: recognizing people's strengths, promoting self-reliance, enhancing confidence and building on community assets; (iii) effective: ongoing identification of effective methods and practices and incorporation of those practices into operations; and (iv) accountable: to our customers and to Arizona and Federal taxpayers and AHCCCS. Decl. of Nicolette Fidel at ¶ 15.

17.     To be eligible for services from DES/DDD, an individual must be an Arizona resident who has a chronic disability that: (a) is attributable to cognitive disability, cerebral palsy, epilepsy or autism; (b) was manifested before the age of 18; (c) is likely to continue indefinitely; and (d) reflects the need for a combination and sequence of individually planned or coordinated special, interdisciplinary or generic case, treatment or other services that are of lifelong or extended duration. Decl. of Nicolette Fidel at ¶ 16.

18.     To fulfill its obligations, DES/DDD subcontracts for physical and behavioral health care services to health plans. For home and community-based services (HCBS), DES/DDD subcontracts with Qualified Vendors for and including but not limited to group home services. Decl. of Nicolette Fidel at ¶ 17.

19.     For HCBS, including group home services, DES/DDD enters into contracts that are exempt from the Arizona Procurement Code, called Qualified Vendor Agreements. *See* A.R.S. §§ 45-2501(P)(3) and 36-557(B).

20.     To provide the aforementioned services, DES/DDD, pursuant to A.R.S.

§ 36-557 and Ariz. Admin. Code R6-6-2101 *et seq*., accepts Qualified Vendor Applications from prospective providers, and after extensive evaluation and approval, thereafter enters into Qualified Vendor Agreements with Qualified Vendors.

21.    The Arizona Administrative Code is where the official rules of the state of Arizona are published.  The Arizona Administrative Code is the official codification of rules that govern state agencies, boards, and commissions.  Under A.R.S. § 41-1001(19),

> "Rule" means an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency. Rule includes prescribing fees or the amendment or repeal of a prior rule but does not include intraagency memoranda that are not delegation agreements.

22.    A "'Qualified Vendor' means a provider of community developmental disability services that has applied for Qualified Vendor status, meets the criteria for Qualified Vendor status, and has entered into a Qualified Vendor Agreement with the Division [DES/DDD]."  Ariz. Admin. Code R6-6-2101(36).

23.    To be a Qualified Vendor, the provider must also agree to DES/DDD's published rate schedule.  Decl. of Carol Kachidurian at ¶ 8.

24.    A "'Qualified Vendor Agreement' means the legal, binding document between the Division [DES/DDD] and a Qualified Vendor describing the services the Qualified Vendor is qualified to provide and the terms and conditions governing the relationship between the Division [DES/DDD] and the Qualified Vendor including any amendments, attachments, schedules, or exhibits." Ariz. Admin. Code R6-6-2101(37).

25.    DES/DDD maintains an open and continuous Notice of Request for Qualified Vendor Applications, under which DES/DDD solicits potential providers to serve the developmentally disabled population.  Accordingly, DES/DDD has (and must maintain) a list of multiple Qualified Vendors ready, willing, and able to care for the Group Home members.  Decl. of Carol Kachidurian at ¶ 9.

26.    Pursuant to Ariz. Admin. Code R6-6-2101 *et seq*., DES/DDD has sole

3891127.1

1    authority to select and award Qualified Vendor Agreements to Qualified Vendors who

2    care for Arizona residents requiring Group Home care.

3        27.    A Qualified Vendor must comply with the extensive terms and conditions

4    of the Qualified Vendor Agreement which includes, but is not limited to, a scope of work,

5    service requirements, service specifications, career training, employment support,

6    daycare, habilitation, numerous varieties of therapies, nursing services, transportation,

7    and acceptance of DES/DDD's published rate schedule.  Decl. of Nicolette Fidel at ¶ 18.

8        28.    The DES/DDD follows the Qualified Vendor Application process to qualify

9    potential vendors to provide services to DES/DDD members.  That process includes: (a)

10    the potential vendor attending a DES/DDD qualified vendor system seminar or

11    completing prerequisites on the DES/DDD vendor website; (b) completing and

12    submitting a Qualified Vendor Application (QVA); (c) the DES/DDD Qualified Vendor

13    Unit reviewing and accepting complete and clean application packages; (d) the DES/DDD

14    Network Unit reviewing service details, analyzing program management proposals, and

15    completing a policy and readiness review; (e) the DES/DDD Office of Business and

16    Finance completing a financial review of the applicant; (f) the DES/DDD Contract Unit

17    determining if the potential vendor meets pre-award requirements; (g) the DES/DDD

18    Office of Licensing, Certification & Regulation (OLCR) completing HCBS certification

19    for subsequent submission by a vendor to AHCCCS for an AHCCCS ID number; (h)

20    DES/DDD analyzing whether the potential vendor meets contract requirements for

21    insurance; (i) DES/DDD awarding a contract to a Qualified Vendor; (j) DES/DDD

22    completes an on-site administrative review and the potential vendor must pass initial

23    credentialing; (k) upon successful completion of the review, the applicant (now a

24    Qualified Vendor) is determined capable of providing services to members; (l) DES/DDD

25    is then required, depending on the services approved in the QVA, to provide continuous

26    oversight of its Qualified Vendor network through quality monitoring visits, life safety

3891127.1

1  inspections, licensing by ADHS or DES, annual HCBS certification, fire department

2  clearance, and credentialing.  Decl. of Nicolette Fidel at ¶ 19.

