# EXHIBIT B

| | |
|---|---|
| **From:** | Jeff Manning |
| **To:** | Bill Richards; Nicole Rynearson; nicoledavis@azdes.gov; nfidel@azdes.gov; vrountree@azdes.gov; ZRamadan@azdes.gov; spobrien@gustlaw.com; RWilliams@gustlaw.com; Shayna Stuart |
| **Cc:** | vince.slusher@faegredrinker.com; Perry, Kristen L.; kaitlin.mackenzie@faegredrinker.com; Mark G. Monson; Mary Lynn Greenhow |
| **Subject:** | CohnReznick Capital Response to DDD Inquiry |
| **Date:** | Thursday, October 22, 2020 5:29:38 AM |
| **Attachments:** | image004.png |
| | 2020 Oct 22 Manning Ltr to Richards marked.pdf |

Mr. Richards – last evening at 7:37pm Ms. MacKenzie forwarded your email to my attention.  Please find attached a marked pdf with our responses.  JRM

**CohnReznick Capital**
Jeffrey R. Manning | Managing Director
500 East Pratt Street, ste. 400, Baltimore, MD 21202
P: +1 (410) 690-8788 | M: +1 (917) 549-0312
E: jeff.manning@cohnreznickcapital.com
*Esse quam videri…*



www.cohnreznickcapital.com

©2020 Securities offered through CohnReznick Capital Markets Securities LLC, a Maryland limited liability company. The firm is a member of FINRA and SIPC and is registered as a broker dealer with the SEC.
The information in this transmission is privileged and confidential and intended only for the recipient listed above. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution of this message, or the taking of any action based upon it, is strictly prohibited.

---

**From:** MacKenzie, Kaitlin W. <kaitlin.mackenzie@faegredrinker.com>
**Sent:** Wednesday, October 21, 2020 7:45 PM
**To:** Jeff Manning <jeff.manning@cohnreznickcapital.com>
**Cc:** vince.slusher@faegredrinker.com; Perry, Kristen L. <kristen.perry@faegredrinker.com>
**Subject:** FW: CPES Issues

Jeff,

Please see below.  Is there any member information in the data room?

Kaitlin W. MacKenzie
(302) 467-4213

---

**From:** Bill Richards <BRichards@rmazlaw.com>
**Sent:** Wednesday, October 21, 2020 7:37 PM
**To:** Slusher, Vince <vince.slusher@faegredrinker.com>; Perry, Kristen L.

<kristen.perry@faegredrinker.com>; MacKenzie, Kaitlin W. <kaitlin.mackenzie@faegredrinker.com>
**Cc:** Nicole Rynearson <NRynearson@rmazlaw.com>; Nicole Davis <nicoledavis@azdes.gov>; Nicolette Fidel <nfidel@azdes.gov>; Virginia Rountree <vrountree@azdes.gov>; Zane Garcia Ramadan <ZRamadan@azdes.gov>; Séan O'Brien <spobrien@gustlaw.com>; Robert Williams <RWilliams@gustlaw.com>; Shayna Stuart <SStuart@rmazlaw.com>
**Subject:** CPES Issues

**This Message originated outside your organization.**

Vince, Kristen and Kaitlin – Can you please forward us copies of the CapGrow leases for the CPES homes, including all schedules and amendments?

Also, can you confirm for us whether all the bidders at the virtual auction were provided access to copies of the leases for all the CPES group homes prior to the auction? If so, was that via the data room or through any sort of direct delivery?

Also, can you please let us know if anyone advised any of the bidders that they would have an opportunity to negotiate amendments to any of the leases or to negotiate for replacement of any of the leases with a new lease after they had submitted their bids and the auction had ended? If so, what were they told they could do to negotiate with the landlords after being deemed the highest bid or a backup bid? And, who was informing the bidders of these details?

Finally, can you please provide us an inventory of the full information that was made available to the bidders who bid at the virtual auction, either through the data room or otherwise, about the members or member census for each of the group homes? As you know, the service needs, rates of reimbursement, minimum staffing ratios, medical issues and needs, degree of supervisory effort, and level of employee skill and training required for each location could vary greatly depending on the member needs. It seems unusual that vendors would have bid on so many different homes thinking it might provide them an opportunity to provide services to the members there without wanting to know lots of specifics about the members, their conditions and needs, their service levels and authorizations, and other relevant factors that could impact vendor management/administrative burden, employee/services expenses, and vendor net income. What information about member needs and personal details were the bidders given access to? If you can provide us both an explanation and access to the specific information that was made available for the bidders in the CPES auction that would be best.

