Jennifer C. Kalvestran - CA Bar #242157
Sean P. O'Brien - AZ Bar #010540, *Admitted Pro Hac Vice*
Robert C. Williams - AZ Bar #033213, *Admitted Pro Hac Vice*
**GUST ROSENFELD, PLC**
11900 W. Olympic Boulevard, Suite 800
Los Angeles, CA 90064
Tel: (602) 257-7460
Fax: (602) 254-4878
E-Mail: jkalvestran@gustlaw.com
E-Mail: spobrien@gustlaw.com
E-Mail: rwilliams@gustlaw.com

**RICHARDS & MOSKOWITZ PLC**
1850 North Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: 602-595-7800
Facsímile: 602-812-7995
E-mail: brichards@rmazlaw.com
Name and Arizona State Bar No.:
William A. Richards #013381
Attorneys for the *Arizona Department
of Economic Security, Division of Developmental Disabilities*

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>Community Provider of Enrichment Services, Inc. d/b/a/ CPES Inc., et al.,<br><br>Debtors. | Lead Case No. 9:20-bk-10554-DS<br><br>Jointly Administered With:<br>Case No. 9:20-bk-10553-DS<br>Case No. 9:20-bk-10994-DS<br><br>Chapter 11 |
| Movant:<br><br>Arizona Department of Economic Security, Division of Developmental Disabilities ("DES-DDD"). | **Hearing**:<br><br>Date:    November 3, 2020<br>Time:   11:30 a.m. (Pacific Time)<br>Pace:   Via Zoom for Government<br>             Courtroom 201<br>             United States Bankruptcy Court<br>             1415 State Street<br>             Santa Barbara, CA 93101 |
| This Filing Applies To:<br><br>Community Provider of Enrichment Services, Inc. d/b/a/ CPES Inc. et al, Debtors-In-Possession. | |

3896928.2

1

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, DIVISION OF DEVELOPMENTAL DISABILITIES' ("DES-DDD") SUPPLEMENTAL BRIEF REGARDING OBJECTION TO THE SALE OF CPES AZ HOMES TO NON-DES-DDD DESIGNATED VENDORS**

The transition process for the Arizona Department of Economic Security, Division of Developmental Disabilities ("DES-DDD") Members in group homes operated by Defendant Community Provider of Enrichment Services, Inc. d/b/a CPES Inc.'s ("CPES AZ's") has continued since the filing of the DES-DDD Objection to the Sale of CPES AZ Homes to Non-DES-DDD Designated Vendors. DES-DDD offers the following supplement to update the Court so its decisions at the upcoming hearing November 3, 2020 are fully informed. The most current information shows the DES-DDD transition system is working well to ensure maximum protection of member safety and the respect for the members and their responsible family and guardians' directives that is required under the Arizona member-directed Medicaid system for the developmentally disabled.

**A.    Negotiations by the DES-DDD Designated Vendors to Acquire Lease Rights on the Vast Majority of the Group Homes Operated by CPES Are Progressing.**

Contrary to the suggestion by CPES that many of the DES-DDD vendors have somehow arbitrarily decided to abandon CPES group homes and move the Members, it appears that the vast majority of DES-DDD's designated vendors for the CPES group homes intend to and should be able to successfully negotiate a take-over of the CPES leases and keep the Members in their homes. In fact, a combination of data and details offered by CPES about those negotiations and DES-DDD's own communications with the designated qualified vendors shows that of the 54 CPES group homes, DES-DDD expects that its designated vendors will have secured leases on at least 30 of them shortly, and CPES has reported that some already have been committed to an executed lease. Fourteen of those could be assisted by the Court entering its order authorizing CPES to

3896928.2

approve and close the fourteen bids listed in Table 1 of the DES-DDD Objection [Doc. 425], all of which involve group homes that DES-DDD's designated vendor also bid on at the CPES auction.  It appears to DES-DDD that maintaining Members at CPES group home locations is still in question at a minority of the CPES group homes.  And there would be good cause for all those potential moves should they prove necessary.

### B. Eleven of the CPES Group Homes Have Dangerous or Highly Expensive Physical Conditions That Make Continuation of the Leases Inappropriate.