3      29.    A vendor applicant cannot, in advance of having a Qualified Vendor

4  Agreement, enter into a purchase or lease agreement for a Group Home, obtain HCBS

5  certification for a Group Home, request ADHS licensure for a Group Home, obtain a fire

6  and safety inspection for the purposes of licensure, or provide services at a Group Home

7  to DES/DDD members.  Decl. of Nicolette Fidel at ¶ 20.

8      30.    DES/DDD will not license a Group Home to serve DES/DDD members

9  without documentation of HCBS certification of each site and advance confirmation that

10  DES/DDD needs the particular Group Home.  Decl. of Nicolette Fidel at ¶ 21.

11      31.    Furthermore, the Qualified Vendor's Group Homes must be licensed by the

12  Arizona Department of Health Services ("ADHS") pursuant to A.R.S. § 36-591.

13      32.    A.R.S. § 36-591 provides that:

14  A. An adult developmental home or child developmental home shall be
    licensed pursuant to this article.

15
16  B. Group homes, except for those described in subsection E of this section,
    shall be licensed for health and safety by the department of health services
    pursuant to § 36-132.

17
18  C. The division shall notify the department of health services of:

19      1. Service providers who enter into contracts with the division for group
       homes or intermediate care facilities for individuals with intellectual
       disabilities.

20
21      2. Any violation of health and safety standards observed during
       monitoring visits.

22  D. The department of health services shall immediately notify the division:

23      1. When a group home or intermediate care facility for individuals with
       intellectual disabilities license has been denied, suspended or revoked.

24
25      2. Of any other licensing action taken on a group home or intermediate
       care facility for individuals with intellectual disabilities by the department
       of health services.

26

3891127.1

3. Of substantiated complaints regarding health and safety.

E. The division shall ensure that state-operated residential settings that are owned or leased facilities operated by the division meet the same standards as group homes unless they are required to be licensed and certified as intermediate care facilities for individuals with intellectual disabilities pursuant to 42 Code of Federal Regulations part 483. subpart I. An intermediate care facility for individuals with intellectual disabilities that is operated by the division or a private entity is required to be licensed pursuant to chapter 4 of this title and certified pursuant to 42 Code of Federal Regulations part 483. subpart I.

F. The department shall annually visit each adult developmental home and child developmental home and inspect the premises used for the care of children or vulnerable adults for sanitation. fire and other actual and potential hazards. The department shall take any action it deems necessary to carry out the duties imposed by this section. including the denial of the application for licensure and the suspension or revocation of the home's license.

33.    Additionally, vendors who provide or wish to provide HCBS to members must also be certified by DES/DDD and the Arizona OLCR to provide those services. The Arizona Administrative Code, Title 6, Chapter 6, Article 15 requires any individual or agency that wants to provide HCBS to be certified by the DES/DDD and the OLCR.

34.    Ariz. Admin. Code R6-6-1502 provides that "this Article applies to an individual or agency that provides or wishes to provide Home and Community-based Services to clients."

35.    Ariz. Admin. Code R6-6-1503 states that:

A. No individual shall provide Home and Community-based Services to clients unless the Division has certified the individual in accordance with this Article and. if providing services through ALTCS [Arizona Long Term Care System]. registered the applicant with AHCCCS.

B. The Division shall register the applicant with AHCCCS. if required. as part of HCBS certification.

36.    Therefore, DES/DDD's award and approval of Qualified Vendor Agreements is based on DES/DDD's statutory duties and responsibilities to serve vulnerable individuals, provide care, and protect the health and welfare of developmentally disabled members.  Decl. of Nicolette Fidel at ¶ 22.

37.    When evaluating a Qualified Vendor Application,

[t]he Division [DES/DDD] shall consider the following factors in determining if an applicant is a Qualified Vendor and eligible to enter into a Qualified Vendor Agreement:

1.  Ability of the applicant to meet the need for services based on performance, including compliance with licensing and certification requirements; program monitoring, agreement monitoring, or contract monitoring reports; and corporate or individual experience providing community development disability services or similar services in Arizona and in other states;

2.  Whether the applicant has met the requirements of the Qualified Vendor Application process;

3.  Whether the application is consistent with the Division's [DES/DDD] network development plan or other documentation of projected service need;

4.  Financial stability of the applicant as demonstrated by the financial information provided in the application;

5.  The rate proposed for a negotiated rate agreement; and

6.  Any other criteria deemed relevant by the Division [DES/DDD] and included as part of the Request for Qualified Vendor Applications.

Ariz. Admin. Code R6-6-2104(B).

38.    Without a Qualified Vendor Agreement, an entity cannot operate an Arizona Group Home for members.  Decl. of Nicolette Fidel at ¶ 23.