Lastly, as to the information about members that bidders may have been given access to, were any other persons outside CPES or your firm given access to that information? For example, were any vendors who were neither among the DES-DDD designated vendors or actual bidders at the auction given access to any member information? And, was Mr. Manning or his firm or associates given access to any of that information? I thought we may have been informed in a prior communication with Vince, or perhaps Vince and Kristen, that Mr. Manning and his firm were the managers of the data room. If that is so, it would suggest they would have populated the digital room with any

member information; please confirm if that, or something like it, was the case. Also, can you let us know if Mr. Manning, his firm or his colleagues who may have communicated with potential bidders were given access to or used any member information in discussing the bidding process or opportunities verbally with potential bidders?

Again, we need to have the information promptly, and we appreciate your expediting your responses. If you need to respond on a rolling basis to get the information back to us as quickly as possible, please feel free to do so.

Please let me know if you have any questions. – Bill

Bill Richards
Attorney
Richards & Moskowitz PLC
1850 N. Central Avenue, Suite 2010
Phoenix, AZ 85004
Office: (602) 595-7800
Fax:  (602) 812-7995
brichards@RMazlaw.com
RMazlaw.com [rmazlaw.com]



This transmission is intended only for the addressee and may contain privileged and confidential information. Any unauthorized use, dissemination or copying is prohibited. If you have received this transmission in error, please notify us immediately by return email, and delete or destroy this communication and all attachments. Unless stated in this e-mail, this message does not constitute a digital or electronic signature.

We do not provide tax advice and therefore any advice contained in this email and any attachments is not intended to be used, and cannot be used, for purposes of avoiding tax penalties that may be imposed on any taxpayer.

©2019 CohnReznick Capital Markets Securities LLC, a Maryland limited liability company, is a member of FINRA and SIPC and is registered as a broker dealer with the SEC. All rights reserved. The information in this transmission is privileged and confidential and intended only for the recipient listed above. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution of this message, or the taking of any action based upon it, is strictly prohibited.

Vince, Kristen and Kaitlin – Can you please forward us copies of the CapGrow leases for the CPES homes, including all schedules and amendments?

We leave this to Debtor Counsel, although for the record DDD was invited into the online data base on June 12, 2020 through Mr. O'Brien.

The most productive way to resolve your questions is to give anyone from DDD direct access to the data room. Please forward email contacts and we will provide access.

Also, can you confirm for us whether all the bidders at the virtual auction were provided access to copies of the leases for all the CPES group homes prior to the auction?  If so, was that via the data room or through any sort of direct delivery?

All potential bidders were provided access to the data room pursuant to an NDA.  Working with Debtor management, all the leases were posted into the data room prior to the auction.

Also, can you please let us know if anyone advised any of the bidders that they would have an opportunity to negotiate amendments to any of the leases or to negotiate for replacement of any of the leases with a new lease after they had submitted their bids and the auction had ended?  If so, what were they told they could do to negotiate with the landlords after being deemed the highest bid or a backup bid?  And, who was informing the bidders of these details?

As we have advised hundreds of potential bidders over the years in scores of §363 sales, it is the debtor's intention to take the prevailing bidder's instructions whether to "assume or reject" a lease or executory contract.  It is a common tactic to inform a landlord of the intent to reject a lease in order to open a pathway to renegotiate terms.  I had this conversation dozens of times with potential CPES AZ bidders.

Finally, can you please provide us an inventory of the full information that was made available to the bidders who bid at the virtual auction, either through the data room or otherwise, about the members or member census for each of the group homes?

Member Information:  At the end of each month, a summary of the aggregate AZ census information was published in the data room, although to protect Personal Healthcare Information (PHI) the names of members were deleted.

You may recall, prior to the auction on the 15th of October, you received an email with a spreadsheet "2020 Oct 15 Master Bid File v2.xlsx" time stamped 11:37 am EDT.  That file included summary information on members, including number of Bedrooms, Max Capacity, Current Census, Vacancy, and Staffing Range.  This information was highlighted for each Group Home during the Oct 15th auction which you participated in.