The Court has seen that nothing in the filings of CPES or its auctioneer, CohnReznick Capital, make any representations about the physical conditions at any of the CPES leased group home locations or CPES's failure to maintain them.  DES-DDD has received reports from several of its designated vendors who have inspected the CPES homes that several of the CPES group homes suffer from deficiencies that make the home inadequate or even dangerous for the care of the member(s) housed there.  The vendor inspections are needed because each vendor will need to obtain a new group home license from the Arizona Department of Health Services ("ADHS") and needs to independently ensure the integrity and safety of the homes.

In addition, some DES-DDD designated vendors have reported that other CPES homes suffer from serious physical dilapidation and deferred maintenance that makes them structurally/physically insufficient and therefore also financially unworkable, particularly where the landlord is unwilling to provide efficient and effective solutions. For instance, serious roof or plumbing issues, left to the tenant to work out, may make a lease economically infeasible.  A vendor who cannot afford to economically operate its group homes within the parameters of the rates paid by DES-DDD can create a danger to continued care of the members.  CPES itself provides the most stark example of this.

Requiring a DES-DDD qualified vendor to negotiate a lease on a group home facility that is either physically deficient or unsafe for the Members residing there poses

3896928.2

multiple problems.  First, Arizona law will require that the new vendor obtain a new group home license from the ADHS.  While ADHS is a separate state agency, DES-DDD appreciates that ADHS may identify the same deficiencies and dangers that the new vendor has identified and deny a license.  As the Court is aware, any delay now in obtaining an ADHS group home license slows the transition and makes it possible that the group home members will need to rely on care by CPES past the deadlines it has set for stopping operations.   Those risks to member care and safety are not acceptable.

Also, where, as reported by DES-DDD designated vendors, a home may suffer from serious roofing or plumbing problems, or unsafe windows, or deferred maintenance that has caused surfaces like paint and flooring to become overly soiled, flaked, torn or worn, the home presents material risks of substantial unaffordable short and long term repair and replacement and modification costs for the vendor.  DES-DDD and its vendors can logically conclude that a landlord who has allowed CPES to operate under such conditions intends to leave all such matters to the vendor.  The Court requires no imagination to see that such facility issues could pose tens of thousands of dollars in near-term costs for the vendor.  In fact, DES-DDD's designated vendor for the CPES group home referred to as "Kataline" (5254 E. 5th Street) has reported its belief that it could take some $50,000 in repairs to correct minimally needed items.

DES-DDD qualified vendors are expected to operate financially efficiently.  They are not in a financial position to undertake thousands of dollars in current and future repairs or building modifications without risking negative impacts on their ability to fund proper member care.  Thus, while DES-DDD considers the scope of home and lease conditions that may require member moves, DES-DDD plans to and has started to implement several degrees of instruction and requirements to provide member protections.  First, DES-DDD is instructing the designated vendors to make arrangements to keep and employ all appropriate and qualified CPES caregivers who have established

3896928.2

4

relationships with the Members, even in cases where members may need to move to other locations. DES-DDD understands that its designated vendors are pursuing employment of CPES caregivers across the CPES group homes to help make all transitions as seamless and safe as possible, whether members will be staying in their current location or having to move elsewhere.

Second, DES-DDD has instructed vendors that contend physical or lease issues preclude continued use of a particular CPES group home that they would be required to locate alternative group home property nearby and in the same community so that the Members will continue to have access to the same community and all the opportunities, classes, facilities and recreational options their existing community provides them now. Third, DES-DDD has encouraged the vendors who contend that a member move may be needed to engage and coordinate with the Member's family and guardians about the need for a move and the family and guardians' thoughts and recommendations. Vendors who have already conducted this sort of engagement for the group homes at 4450 W Meggan Pl, 29th Street (Community Options) and 7101 E 33rd Pl, La Entrada (AIRES) tell DES-DDD that the member family and guardians are excited for a move and favor it.