39.    Additionally, an entity cannot operate an Arizona Group Home for members without AHCCCS registration and ADHS licensure.  Decl. of Nicolette Fidel at ¶ 24.

40.    Once a Qualified Vendor Agreement is effective between the vendor and DES/DDD, the Qualified Vendor cannot assign the Qualified Vendor Agreement without the prior written consent of DES/DDD.  Decl. of Nicolette Fidel at ¶ 25, Exhibit C at 28, § 6.5.14, and generally *see also* Ariz. Admin. Code R6-6-1503 (requiring each individual to be certified pursuant to Title 6, Chapter 6, Article 15 of the Ariz. Admin Code before providing HCBS).

41.    Pursuant to Section 6.5.14 of the Qualified Vendor Agreement: DES/DDD

Standard Terms and Conditions for Qualified Vendors:

> 6.5.14.1 The Qualified Vendor shall not change ownership and/or taxpayer identification number without the prior written consent of the Division during the term of this Agreement. Consent shall not be unreasonably withheld.

> 6.5.14.2 A proposed merger, reorganization, affiliation, or change in ownership of the Qualified Vendor shall require prior approval of the Division. In some cases, a new Application may be required.

> Exhibit C at 28, § 6.5.14.

42.    Unlike most procurement processes, the open, lengthy, and continuous nature of the qualified vendor application process does not contemplate a "low-bid" analysis to determine what vendor will provide the State of Arizona with the most economical rate or price.  The Qualified Vendor process is not based on monetary bids from potential providers.  The potential vendor either accepts DES/DDD's published rate schedule or it will not become an approved Qualified Vendor.  Decl. of Nicolette Fidel at ¶ 26.

43.    Therefore, DES/DDD is not advancing any pecuniary interest through a Qualified Vendor, the Qualified Vendor Agreement process, or the limited relief sought by its Motion.  Decl. of Nicolette Fidel at ¶ 27.

44.    DES/DDD simply operates as a fiduciary for the disbursement of federal and state funds to Qualified Vendors pursuant to their contract which requires reimbursement for services rendered.  Decl. of Carol Kachidurian at ¶ 10.

45.    The material and sole interest DES/DDD has in the Qualified Vendor process is securing a provider to care for those members who are disabled currently living in the Group Homes operated by CPES AZ with minimal interruption to the member's daily lives.  Decl. of Nicolette Fidel at ¶ 28.

46.    Duties associated with group home services include providing a variety of

interventions designed to maximize the functioning of persons with developmental disabilities. Services may include, but are not limited to: habilitative therapies, special developmental skills, behavioral intervention, and sensorimotor development. Decl. of Nicolette Fidel at ¶ 29.

47. Additionally, it is the responsibility of the Group Home Qualified Vendor to: (a) provide a broad array of support services to promote the physical, emotional, and mental well-being of the member; (b) to enable the member to acquire knowledge and skills and participate in his/her community based on his/her choices; (c) to provide training and supervision for the member to increase or maintain his/her self-help, socialization, and adaptive skills; (d) to develop positive relationships with others; (e) to provide opportunities to interact with others in the community; (f) to assist the member in achieving and maintaining a quality of life that promotes the member's vision for the future and priorities; and (g) to assure the health and safety of all residents. Decl. of Nicolette Fidel at ¶ 30.

48. DES/DDD must integrate a member-centered and person-centered planning approach for all members. The member, and family representative, as appropriate, are active participants in the planning for and the evaluation of long-term services and support. Services are mutually selected through Person Centered Service Planning to assist the member in attaining his/her goal(s) for achieving or maintaining his/her highest level of self-sufficiency. Education and up-to-date information about the ALTCS program, choices of service options and mix of services must be readily available to members. Decl. of Nicolette Fidel at ¶ 31.

49. This is a very complex process that is dependent on member choice, vendor qualification, vendor capacity, and vendor competency to care for each member in a way that meets his/her specific needs. DES/DDD tracks each members and each Group Home location and has documented the choices of the member/family and roommate groups and

1    prospective transition of each home.  Decl. of Nicolette Fidel at ¶ 32.

2        50.    On September 4, 2020, CPES AZ filed a Motion for Entry of (I) an Order

3    (A) Authorizing and Approving the Debtor's Entry into the Stalking Horse Asset

4    Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-Up

5    Fee, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing, and (E)

6    Approving Procedures for Assumption and Assignment of Certain Executory Contracts

7    and Unexpired Leases and Determining Cure Amounts; and (II) an Order (A) Authorizing

8    the Sale of Substantially All of the Debtor's Assets Fee and Clear of All Liens, Claims,

9    Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Certain

10   Executory Contracts and Unexpired Leases; Memorandum of Points and Authorities in

11   Support Thereof (the "Arizona Sale Motion").  Dkt. 296.

12       51.    The Arizona Sale Motion is deficient, for several reasons, including,

13   without limitation, that the proposed Stalking Horse Bidder, CTBAZ LLC, is not a

14   Qualified Vendor, does not currently have a Qualified Vendor Application before

15   DES/DDD for approval, is not registered with AHCCCS, does not have the required

16   group home licenses from ADHS, and does not have the required certification from

17   DES/DDD and the OLCR for HCBS.  Decl. of Carol Kachidurian at ¶ 11.

18       52.    Meanwhile, DES/DDD already has multiple Qualified Vendors who have

19   positively responded to DES/DDD's qualified vendor call and are ready, willing, and able

20   step in and care for members living in the Group Homes operated by CPES AZ in order

21   to minimize interruption to their daily lives.  Decl. of Nicolette Fidel at ¶ 33.