In my Declaration filed on 10/19/20 and Entered 10/19/20 09:05:07, in paragraph 14 " Working with the Debtor, CRC developed a "Master Bid File" that for each Group Home included: DDD District, DDD Agency Designate, the Opening Bid & Bidder, Street Address, City, Zip, County, House Name, No. of Bedrooms, Max Capacity, Current Census, Vacancy, Staffing Range, Name of the Landlord, Monthly Rent, Cure Costs, Vehicle Make/Model, VIN#, approximate mileage, estimated Kelly Blue Book Value, noting whether the vehicle was Leased or Owned, and finally specific Notes on that site, if any.

As you know, the service needs, rates of reimbursement, minimum staffing ratios, medical issues and needs, degree of supervisory effort, and level of employee skill and training required for each location could vary greatly depending on the member needs. It seems unusual that vendors would have bid on so many different homes thinking it might provide them an opportunity to provide services to the members there without wanting to know lots of specifics about the members, their conditions and needs, their service levels and authorizations, and other relevant factors that could impact vendor management/administrative burden, employee/services expenses, and vendor net income.

What information about member needs and personal details were the bidders given access to? If you can provide us both an explanation and access to the specific information that was made available for the bidders in the CPES auction that would be best.

Monthly reports also included the DDD Rate Card, CPES Timecards by Group Home for the past year (with Employee Names deleted), and CPES reimbursement by Group Home for the past year, again with member names deleted.

A number of potential bidders commented to CRC that this basic information was not provided to them through the DDD process.

If DDD wishes to access the "specific information that was made available" then please request access to the data room.

Lastly, as to the information about members that bidders may have been given access to, were any other persons outside CPES or your firm given access to that information? For example, were any vendors who were neither among the DES-DDD designated vendors or actual bidders at the auction given access to any member information? And, was Mr. Manning or his firm or associates given access to any of that information?

To the best of my knowledge and belief, most of the time PHI of the member was deleted prior to CohnReznick Capital receiving it from the Debtor, but in the event we inadvertently received any information with member or employee names included, that information was promptly deleted.

None of that personal information was ever posting into the online data room.

Pursuant to CRC's Engagement Letter is paragraph 10. "Confidentiality. Except as contemplated by the terms hereof or as required by applicable law and FINRA regulations, CRC shall keep confidential all material non-public information provided to it by the Debtors, and shall not disclose such information to any third party, other than such of its employees, affiliates, agents and advisors as CRC determines to have a need to know. The Documents and any other confidential information or data about the Debtors will be made available to potential Transaction parties only upon its execution of a confidentiality agreement prepared by CRC and reasonably acceptable to the Debtors."

I thought we may have been informed in a prior communication with Vince, or perhaps Vince and Kristen, that Mr. Manning and his firm were the managers of the data room.

Under our engagement letter, that is also public and filed with the Court, our Duties and Services in 1(f) include "directing and coordinating the due diligence process;"

Yes, we were "managers of the data room" with joint Administrative functions with the Debtors, i.e., both CRC and Debtor could post and delete files into the online data room.

If that is so, it would suggest they would have populated the digital room with any member information; please confirm if that, or something like it, was the case.  Also, can you let us know if Mr. Manning, his firm or his colleagues who may have communicated with potential bidders were given access to or used any member information in discussing the bidding process or opportunities verbally with potential bidders?

Asked and answered above.

All information on the members was limited to a summary basis protecting PHI.

Again, we need to have the information promptly, and we appreciate your expediting your responses.  If you need to respond on a rolling basis to get the information back to us as quickly as possible, please feel free to do so.

In closing, we invite DDD to submit emails to parties that would like to have access to the online data room.  To the best of my knowledge and belief, in addition to the Qualified Bidders all the other DDD Awardees executed an NDA and were given access to the online data room, although in two cases the other Awardees lacked the sophistication to access the data room and locate the relevant leases, so CRC or debtor counsel had to forward those leases directly.

Respectfully submitted, Jeffrey R. Manning, CTP
Managing Director, CohnReznick Capital, the court-appointed Investment Banker

Please let me know if you have any questions. – Bill

Bill Richards
Attorney
Richards & Moskowitz PLC