### C. Non-standard Lease Terms Preclude Negotiation on Two Homes.

One of qualified vendors selected by Members' family and guardians for three CPES group homes, Danville Services ("Danville"), is unable to complete negotiations on two of the current CPES homes because the landlord, CapGrow, requires a tenant to provide a $2 million insurance policy. Danville reports it cannot obtain such a policy on anything close to reasonable economic terms. Per DES-DDD officials familiar with lease terms for group homes operating in the DES-DDD qualified vendor network, the $2 million insurance policy requirement is not a standard condition. While Danville was able to secure the coverage required by CapGrow on a different lease it entered previously with CapGrow, Danville reports its insurer will not issue a policy that large again, and

3896928.2

that it would cost Danville an unaffordable amount to obtain the insurance elsewhere.

Given that the family and guardians of the Members in the two homes at issue selected Danville, and that DES-DDD has already started managing the terms of any move to ensure the Members are kept in the same immediate community, kept with as many of the same CPES caregivers as possible, and the family and guardians support any move, DES-DDD will support the move of the Members involved.

**D.     DES-DDD is Re-Designating Certain Members Assigned to Active Friendly Care.**

DES-DDD advised the Court in its Objection that it was continuing to monitor and assess its designated vendors throughout the transition process and would take appropriate action if it believed any changes were required.  Through ongoing communications with Active Friendly Care, that vendor has withdrawn itself from consideration for transition of members residing at CPES group homes known as North Haven and as Huntington #A and Huntington #B. DES-DDD is undertaking a comprehensive re-review of appropriate, interested and qualified vendors and plans to have a new designation of vendor(s) for the impacted Members on or about November 6, 2020.  DES-DDD believes that at that time the new vendor(s) will proceed promptly to try and negotiate lease terms with the CPES landlords and assess if they desire to acquire any personal property from CPES just like all the other vendors.

**II.     Conclusion.**

DES-DDD continues to actively guide, monitor and execute its detailed transition process.  The most current information DES-DDD has predicts that DES-DDD designated vendors will negotiate final leases on the vast majority of the CPES group homes.  In all other cases, DES-DDD is continuing to manage the transition process to ensure as few Member moves as possible are needed and that even where they are required by good cause the Members will likely continue to be served in nearby home locations largely by

3896928.2

6

the same direct caregivers they had at CPES, who will now be employees of the new vendors.

The primary uncertainty at this time is just whether the Court will somehow approve bids made at the auction by entities that are either not DES-DDD designated vendors or not even a holder of a DES-DDD Qualified Vendor Agreement. If that were to happen, the number of Members who have to be moved from their current homes will increase dramatically. And, unlike in the current circumstances where moves may be required by dangerous or otherwise inadequate physical conditions at CPES group homes, excessive maintenance and repair needs at those homes, or financially infeasible lease terms demanded by the CPES landlords, a court order awarding the lease to a non-DES-DDD designated vendor would impose an unnecessary and arbitrary impediment to Member stability and care.

Thus, the Court should still order that: (1) CPES may approve and close the high bids made by vendors who are DES-DDD designated vendors and complete the assumption and assignment of the leases for those bids to the extent the bidders accept them; (2) all other bids are invalid as the pre-condition of DES-DDD approval was never obtained; (3) CPES must cooperate with DES-DDD, the DES-DDD designated vendors and the landlords on the remaining group homes to try and negotiate lease terms by which the DES-DDD designated vendors can assume the leases (except where DES-DDD supports the designated vendor's intent to move); and (4) CPES should cooperate with DES-DDD in the best interests of the Members CPES serves and develop a continuity of services plan that will allow for the servicing and protection of the Members even if CPES is unable to fully transition all Members in CPES's care by December 31, 2020.

Respectfully submitted this 2nd day of November, 2020.

3896928.2

**GUST ROSENFELD P.L.C.**

By: */s/ Séan P. O'Brien - 010540*
    Jennifer C. Kalvestran - CA Bar #242157
    Séan P. O'Brien - AZ Bar #010540
    *Admitted Pro Hac Vice*
    Robert C. Williams - AZ Bar #033213
    *Admitted Pro Hac Vice*

**RICHARDS & MOSKOWITZ PLC**

*/s/ William A. Richards - 013381*
William A. Richards- AZ Bar #013381
*Admitted Pro Hac Vice*
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
*Attorneys for the Arizona Department of Economic Security, Division of Developmental Disabilities*

3896928.2

8