22       53.    DES/DDD does <u>not</u>, by its Motion, seek relief to usurp CPES AZ's ability

23   to sell its assets or assume and assign its leases as part of its Chapter 11 bankruptcy

24   proceedings.  Rather, DES/DDD only seeks immediate confirmation that it may take all

25   actions necessary to complete the timely operational transition of the members residing

26   in Group Homes operated by CPES AZ, pursuant to Arizona law, including, without

1  limitation, transitioning the members to Qualified Vendors to minimize the transitional

2  impact to those members who are wholly dependent upon DES/DDD services.  Decl. of

3  Nicolette Fidel at ¶ 34.

4  **III.    LEGAL ANALYSIS**

5      **A. The 11 U.S.C. § 362(a) automatic stay does not apply to DES/DDD's**
          **actions necessary to complete the timely operational transition of the**
6          **members residing in Group Homes operated by CPES AZ, pursuant to**
          **Arizona law, including, without limitation, transitioning the members**
7          **to Qualified Vendors as DES/DDD is enforcing its police and**
          **regulatory powers pursuant to 11 U.S.C. § 362(b)(4), A.R.S. § 36-557,**
8          **and Ariz. Admin. Code R6-6-2101** *et seq.***, to minimize the transitional**
          **impact to those members who are wholly dependent upon DES/DDD**
9          **services.**

10      While the scope of the 11 U.S.C. § 362(a) automatic stay is broad, it is not

11  unlimited.  Several exceptions are enumerated in 11 U.S.C. § 362(b), including the 11

12  U.S.C. § 362(b)(4) police and regulatory powers exception, which provides that:

13      (b) The filing of a petition under section 301, 302, or 303 of this title, . . . ,
        does not operate as a stay—
14
15          (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this
            section, of the commencement or continuation of an action or
16          proceeding by a governmental unit or any organization exercising
            authority . . . to enforce such governmental unit's or organization's
            police and regulatory power, including the enforcement of a
17          judgment other than a money judgment, obtained in an action or
            proceeding by the governmental unit to enforce such governmental
18          unit's or organization's police or regulatory power;

19      As an Arizona State Agency, DES/DDD is a government unit under 11 U.S.C.

20  § 362(b)(4) and may enforce its police and regulatory powers.  "This exception is

21  intended to allow governmental units to sue a debtor 'to prevent or stop violation of fraud,

22  environmental protection, consumer protection, safety, or similar police or regulatory

23  laws, or attempting to fix damages for violation of such a law."  *In re Dunbar*, 235 B.R.

24  465, 471 (B.A.P. 9th Cir. 1999) (citation omitted).  Here, DES/DDD's duties and

25  responsibilities to protect vulnerable Arizonans is the highest form of consumer

26  protection.  DES/DDD's administration of A.R.S. § 36-557 through Ariz. Admin. Code

R6-6-2101 *et seq.* is simply regulatory enforcement, not enforcement of private contractual rights.  A.R.S. § 36-557, in pertinent part provides that:

A. The department [of economic security] may use state and federal monies appropriated or otherwise available to it for this purpose to assist in the establishment and maintenance of local developmental disability services by public or private nonprofit or profit agencies. The monies may be expended as professional fees for service, in contracts for advancement or reimbursement or in another appropriate manner and may be used for any purpose necessary to the provision of local developmental disability services. The monies may not be used for departmental salaries, care of persons with developmental disabilities by the department or any other purpose within the department, but may be used for consultation to the department in the interest of local programs.

B. A local public or private nonprofit or profit agency providing or intending to provide community developmental disability services and desiring to contract with the department for the furnishing of these services shall submit a program plan and budget to the department on the forms and in the manner required by the department. If the program meets departmental standards and is consistent with the state plan of the department and the individualized service program plan of the client, the department, notwithstanding the provisions of title 41, chapter 23, relating to procurement and including services pursuant to § 36-2943, may contract with that agency for required services **on terms the department requires**. The contracts shall provide that **the provider of services is subject to a continuing program evaluation by the department through progress reports, expenditure reports, program audits or other appropriate evaluation techniques to assure that the provider of service is in continued compliance with the terms of the contract and the department's community developmental disability service standards and requirements**.

. . .

E.  Contracts to provide community developmental disability services shall require that:

1. The contractor is obligated to operate a program or service **in strict accordance with the standards adopted for that program or service by the department**.

2. If state funding is provided for a particular program the contractor, to the extent of positions available that are being purchased by the department, shall provide services to a client with a developmental disability who has been evaluated and placed by the department.

3. All contractors must carry liability insurance in amounts approved by the risk management division of the department of administration and file proof of insurance with the risk management division. The director may waive that requirement on a case by case basis on a finding that insurance

for the program or service is not practicably available at affordable rates and that it is necessary that the program or service be provided by the contractor.

4. All clients enrolled in programs have all the same specified rights as they would have if enrolled in a program operated directly by the state.

5. Except for emergency placement pursuant to § 36-560, subsection N, payment shall not be made based on program services provided to a client if a placement evaluation has not been made, and no individual program has been prepared and when, based on that placement evaluation, no recommendation has been made to enroll the client in the particular program service.

. . .

G.  Contracts for the purchase of residential care services other than those community residential settings licensed pursuant to this chapter, in addition to other general requirements applicable to purchase of care contractors, shall:

1. Provide for mandatory inspection by the department every two years for facilities other than group homes.

2. Provide for mandatory monitoring by the department for health, safety, contractual and programmatic standards at least every six months, unless the department has granted deemed status to the service provider or the service provider received a score of at least ninety-five percent on the most recent monitoring visit. If the department has granted deemed status or awarded the service provider with a score of at least ninety-five percent on the most recent monitoring visit, it shall monitor that provider once each year. On determination by the department that there is reasonable cause to believe a service provider is not adhering to the department's programmatic or contractual requirements, the department and any duly designated employee or agent of the department may enter on and into the premises at any reasonable time for the purpose of determining the state of compliance with the programmatic or contractual requirements of the department.

3. Provide for mandatory investigation by the department in response to complaints within ten working days, except that in those instances that pose a danger to the client, the department shall conduct the investigation immediately. Health and safety complaints related to group homes shall be referred to the department of health services on receipt. The department of health services shall share all incident reports related to health and safety with the division of developmental disabilities.

4. Except for group homes licensed by the department of health services, specify the health and safety and sanitation codes and other codes or standards applicable to the facility or to the operation of the facility by the contractor other than group homes.

5. Provide for mandatory periodic reports to be filed by the provider contractor with the department with respect to the operation of the facility.

6. Provide that the facility and the books and records of the facility and of the provider are subject to inspection at any time by employees of the department or designees of the department.

7. Provide that parents and guardians of persons with developmental disabilities residing at the facility, members of the developmental disabilities advisory council, and members of other recognized and ongoing advocacy groups for persons with developmental disabilities may inspect the facility at reasonable times.

H.   Contracts for the purchase of residential care services shall require a community residential setting to be licensed pursuant to this chapter other than group homes licensed by the department of health services.

I.   Contracts for the purchase of day program or employment services, in addition to the other general requirements applicable to the purchase of client services, must provide for mandatory monitoring by the department for health, safety, contractual, programmatic and quality assurance standards at least once every six months, unless the department has granted deemed status to the service provider. If the department has granted deemed status to the service provider, the department shall monitor that provider once each year. The department and any duly designated employee or agent of the department may enter on or into the service provider's premises at any reasonable time for the purpose of determining the state of compliance with the department's programmatic, contractual and quality assurance requirements.

J. The division shall ensure that all contracted developmental disabilities service providers rendering services pursuant to this chapter are reimbursed in accordance with title XIX of the social security act.

. . .

L. As a condition of contracts with any developmental disabilities service provider, the director shall require terms that conform with state and federal laws, title XIX statutes and regulations and quality standards. The director shall further require contract terms that ensure performance by the provider of the provisions of each contract executed pursuant to this article. . . .

To determine whether an action is excepted from the automatic stay as an exercise of a police or regulatory power, the Ninth Circuit employs two tests to judge the government's action at issue: (1) the pecuniary purpose test; and (2) the public policy test. *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997), *as amended*

1   (citation omitted).    Satisfaction of either test will suffice to satisfy the "police or

2   regulatory power" exception to the automatic stay.  *In re Chapman*, 264 B.R. 565, 569

3   (B.A.P. 9th Cir. 2001).

4          i.     <u>The Pecuniary Purpose Test</u>

5         The pecuniary purpose test examines "whether the government action relates

6   primarily to the protection of the government's pecuniary interest in the debtor's property

7   or to matters of public safety and welfare." *Id*.  Here, DES/DDD is pursuing a matter of

8   public safety and welfare through the enforcement of administrative and regulatory

9   action—namely, its Qualified Vendor process.  The Qualified Vendor process ensures the

10   protection and safety of the Arizona Group Home residents, it does not further or advance

11   any of DES/DDD's pecuniary interests.    With respect to any pecuniary interest,

12   DES/DDD simply operates as a fiduciary for the disbursement of federal and state funds

13   to Qualified Vendors.   In fact DES/DDD's decision to approve a Qualified Vender is not

14   based on a low-bid analysis.  Rather, it is based on a comprehensive set of detailed criteria

15   under Ariz. Admin. Code R6-6-2104(B) designed to ensure the health, safety, protection,

16   and care of the Arizona Group Home Residents.  Those factors include the applicant's:

17   (1) ability to meet the need for services; (2) experience providing community

18   development disability services or similar services in Arizona or other states; (3)

19   capability to meet DES/DDD's service needs; (4) financial stability [in an effort to avoid

20   the present scenario]; (5) compliance with the DES/DDD rate schedule or rate proposed

21   for a negotiated rate agreement; and (6) competency to meet additional DES/DDD

22   criteria. *See* Ariz. Admin. Code R6-6-2104(B).  To be a Qualified Vendor, the provider

23   must agree to DES/DDD's published rate schedule.  The potential vendor either accepts

24   DES/DDD's published rate schedule or it will not become an approved Qualified Vendor.

25   Therefore, DES/DDD is not advancing any pecuniary interest through the Qualified

26   Vendor/Qualified Vendor Agreement process or the limited relief sought by its Motion.

3891127.1

The material and sole interest DES/DDD has in the Qualified Vendor process is securing a provider to care for individuals with developmental disabilities.  The factors enumerated in Ariz. Admin. Code R6-6-2104(B) highlight the State of Arizona's intent to make sure potential providers are able to meet the needs of Arizona's developmentally disabled population.  Further, even though the State of Arizona reimburses Qualified Vendors for services rendered, it is pursuant to a published rate schedule for mandatory non-discretionary service that the State of Arizona must supply to developmentally disabled members.  This is not a scenario where a state attorney general is suing to enforce a private contract obligation or a government unit's pursuit of regulatory enforcement simply to recover fines and penalties due and owing the State without public interest.  Instead, the State of Arizona is selecting responsive, capable, and currently Qualified Vendors with capacity to provide the stated and evaluated necessary care to vulnerable Group Home members.  Therefore, DES/DDD's action in selecting from currently Qualified Vendor(s) and awarding service authorizations to vendors who have and hold Qualified Vendor Agreements is excepted from the automatic stay.  "When an action furthers both public and private interests and the private interests do not significantly outweigh the public benefit from enforcement, courts should defer to the legislature's decision to vest enforcement authority in the executive and recognize such actions as within" the 'regulatory power' exception to the automatic stay.  *In re FirstEnergy Sols. Corp.*, 945 F.3d 431, 437 (6th Cir. 2019) (citation omitted).

      ii.   <u>The Public Policy Test</u>

The public policy test distinguishes between government actions that effectuate public policy and those that adjudicate private rights. *Id*. (citations omitted).  Here, the State's action is designed to effectuate public policy by ensuring the protection of vulnerable individuals with developmental disabilities living in the Arizona Group Homes.  The fact that a contract for the provision of services is involved is not tantamount

1   to the adjudication of private rights.  The Qualified Vendor Agreements exist to ensure

2   vulnerable members that the State of Arizona sets forth and provides a minimum standard

3   of care for its developmentally disabled population.

4       **B. Alternatively, DES/DDD is entitled to limited relief from the automatic
        stay for cause pursuant to 11 U.S.C. § 362(d)(1) to complete the timely
5       operational transition of the members residing in Group Homes
        operated by CPES AZ, pursuant to Arizona law, including, without
6       limitation, transitioning the members to Qualified Vendors to
        minimize the transitional impact to those members who are wholly
7       dependent upon DES/DDD services.**

8       Alternative grounds upon which relief from the automatic stay should or may be

9   granted are provided for in 11 U.S.C. § 362(d).  If the moving party satisfies the test of

10  any subsection of 11 U.S.C. § 362(d) for termination of the stay, the automatic stay must

11  be terminated even if the other grounds for relief are not met.  *In re Faires*, 34 B.R. 549,

12  553 (Bankr. S.D. Wash. 1983).  Under 11 U.S.C. § 362(d)(1):

13      (d) On request of a party in interest and after notice and a hearing, the court
        shall grant relief from the stay provided under subsection (a) of this section,
14      such as by terminating, annulling, modifying, or conditioning such stay—

15          (1) for cause, including the lack of adequate protection of an interest
            in property of such party in interest; . . .

16

17      Pursuant to 11 U.S.C § 362(d)(1), relief from the automatic stay must be granted

18  for "cause," which includes, but is not limited to, lack of adequate protection.  *See* 11

19  U.S.C § 362(d)(1).  "Cause" is not defined in the Bankruptcy Code and is determined by

20  the circumstances of a particular case.  *See In re Conejo Enters., Inc.,* 96 F.3d 346, 352

21  (9th Cir. 1996) (citation omitted).  The burden of proof is on the Debtors to establish that

22  cause does not exist and that DES/DDD's interests are adequately protected.  *See* 11

23  U.S.C. § 362(g)(2).

24      The term "adequate protection" is not defined in 11 U.S.C. § 362.  However, 11

25  U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate

26  protection, as follows: (1) periodic cash payments equivalent to any decrease in value of

3891127.1

the secured party's interest in the collateral; (2) an additional or replacement lien on other property; or (3) other relief that provide for the "indubitable equivalent" of the secured party's interest in the collateral. *See* 11 U.S.C. § 361; *Mellor v. Pistole*, 734 F.2d 1396, 1400 (9th Cir. 1984) (citation omitted). The circumstances of these cases as set forth more fully above are simply such that CPES AZ cannot adequately protect DES/DDD's interests through: (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief from the CPES AZ to DES/DDD. Therefore, cause exists to grant DES/DDD limited relief from the automatic stay under 11 U.S.C. § 362(d)(1) for cause because: (a) DES/DDD has sole authority to award member service authorizations to responsive, capable qualified vendors with capacity who have and hold Qualified Vendor Agreements to care for Arizona residents requiring residential group home living arrangements; (b) without a Qualified Vendor Agreement, an entity cannot operate an Arizona group home for members; (c) the Arizona Sale Motion is deficient because, without limitation, the proposed Stalking Horse Bidder is not a Qualified Vendor, does not currently have a Qualified Vendor Application before the DES/DDD for approval, is not registered with AHCCCS, does not have the required group home licenses from ADHS, and does not have the required certification from DES/DDD and the OLCR for HCBS. Thus, DES/DDD should be granted limited relief from the automatic stay to complete the timely operational transition of the members residing in Group Homes operated by CPES AZ, pursuant to Arizona law, including, without limitation, transitioning the members to Qualified Vendors to minimize the transitional impact to those members who are wholly dependent upon DES/DDD services.

Based on all of the foregoing, cause exists to waive the 14-day stay of Rule 4001(a)(3), Fed. R. Bankr. P., because DES/DDD has sole authority to award Qualified Vendor Agreements and the proposed Stalking Horse Bidder does not have a Qualified Vendor Agreement nor a Qualified Vendor Application before the DES/DDD for

1  approval, it is not registered with AHCCCS, does not have the required group home

2  licenses from ADHS, and does not have the required certification from DES/DDD and

3  the OLCR for HCBS.  It is imperative that DES/DDD move expeditiously to take all

4  actions necessary to complete the timely operational transition of the members with

5  developmental disabilities residing in Group Homes operated by CPES AZ, pursuant to

6  Arizona law, including, without limitation, transitioning the members with developmental

7  disabilities to Qualified Vendors to minimize the transitional impact to those members

8  who are wholly dependent upon DES/DDD services.  Finally, doing so is in no way

9  adverse to CPES AZ as it will be able to negotiate directly with the DES/DDD approved

10  Qualified Vendor(s) who are ultimately awarded the authorizations to render the

11  residential group home services.

12  **IV.    CONCLUSION**

13       Based on all of the foregoing, DES/DDD respectfully requests that the Court enter

14  an order:

15       A.    Granting DES/DDD's Motion and the limited requested relief;

16       B.    Confirming that DES/DDD may continue the enforcement of its police and

17  regulatory powers pursuant to 11 U.S.C. § 362(b)(4).  Specifically, DES/DDD may take

18  all actions necessary to complete the operational transition of the residents living in the

19  CPES AZ Group Homes to an entity with a Qualified Vendor Agreement.

20       C.    Alternatively, terminating all applicable stays and injunctions, including the

21  automatic stay of 11 U.S.C. § 362 on a limited basis, as to DES/DDD, the Debtors, and

22  the Debtors' bankruptcy estates, to permit DES/DDD to complete the operational

23  transition of the residents living in the CPES AZ group homes to an entity(s) with a

24  Qualified Vendor Agreement.

25       D.    Direct that DES/DDD is entitled to enforce all of its available police and

26  regulatory powers in connection with transitioning the residents living in the CPES AZ

1    Group Homes to an entity(s) with a Qualified Vendor Agreement;

2         E.    Waive the 14-day stay under Rule 4001(a)(3), Fed. R. Bankr. P.; and

3         F.    Grant DES/DDD such other and further relief as the Court deems just and

4    proper under the facts and circumstances of these cases.

5         Respectfully submitted this 10th day of September, 2020.

6                              **GUST ROSENFELD P.L.C.**

7                              By: */s/ Séan P. O'Brien - 010540*
                                   Jennifer C. Kalvestran - CA Bar #242157
8                                  Séan P. O'Brien - AZ Bar #010540
                                   *Admitted Pro Hac Vice*
9                                  Robert C. Williams – AZ Bar #033213
                                   *Admitted Pro Hac Vice*
10                                 Attorneys for ***Arizona Department of***
                                   ***Economic Security, Division of***
11                                 ***Developmental Disabilities***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Gust Rosenfeld, PLC, One E. Washington, Suite 1600, Phoenix, AZ 85004-2553

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (ACTION IN NONBANKRUPTCY FORUM)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _09/10/2020_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*All parties on the limited notice list adopted pursuant to Docket No. 75.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _09/10/2020_, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Via FedEx overnight mail:
Judge Deborah J. Saltzman
U.S. Bankruptcy Court, Roybal Federal Building
255 E. Temple Street, Suite 1634
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/10/2020 | Joslin Vega | /s/ Joslin Vega |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Debtors**

Community Provider of Enrichment Services, Inc.
Faegre Drinker Biddle & Reath LLP
Ryan M. Salzman
Jeremy M. Pelphrey
1800 Century Park East, Ste. 1500
Los Angeles, CA 90067
ryan.salzman@faegredrinker.com
jeremy.pelphrey@faegredrinker.com

Community Provider of Enrichment Services, Inc.
Faegre Drinker Biddle & Reath LLP
Vince Slusher
1717 Main Street, Suite 5400
Dallas, TX 75201
vince.slusher@faegredrinker.com

**Interested Party**

CTB AZ, LLC
Engelman Berger, P.C.
Attn: Scott B. Cohen
2800 N. Central Ave., Ste. 1200
Phoenix, AZ 85004
sbc@eblawyers.com

**United States Trustee**

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017
ustpregion16.nd.ecf@usdoj.gov

Brian D. Fittipaldi
United States Department of Justice
1415 State Street, Suite 148
Santa Barbara, CA 93101
Brian.fittipaldi@usdoj.gov

**United States of America**

U.S. Attorney General
950 Pennsylvania Ave. NW
Washington, DC 20530

United States Attorney's Office
Central District of California
312 North Spring Street, Ste. 1200
Los Angeles, CA 90012

United States Attorney's Office
District of Arizona
40 N. Central Avenue, Ste. 1800
Phoenix, AZ 85004-4449

**State of California**

Office of the Attorney General
1300 I Street
Sacramento, CA 95814-2919

Office of the Attorney General
P.O. Box 944255
Sacramento, CA 94244-2550

Office of the Attorney General
300 South Spring Street
Los Angeles, CA 90013-1230

**State of Arizona**

Office of the Attorney General
Mark Brnovich, Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004-2926

**Twenty Largest Creditors**

CAPGROW HOLDINGS JV SUB IV LLC
320 W OHIO ST., STE 650N
CHICAGO, IL 60654

RON W BROWN
C/O HVI, LLC
TUCSON, AZ 85728

ORSETT FOOTHILLS LLC
C/O ORSETT PROPERTIES, LTD.
PHOENIX, AZ 85016

EASLEY SUNLAND TUJUNGA LLC
808 LAKE BREEZE DR
HIGHLAND VILLAGE, TX 75077

PLAZA 44 TRUST ACCOUNT
C/O CASE, HUFF & ASSOCIATES INC
SCOTTSDALE, AZ 85254

STAFF OF LIFE LLC
4873 E SPEEDWAY BLVD
TUCSON, AZ 85712

IDEAL ARIZONA HOLDINGS LLC
ATTN J BRUCE FORBES
FT LAUDERDALE, FL 33316

MAQSOOD & SABINA ENTERPRISES, LLC
6000 E CALLE DE VITA
TUCSON, AZ 85750

LA ESTANCIA APARTMENTS
6445 S MAPLE AVE.
TEMPE, AZ 85283

CTC PROPERTY MANAGEMENT, LLC
2197 S 4TH AVE. STE 206
YUMA, AZ 85364

JANET CASE
PETER SPICER
SPOKANE, WA 99203

CAPGROW HOLDINGS JV SUB III LLC
320 W OHIO ST., STE 650N
CHICAGO, IL 60654

HSL ASSET MANAGEMENT, LLC
201 S KOLB RD
TUCSON, AZ 85710

MICHAEL WINSHIP
572 MASON RD
VISTA, CA 92084

K LAZY V HOLDINGS, LLC
PO BOX 2641
OVERGAARD, AZ 85933-2641

WYATT SIEGAL
8511 E EDGEMONT AVE.
SCOTTSDALE, AZ 85257

BILL LINDERMAN
18021 N 50TH PLACE
SCOTTSDALE, AZ 85254

WEST USA REALTY
ATTN: BOB MORRIS
SCOTTSDALE, AZ 85254

AURORA SKY REALTY LLC
1843 PASEO SAN LUIS, STE A
SIERRA VISTA, AZ 85635

TOWNS, J E
780 CAYO GRANDE COURT
NEWBURY PARK, CA 91320

**Requests for Notice**

Steven P. Ordaz
BMC Group, Inc.
500 N. Dearborn St., Ste. 800
Chicago, IL 60654
sordaz@bmcgroup.com

Scott L. Whitman
Scott L. Whitman, Inc.
5670 Wilshire Blvd., Ste. 2170
Los Angeles, CA 90036
slw@mwlegal.com

Schinner & Shain, LLP
Attn: Agustin R. Pina
96 Jessie St.
San Francisco, CA 94105
pina@schinner.com

David R. Johanson, Esq.
Hawkins Parnell & Young, LLP
1776 Second Street
Napa, CA 94559
djohanson@hpylaw.com

Lisa D. Angelo
Murchison & Cumming, LLP
801 South Grand Ave., Ninth Floor
Los Angeles, California 90017-4613
langelo@murchisonlaw.com

Kelsey L. Maxwell
Murchison & Cumming, LLP
801 South Grand Ave., Ninth Floor
Los Angeles, California 90017-4613
kmaxwell@murchisonlaw.com

Scott L. Whitman, Esq.
Scott L. Whitman, Inc.
6310 San Vicente Blvd., Suite 430
Los Angeles, CA 90048