FAEGRE DRINKER BIDDLE & REATH LLP
JEREMY M. PELPHREY (CA Bar # 249862)
Jeremy.Pelphrey@faegredrinker.com
SCOTT F. GAUTIER (CA Bar # 211742)
Scott.Gautier@faegredrinker.com
1800 Century Park East, Suite 1500
Los Angeles, CA 90067
Telephone:          (310) 203-4000
Facsimile:          (310) 229-1285

*Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>CPESAZ Liquidating, Inc., et al.,<br>EIN: 86-0804057<br>NDS Liquidating, Inc.<br>EIN: 27-5174435<br>CPESCA Liquidating, Inc.<br>EIN: 27-2315212<br><br>Debtors.<br><br>[•] Affects All Debtors<br><br>[ ] CPESAZ Liquidating, Inc.<br>[ ] NDS Liquidating, Inc.<br>[ ] CPESCA Liquidating, Inc.<br><br>Debtors and Debtors in Possession | Lead Case No. 9:20-bk-10554-DS<br><br>Jointly Administered With:<br>Case No. 9:20-bk-10553-DS<br>Case No. 9:20-bk-10994-DS<br><br>Chapter 11 Cases<br><br>**DISCLOSURE STATEMENT DESCRIBING DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION**<br><br><u>Disclosure Statement Hearing</u>:<br>Date: February 3, 2021<br>Time: 11:30 a.m. (Pacific Time)<br>Place: Courtroom 201<br> United States Bankruptcy Court<br> 1415 State Street<br> Santa Barbara, CA 93101 |

**THIS PROPOSED DISCLOSURE STATEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED THIS DISCLOSURE STATEMENT UNDER BANKRUPTCY CODE § 1125. THIS PROPOSED DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL ONLY, AND HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.**

ACTIVE.125189347.02

# TABLE OF CONTENTS

Article I Introduction and Overview ................................................................................................ 1

   A.  Prefatory Statement and Definitions ...................................................................... 1

   B.  Introduction ............................................................................................................ 1

   C.  Disclaimers ............................................................................................................ 2

   D.  Plan Overview ........................................................................................................ 5

   E.  Eligibility to Vote .................................................................................................. 7

   F.  The Confirmation Hearing .................................................................................. 11

Article II Background of the Debtors and Chapter 11 Cases ........................................................ 12

   A.  Overview of the Debtors' Businesses ................................................................. 12

   B.  Corporate and Capital Structure .......................................................................... 13

   C.  Summary of Assets and Liabilities ..................................................................... 13

   D.  Events Leading to Debtors' Chapter 11 Filing ................................................... 13

   E.  The Chapter 11 Cases ......................................................................................... 14

Article III  Summary of the Plan .................................................................................................. 27

   A.  Overview of Chapter 11 ...................................................................................... 27

   B.  Classification of Claims and Interests ................................................................ 29

   C.  Treatment of Unclassified Claims ...................................................................... 33

   D.  Means for Implementation ................................................................................... 35

   E.  Additional Means for Implementation of the Plan .............................................. 39

   F.  Treatment of Unexpired Leases and Executory Contracts .................................. 47

   G.  Provisions Regarding Distributions ..................................................................... 49

   H.  Procedures for Resolving Disputed Claims and Interests ................................... 54

   I.  Effect of Confirmation of the Plan ...................................................................... 56

   J.  Conditions Precedent to the Effective Date ........................................................ 63

   K.  Modification, Revocation, or Withdrawal of the Plan ........................................ 64

   L.  Retention of Jurisdiction by the Bankruptcy Court ............................................ 65

   M.  Miscellaneous Provisions .................................................................................... 67

ARTICLE IV CERTAIN FACTORS TO BE CONSIDERED REGARDING THE PLAN ........ 70

   A.  Parties in Interest May Object to Debtors' Classification of Claims and Interests ........... 70

   B.  The Debtors May Not Be Able to Secure Confirmation of the Plan ................... 70

   C.  Nonconsensual Confirmation .............................................................................. 71

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.   Risk of Non-Occurrence of the Effective Date ................................................... 72

E.   Risk of Post-Effective Date Default ...................................................................... 72

F.   Amount or Classification of a Claim or Interest May be Subject to Objection ................. 72

G.   Estimated Claim Amounts by Class May Not be Accurate ................................. 72

H.   Validity of Votes Cast to Accept Plan Not Affected by Contingencies .......................... 73

ARTICLE V FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ........................ 73

ARTICLE VI CONFIRMATION OF THE PLAN; VOTING REQUIREMENTS .................... 74

A.   Requirements for Confirmation ............................................................................ 74

B.   Best Interests Test .................................................................................................. 74

C.   Financial Feasibility Test ....................................................................................... 75

D.   Acceptance by Impaired Classes .......................................................................... 75

ARTICLE VII RECOMMENDATION AND CONCLUSION ................................................... 76

ACTIVE.125189347.02

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ARTICLE I

## INTRODUCTION AND OVERVIEW

### A.  Prefatory Statement and Definitions

Under chapter 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), CPESAZ Liquidating, Inc. *fka* Community Provider of Enrichment Services, Inc. d/b/a CPES, Inc. and its Debtor affiliates in the above-captioned chapter 11 cases hereby submit this Disclosure Statement in support of the *Debtors' First Amended Joint Chapter 11 Plan of Liquidation* (the "Plan"). The definitions contained in the Bankruptcy Code are incorporated herein by this reference. The definitions set forth in Section 1.1 of the Plan shall also apply to capitalized terms used herein that are not otherwise defined.

### B.  Introduction

On April 24, 2020 (the "Phase I Petition Date"), CPESAZ Liquidating, Inc. *fka* Community Provider of Enrichment Services, Inc., d/b/a CPES Inc. ("CPES AZ") and NDS Liquidating, Inc. *fka* Novelles Development Services, Inc. ("Novelles" and together with CPES AZ, the "Original Debtors") commenced with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") voluntary cases under chapter 11 of the Bankruptcy Code. On August 11, 2020 (the "Phase II Petition Date" and together, with the Phase I Petition Date, the "Petition Date"), CPESCA Liquidating, Inc. *fka* CPES California, Inc. ("CPES CA" together with Novelles, the "California Debtors" and the California Debtors together with CPES AZ, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (together with the chapter 11 cases of the Original Debtors, the "Chapter 11 Cases"). Since filing for bankruptcy protection, the Debtors have continued to operate and manage their affairs as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

This Disclosure Statement, submitted in accordance with section 1125 of the Bankruptcy Code, contains information regarding the Plan proposed by the Debtors. A copy of the Plan is attached to this Disclosure Statement as Exhibit A. This Disclosure Statement is being distributed to you for the purpose of enabling you to make an informed judgment about the Plan.

This Disclosure Statement contains information concerning, among other matters: (1) the Debtors' background; (2) the assets available for distribution under the Plan; and (3) a summary of the Plan. The Debtors strongly encourage you to review carefully the contents of this Disclosure Statement and the Plan (including the exhibits to each) before making a decision to accept or reject the Plan. Particular attention should be paid to the provisions affecting or impairing your rights as a Creditor.

Following a hearing on [•], 2021, the Bankruptcy Court approved this Disclosure Statement as containing sufficient information to enable a hypothetical reasonable investor to make an informed judgment about the Plan. Under section 1125 of the Bankruptcy Code, this approval enabled the Debtors to send you this Disclosure Statement and solicit your acceptance of the Plan. The Bankruptcy Court has not considered for approval the Plan itself or conducted a detailed investigation into the contents of this Disclosure Statement.

Your vote on the Plan is important. Absent acceptance of the Plan, there may be protracted delays or a chapter 7 liquidation. These alternatives may not provide for distribution of as much value to Holders of Allowed Claims as does the Plan. **Accordingly, the Debtors urge you to accept the Plan by completing and returning the enclosed ballot no later than [•], 2021.**

## C. **Disclaimers**

THIS DISCLOSURE STATEMENT WAS PREPARED BY THE DEBTORS' PROFESSIONALS IN CONSULTATION WITH, AND BASED ON INFORMATION PROVIDED BY, THE DEBTORS THROUGHOUT THE CHAPTER 11 CASES AS WELL AS PUBLICLY AVAILABLE INFORMATION. THE DEBTORS ARE SOLELY RESPONSIBLE FOR THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE FINANCIAL OR LEGAL ADVICE. CREDITORS OF THE DEBTORS SHOULD CONSULT THEIR OWN ADVISORS IF THEY HAVE QUESTIONS ABOUT THE PLAN OR THIS DISCLOSURE STATEMENT. A REFERENCE IN THIS DISCLOSURE STATEMENT TO A "SECTION" REFERS TO A SECTION OF THIS DISCLOSURE STATEMENT, UNLESS OTHERWISE INDICATED.

WHILE THIS DISCLOSURE STATEMENT DESCRIBES CERTAIN BACKGROUND MATTERS AND THE MATERIAL TERMS OF THE PLAN, IT IS INTENDED AS A SUMMARY DOCUMENT ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ATTACHED TO THE PLAN AND THIS DISCLOSURE STATEMENT. SIMILARLY, DESCRIPTIONS IN THIS DISCLOSURE STATEMENT OF PLEADINGS, ORDERS, AND PROCEEDINGS IN THE CHAPTER 11 CASES ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE RELEVANT DOCKET ITEMS. YOU SHOULD READ THE PLAN AND THE EXHIBITS TO OBTAIN A FULL UNDERSTANDING OF THEIR PROVISIONS. ADDITIONAL COPIES OF THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED TO THIS DISCLOSURE STATEMENT, AS WELL AS ANY DOCKET ITEMS FROM THE CHAPTER 11 CASES, ARE AVAILABLE FOR INSPECTION DURING REGULAR BUSINESS HOURS AT THE OFFICE OF THE CLERK OF THE BANKRUPTCY COURT, UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA, 1415 STATE STREET SANTA BARBARA, CA 93101. IN ADDITION, COPIES MAY BE VIEWED ON THE INTERNET AT THE BANKRUPTCY COURT'S WEBSITE (HTTPS://WWW.CACB.USCOURTS.GOV/) BY FOLLOWING THE DIRECTIONS FOR ACCESSING THE ECF SYSTEM ON SUCH WEBSITE. COPIES ARE ALSO AVAILABLE FREE OF CHARGE ON BMC GROUP INC.'S WEBSITE (HTTPS://WWW.BMCGROUP.COM/CPES).

THE STATEMENTS AND INFORMATION CONCERNING THE DEBTORS AND THE PLAN SET FORTH IN THIS DISCLOSURE STATEMENT CONSTITUTE THE ONLY STATEMENTS OR INFORMATION CONCERNING SUCH MATTERS THAT HAVE BEEN APPROVED BY THE BANKRUPTCY COURT FOR THE PURPOSE OF SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN. **HOWEVER, APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES _NOT_ CONSTITUTE A FINDING OF FACT OR CONCLUSION OF LAW BY THE BANKRUPTCY COURT AS TO ANY FACTUAL OR LEGAL ASSERTION MADE BY THE DEBTORS HEREIN, NOR**

**DOES IT MEAN THAT THE BANKRUPTCY COURT AGREES WITH ANY SUCH FACTUAL OR LEGAL ASSERTION MADE BY THE DEBTORS HEREIN, NOR DOES IT MEAN THAT THE BANKRUPTCY COURT RECOMMENDS ACCEPTANCE OR REJECTION OF THE PLAN.**

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE PLAN WILL UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE THE DATE THIS DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED. THE DEBTORS ASSUME NO DUTY TO UPDATE OR SUPPLEMENT THE DISCLOSURES CONTAINED HEREIN AND DO NOT INTEND TO UPDATE OR SUPPLEMENT THE DISCLOSURES, EXCEPT AS PROVIDED HEREIN AND TO THE EXTENT NECESSARY AT THE HEARING ON CONFIRMATION OF THE PLAN.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN. CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD-LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS, INCLUDING THOSE ESTIMATES OF THE VALUE OF PROPERTY THAT WILL BE DISTRIBUTED TO THE HOLDERS OF CLAIMS, ESTIMATES OF THE PERCENTAGE RECOVERY OF THE VARIOUS TYPES OF CLAIMS, ESTIMATES OF THE AGGREGATE FINAL ALLOWED AMOUNTS OF THE VARIOUS TYPES OF CLAIMS, ESTIMATES OF THE PROCEEDS FROM THE SALE, LIQUIDATION, OR OTHER DISPOSITION OF THE DEBTORS' ASSETS AND ESTIMATES OF THE EXPENSES THAT WILL BE INCURRED DURING THE ADMINISTRATION OF THE PLAN. THERE CAN BE NO

ASSURANCE THAT ANY FORECASTED OR PROJECTED RESULTS CONTAINED HEREIN WILL BE REALIZED. ACTUAL RESULTS MAY VARY FROM THOSE SHOWN HEREIN, POSSIBLY BY MATERIAL AMOUNTS.

**D. Plan Overview**

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan. The Plan effectuates an orderly liquidation of the Debtors' assets and maximizes recovery to Creditors. The Plan distributes substantially all of the Debtors' cash to Holders of Allowed Claims.

The Plan provides that all Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Other Priority Claims, and Allowed General Unsecured Claims against the Debtors will be paid in full, in cash, up to the Allowed amount of their Claims. Additionally, Holders of Equity Interests will receive a distribution under the Plan.

The Plan proposes to fairly and efficiently liquidate and distribute the Debtors' assets in a manner that will allow the Chapter 11 Cases to be promptly concluded, with minimal expenses.

The Plan designates a series of six (6) Classes of Claims and Interests against the Debtors. These Classes take into account the differing nature of the various Claims and Interests and their relative priorities under the Bankruptcy Code and applicable non-bankruptcy law.

The following table (the "Plan Summary Table") summarizes the classification and treatment of Claims (including certain unclassified Claims), along with the projected recoveries for each class. **THE PLAN SUMMARY TABLE IS INTENDED FOR ILLUSTRATIVE PURPOSES ONLY AND DOES NOT ADDRESS ALL ISSUES REGARDING CLASSIFICATION, TREATMENT, AND ULTIMATE RECOVERIES. THE PLAN SUMMARY TABLE IS NOT A SUBSTITUTE FOR A FULL REVIEW OF THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY. IN ADDITION, NOTHING HEREIN IS INTENDED, NOR SHOULD IT BE CONSTRUED, AS AN ADMISSION BY THE DEBTORS AS TO THE ESTIMATED OR ALLOWED AMOUNT OF ANY CLAIM OR GROUP THEREOF, OR AS A GUARANTEE OR ASSURANCE**

1    **OF A PARTICULAR RECOVERY, OR RANGE OF RECOVERIES, ON ANY**

2    **ALLOWED CLAIM OR GROUP THEREOF. THE DEBTORS RESERVE ALL RIGHTS**

3    **WITH RESPECT TO THE ESTIMATION AND ALLOWANCE OF CLAIMS.**

4        AMOUNTS LISTED BELOW ARE ESTIMATES. ALL RECOVERIES ARE

5    APPROXIMATE, AND ACTUAL DISTRIBUTIONS MAY VARY AS A RESULT OF,

6    AMONG OTHER THINGS, THE CLAIM ADJUDICATION PROCESS IN THESE

7    CHAPTER 11 CASES.

| Class | Description | Treatment of Allowed Claims and Interests Within Class | Anticipated Recovery[1] |
|---|---|---|---|
| n/a | Administrative Claims | Receive, at the Debtors' election: (a) payment in Cash in an amount equal to the amount of such Allowed Other Secured Claim; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired | 100% |
| n/a | Priority Tax Claims | Paid in full, in Cash on the Effective Date or as soon as practicable thereafter. | 100% |
| 1 | Other Secured Claims | **Unimpaired; presumed to accept.** Paid in full, in Cash on the Effective Date or as soon as practicable thereafter. | 100% |
| 2 | Other Priority Claims | **Unimpaired; presumed to accept.** Paid in full, in Cash on the Effective Date or as soon as practicable thereafter. | 100% |
| 3 | General Unsecured Claims | **Impaired.** Each Holder of an Allowed General Unsecured Claim shall receive payment in Cash in an amount equal to the amount of such Allowed General Unsecured Claim. The Allowed amount of any Class 3 General Unsecured Claim shall include all interest accrued from the Petition Date through the date of distribution at the Federal Judgment Rate; provided, however, that in the event that the Bankruptcy Court determines that another interest rate should apply the Debtors will modify the Plan accordingly. The Liquidating Trustee will pay undisputed Allowed General Unsecured Claims within 60 days of the Effective Date | 100% |
| 4 | Intercompany Claims | **Impaired; deemed to reject.** Holders of Intercompany Claims will receive no distribution under the Plan. | 0% |
| 5 | Intercompany Interests | **Unimpaired; presumed to accept.** Upon the payment in full of Allowed Class 3 General Unsecured Claims, all Intercompany Interests shall be distributed to CPES AZ, their 100% owner, for distribution to creditors of CPES AZ including the ESOP | 100% |
| 6 | Equity Interests | **Impaired.** Allowed Class 6 Equity Interests will be paid a Pro Rata dividend, if any, and only to the extent Allowed Class 3 General Unsecured Claims are paid in full, from the remaining net proceeds of the Liquidating Trust Assets. | TBD% |

---

[1] The bases for the recovery estimates are discussed in the Liquidation Analysis attached as <u>Exhibit B</u> hereto.

THE TREATMENT AND DISTRIBUTIONS, IF ANY, PROVIDED TO HOLDERS OF ALLOWED CLAIMS UNDER THE PLAN WILL BE IN FULL AND COMPLETE SATISFACTION OF ALL LEGAL, EQUITABLE, OR CONTRACTUAL RIGHTS PRESENTED BY SUCH CLAIMS.

### E. Eligibility to Vote

#### 1. Who may Vote

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan. In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected the plan under section 1126(g) of the Bankruptcy Code, and, therefore, such holders do not need to vote on the plan.

With respect to the Plan, a Claim must be "Allowed" for purposes of voting in order for such creditor to have the right to vote. Generally, for voting purposes, a Claim is deemed "Allowed" absent an objection to the Claim if (i) a Proof of Claim was timely filed, or (ii) if no Proof of Claim was filed, the Claim is identified in the Debtors' Schedules as other than "disputed," "contingent," or "unliquidated," and an amount of the Claim is specified in the Schedules, in which case the Claim will be deemed Allowed for the specified amount. In either case, when an objection to a Claim is filed, the Holder of such Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or deems the Claim to be Allowed for voting purposes.

In connection with the Plan, therefore:

- Claims in Class 1 (Other Secured Claims) are unimpaired; accordingly, Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan and are <u>not</u> entitled to vote to accept or reject the Plan.

- Claims in Class 2 (Other Priority Claims) are unimpaired; accordingly, Holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan and are <u>not</u> entitled to vote to accept or reject the Plan.

- Claims in Classes 3 (General Unsecured Claims) are impaired; accordingly, Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

- Claims in Class 4 (Intercompany Claims) are impaired; accordingly, Holders of Allowed Class 4 Claims are deemed to have rejected the Plan and are <u>not</u> entitled to vote to accept or reject the Plan.

- Interests in Class 5 (Intercompany Interests) are unimpaired; accordingly, Holders of Allowed Class 5 Interests are not entitled to vote to accept or reject the Plan.

- Interests in Class 6 (Equity Interests) are impaired; accordingly, the ESOP Trustee, on behalf of the ESOP Trust, the sole Holder of Class 6 Equity Interests, is entitled to vote to accept or reject the Plan.

The Bankruptcy Code defines "acceptance" of a plan by (a) a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of the plan and (b) a class of interests as acceptance by Holders in the class that hold at least two-thirds of the number of interests that cast ballots for acceptance or rejection of the plan. **Your vote on the Plan is important.** The Bankruptcy Code requires as a condition to confirmation of a chapter 11 plan that each class that is impaired and entitled to vote under a plan vote to accept such plan, unless the provisions of Section 1129(b) of the Bankruptcy Code are met. Section 1129(b) of the Bankruptcy Code permits the confirmation of a chapter 11 plan notwithstanding the non-acceptance of a plan by one or more impaired classes of claims or equity interests, so long as at least one impaired class of claims or interests votes to accept the plan. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class.

### 2. **How to Vote**

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. This Disclosure Statement, the Exhibits attached hereto, the documents incorporated herein by reference, the Plan, and the related documents are the only materials the Debtors are providing to creditors for their use in determining whether to vote to accept or reject the Plan, and such materials may not be relied upon or used for any purpose other than to vote to accept or reject the Plan.

BALLOTS MUST BE COMPLETED AND RECEIVED NO LATER THAN THE VOTING DEADLINE OF [•] (PREVAILING PACIFIC TIME) ON [•], 2021. ANY BALLOT THAT IS NOT EXECUTED BY A DULY AUTHORIZED PERSON WILL NOT BE COUNTED. ANY BALLOT THAT IS EXECUTED BY THE HOLDER OF AN ALLOWED CLAIM OR INTEREST BUT THAT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED. FACSIMILE, EMAIL OR ELECTRONICALLY TRANSMITTED BALLOTS WILL NOT BE ACCEPTED. IF A HOLDER OF A CLAIM OR INTEREST SHOULD CAST MORE THAN ONE BALLOT VOTING THE SAME CLAIM PRIOR TO THE VOTING DEADLINE, ONLY THE LAST-DATED TIMELY BALLOT RECEIVED BY THE CLAIMS AND SOLICITATION AGENT WILL BE COUNTED. ADDITIONALLY, YOU MAY NOT SPLIT YOUR VOTES FOR YOUR CLAIMS WITHIN A PARTICULAR CLASS UNDER THE PLAN EITHER TO ACCEPT OR REJECT THE PLAN. THEREFORE, A BALLOT OR A GROUP OF BALLOTS WITHIN A PLAN CLASS RECEIVED FROM A SINGLE CREDITOR THAT PARTIALLY REJECTS AND PARTIALLY ACCEPTS THE PLAN WILL NOT BE COUNTED.

Pursuant to the Solicitation Procedures Order, the Bankruptcy Court has fixed [•]. (prevailing Pacific Time) on [•], 2021 (the "Voting Record Date") as the time and date for the determination of Persons who are entitled to receive a copy of this Disclosure Statement and all of the related materials and to vote whether to accept or reject the Plan. Accordingly, only Holders of record of Claims and Interests as of the Voting Record Date that are entitled to vote on the Plan, will receive a Ballot and may vote on the Plan.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Unless the Bankruptcy Court permits you to do so after notice and hearing to determine whether sufficient cause exists to permit the change, you may not change your vote after the voting deadline passes.

**DO NOT RETURN ANY DEBT INSTRUMENTS OR OTHER SECURITIES WITH YOUR BALLOT. DO NOT RETURN BALLOTS TO THE BANKRUPTCY COURT.**

**IF YOU BELIEVE THAT YOU ARE A HOLDER OF A CLAIM OR INTEREST IN A VOTING CLASS FOR WHICH YOU DID NOT RECEIVE A BALLOT, IF YOUR BALLOT IS DAMAGED OR LOST, OR IF YOU HAVE QUESTIONS CONCERNING VOTING PROCEDURES, PLEASE CONTACT BMC GROUP, INC. AT (888) 909-0100. PLEASE NOTE THAT BMC GROUP, INC. CANNOT PROVIDE YOU WITH LEGAL ADVICE.**

If you did not receive a Ballot and believe that you are entitled to vote on the Plan, you must either (a) obtain a Ballot by contacting the Claims and Solicitation Agent as set forth above and timely submit such Ballot by the Voting Deadline, or (b) file a Motion pursuant to Rule 3018 of the Bankruptcy Rules with the Bankruptcy Court for the temporary allowance of your Claim for voting purposes by [•], 2021, or you will not be entitled to vote to accept or reject the Plan.

All properly completed Ballots received prior to the Voting Deadline from Holders of a Claim or Interest entitled to vote on the Plan will be counted for purposes of determining whether a voting Class of Impaired Claims or Interests has accepted the Plan. The Claims and Solicitation Agent will prepare and file with the Bankruptcy Court a certification of the results of the balloting with respect to the Classes entitled to vote.

The Debtors reserve the right to object to any Proof of Claim after the Voting Record Date. With respect to any such objection, the Debtors may request, on notice, that any vote cast by the Holder of the subject Claim or Interest not be counted in determining whether the requirements of Section 1126(c) of the Bankruptcy Code have been met. In the absence of any such request, the Holder of the subject Claim or Interest will be entitled to vote or receive notice, as applicable under the Solicitation Procedures Order, in accordance with its Proof of Claim.

ACTIVE.125189347.02

10

Nothing in the solicitation procedures affects the right of the Debtors or the Liquidating Trustee to object to any Proof of Claim on any ground or for any purpose prior to the applicable Claims Objection Deadline established by the Plan.

### 3.  Importance of Your Vote

YOUR VOTE IS IMPORTANT. ONLY THOSE CREDITORS WHO ACTUALLY VOTE ARE COUNTED FOR PURPOSES OF DETERMINING WHETHER A CLASS HAS VOTED TO ACCEPT THE PLAN. YOUR FAILURE TO VOTE WILL LEAVE TO OTHERS THE DECISION TO ACCEPT OR REJECT THE PLAN.

THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF ALL HOLDERS OF CLAIMS AND INTERESTS AND RECOMMEND THAT ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.

### F.  The Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.

### 1.  Time and Place of Confirmation Hearing

Pursuant to Section 1128 of the Bankruptcy Code and Rule 3017(c) of the Bankruptcy Rules, the Bankruptcy Court has scheduled the Confirmation Hearing to commence on **[•], 2021, at [•] (prevailing Pacific Time)** before the Honorable Deborah J. Saltzman, of the United States Bankruptcy Court for the Central District of California, Courtroom 201, 1415 State Street, Santa Barbara, CA 93101. A notice setting forth the time and date of the Confirmation Hearing has been included along with this Disclosure Statement.

### 2.  Objections to the Plan

Any objection to confirmation of the Plan must be in writing; must comply with the Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court; and must be filed with the United States Bankruptcy Court for the Central District of California, and served upon the

following parties, so as to be received no later than **[•], 2021, at [•] (prevailing Pacific Time):** (a) Vincent Slusher, Faegre Drinker Biddle & Reath LLP, 1717 Main Street, Suite 5400 Dallas, TX 75201 & Jeremy M. Pelphrey and Ryan Salzman, Faegre Drinker Biddle & Reath LLP, 1800 Century Park East, Suite 1500, Los Angeles, CA 90067 (counsel for the Debtors) and (b) Brian Fittipaldi, United States Trustee, 1415 State Street, Suite 148, Santa Barbara, CA 93101.

FOR THE REASONS SET FORTH BELOW, THE DEBTORS URGE YOU TO RETURN YOUR BALLOT TO "ACCEPT" THE PLAN.

**ARTICLE II**

**BACKGROUND OF THE DEBTORS AND CHAPTER 11 CASES**

**A. Overview of the Debtors' Businesses**

The Debtors historically offered a comprehensive array of behavioral health services, including outpatient mental health services, an intensive therapy program, employee assistance program services, individual and group counseling, addiction recovery programs, child and family services, foster care, training and support for people with intellectual and developmental disabilities, and vocational services.

Prior to the Petition Date, the Debtors operated numerous day treatment centers and programs in California and Arizona. All of these programs were closed prior to the Petition Date due to governmental mandates arising out of the COVID-19 situation facing California, Arizona, and the rest of the United States. In addition, CPES AZ historically operated three thrift stores in Arizona as part of a vocational training program, which stores were also closed prepetition as a result of the COVID-19 mandates. In May 2020, CPES AZ ceased its behavioral health operations in Arizona.

The Debtors' prepetition day center programs in California were operated by Novelles at three regional treatment centers pursuant to separate services agreements. These California day programs were also closed prior to the Petition Date as a result of COVID-19 , and Novelles elected to terminate certain related agreements pursuant their respective terms prior to filing these Chapter 11 Cases.

Prior to the sale of substantially all of its assets, CPES AZ provided residences and services to developmentally disabled individuals in Arizona through over sixty group homes (all at leased

ACTIVE.125189347.02

12

facilities). Similarly, prior to the sale of substantially all of their assets, CPES CA and Novelles operated several similar facilities in California. The Debtors also provided supportive living services where employees of the Debtors provided support services to individual members in their own homes.

### B. Corporate and Capital Structure

Novelles and CPES CA are wholly owned subsidiaries of CPES AZ. The Debtors have no secured debt. The Equity Interests in CPES AZ are held by the CPES Employee Stock Ownership Trust in accordance with the CPES Employee Stock Ownership Plan (the "ESOP"). The ESOP is a qualified retirement plan.

### C. Summary of Assets and Liabilities

The Debtors' principal assets consist of the proceeds from the sales of substantially all of their assets, totaling approximately $10 million. The Debtors' principal liabilities consist of General Unsecured Claims, including litigation-related expenses as well as trade debt and rejection damages claims arising from the rejection of certain Unexpired Leases.

### D. Events Leading to Debtors' Chapter 11 Filing

The financial and operational issues that faced the Debtors were born out of a confluence of historical challenges and the recent state-wide shutdowns related to COVID-19. Operating losses plagued the Debtors due to a challenging cost structure, low reimbursement rates, and the changing healthcare landscape, among other things.

In the months leading up to the Petition Date, the Debtors held several meetings with the Arizona Department of Economic Security Division of Developmental Disabilities ("DES-DDD"), seeking a path for CPES AZ to continue its Arizona operations. Unfortunately, none of these efforts resulted in a viable financial solution. The Debtors thus commenced these Chapter 11 Cases to undertake an orderly sale and wind-down of all of its residential facilities and outpatient treatment programs and support services in Arizona and California. Following the Petition Date, DES-DDD remained uncooperative in the Debtors' restructuring efforts, and the Debtors' efforts to negotiate a transition plan for their Arizona operations were ultimately unsuccessful. Nevertheless, as more fully

described below, the Debtors accomplished multiple sales comprising substantially all of their assets pursuant to section 363 of the Bankruptcy Code and transitioned their operations to new providers.

**E.   The Chapter 11 Cases**

Since the Petition Date, the Debtors have continued to operate as debtors in possession subject to the supervision of the Bankruptcy Court and in accordance with the Bankruptcy Code. The Debtors are authorized to operate in the ordinary course of business. No official committees were appointed in these Chapter 11 Cases.

The Debtors' goal was to consummate one or more sales of substantially all of their assets (each sale, a "Sale Transaction") as quickly as possible in order to minimize the time and expense necessarily attendant to the chapter 11 process, and thereafter, to promptly distribute the proceeds of each Sale Transaction pursuant to the Plan, so as to maximize and expedite recoveries to the Debtors' creditors and other stakeholders.

As discussed below, during the Chapter 11 Cases, the Debtors have worked diligently to protect, preserve, monetize, and maximize the assets of their estates. Through their efforts, the Debtors ensured that (x) no interruption in member services occurred and (y) that their employees continued to work and maintain their treatment relationships with their members.

**1.   Entry of the Debtors' First-Day Orders**

On April 28, 2020, the Original Debtors filed several emergency motions (the "First-Day Motions") with the Bankruptcy Court that were intended to facilitate the Debtors' transition into, and operation in, chapter 11 with a minimum of interruption or disruption to their business, or loss of productivity or value. Pursuant to the First-Day Motions, the Debtors sought and obtained the following relief from the Bankruptcy Court: (i) authority to jointly administer their chapter 11 cases [Docket No. 33]; (ii) approval of the appointment of BMC Group, Inc. as Claims and Noticing Agent [Docket No. 52]; (iii) authority to maintain their prepetition cash management system and bank accounts [Docket No. 78]; (iv) authority to pay certain prepetition employee wages and other compensation, benefits, business expenses, and related items [Docket No. 80]; and (v) an order prohibiting utility companies from altering, refusing, or discontinuing utility services and granting

related relief [Docket No. 77]. On August 14, 2020, CPES CA filed a motion seeking joint administration with the Original Debtors and a motion seeking the entry of an order applying the relief granted to the Original Debtors pursuant to the First-Day Motion to CPES CA. The Bankruptcy Court granted the joint administration of the Debtors [Docket No. 251] and entered an order applying the relief granted in the First-Day Motions to CPES CA [Docket No. 275].

## 2. **Debtors' Retention of Professionals**

On May 6, 2020, the Debtors filed applications, and the Bankruptcy Court thereafter authorized the employment of (i) Faegre Drinker Biddle & Reath LLP ("Faegre Drinker") as their bankruptcy counsel [Docket No. 231] and (ii) BMC Group, Inc. as their claims and noticing agent [Docket No. 52]. On August 14, 2020, the Debtors filed an application to retain, and the Bankruptcy Court thereafter authorized the employment of CohnReznick Capital Market Securities, LLC ("CohnReznick") as the Debtors' investment banker [Docket No. 295].

On August 26, 2020, the U.S. Trustee filed the *Stipulation Among the United States Trustee and Debtors to the Appointment of a Patient Care Ombudsman* [Docket No. 286]. On August 27, 2020, the Bankruptcy Court entered the *Order Approving Stipulation to Appoint a Patient Care Ombudsman Pursuant to 11 U.S.C. § 333(a)(1)* [Docket No. 290]. On September 15, 2020, the U.S. Trustee filed the *Notice of Appointment of Patient Care Ombudsman Pursuant to 11 U.S.C. § 333(a)(1)* [Docket No. 333] thereby appointing Dr. Timothy J. Stacy DNP, ACNP-BC (the "PCO") as the patient care ombudsman for the Debtors.

On October 23, 2020, the PCO filed the *Application of Patient Care Ombudsman to Employ Resnik Hays Moradi LLP as Bankruptcy Counsel Effective as of September 15, 2020; Declaration of Roksana D. Moradi-Brovia in Support Thereof* [Docket No. 417]. On November 19, the Bankruptcy Court entered the *Order Approving Application of Patient Care Ombudsman to Employ Resnik Hays Moradi LLP as Bankruptcy Counsel Effective as of September 15, 2020* [Docket No. 475].

On November 25, 2020, Faegre Drinker filed the *First Interim Application of Faegre Drinker Biddle & Reath LLP for Approval of Fees and Reimbursement of Expenses* [Docket No. 496]. On the same date, CohnReznick filed the *First Interim Application of CohnReznick Capital Markets*

*Securities, LLC as Investment Bankers to the Debtors for Allowance of Compensation and for Reimbursement of All Actual and Necessary Expenses Incurred for the Period June 11, 2020 to November 16, 2020* [Docket No. 493].

On January 29, 2021, the Debtors filed the *Notice of Motion and Motion of the Debtors for the Entry of an Order Authorizing Employment and Compensation of Professionals in the Ordinary Course of Business; Memorandum of Points and Authorities; and Declaration of Mark M. Monson in Support Thereof* [Docket No. 625] (the "Ordinary Course Professionals Motion").

### 3.  The Debtors' Schedules & Statements

On June 8, 2020, the CPES AZ and Novelles each filed their Schedules of Assets and Liabilities and Statements of Financial Affairs [Docket Nos. 165 & 166 (CPES AZ); Case No. 9:20-bk-10553-DS, Docket Nos. 43 & 44 (Novelles)]. CPES CA filed its Schedules of Assets and Liabilities and Statements of Financial Affairs on September 11, 2020 [Case No. 9:20-bk-10994-DS, Docket Nos. 28 & 29].

### 4.  The Exclusivity Extension Motions

On July 31, 2020, the Original Debtors filed the *Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement and Solicit Acceptances* [Docket No. 232]. On August 21, 2020, the Bankruptcy Court entered the *Order Granting Motion for Entry of an Order Pursuant to Section 1121 of the Bankruptcy Code Extending the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* [Docket No. 276] thereby extending (i) the exclusivity period deadlines under 11 U.S.C. § 1121(d) for the Original Debtors to file a chapter 11 plan and disclosure statement from August 22, 2020 to November 20, 2020 and (ii) the time to solicit acceptances of a chapter 11 plan from October 21, 2020 to January 19, 2021.

On November 17, 2020, the Debtors filed the *Motion for Entry of an Order Pursuant to Section 1121 of the Bankruptcy Code Extending the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* [Docket No. 462]. On December 14, 2020, the Bankruptcy Court entered the *Order Granting Motion for Entry of an Order Pursuant to Section 1121 of the Bankruptcy Code Further Extending the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* [Docket

No. 545] thereby extending (i) the exclusivity period deadlines under 11 U.S.C. § 1121(d) for the Debtors to file a chapter 11 plan and disclosure statement from November 20, 2020 to December 15, 2020 and (ii) the time to solicit acceptances of a chapter 11 plan from January 19, 2021 to February 15, 2021.

On December 15, 2020, the Debtors filed the *Third Motion for Entry of an Order Pursuant to Section 1121 of the Bankruptcy Code Extending the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* [Docket No. 549]. On January 22, 2021, the Bankruptcy Court entered the *Order Granting Debtors' Third Motion for Entry of an Order Pursuant to Section 1121 of the Bankruptcy Code Extending the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* [Docket No. 610] thereby extending (i) the exclusivity period deadlines under 11 U.S.C. § 1121(d) for the Debtors to file a chapter 11 plan and disclosure statement from December 15, 2020 to December 22, 2020 and (ii) the time to solicit acceptances of a chapter 11 plan from February 15, 2021, to April 15, 2021.

### 5.  The California Sale

On August 14, 2020, the California Debtors filed the *California Debtors' Notice of Motion and Motion for Entry of an (I) an Order (A) Authorizing and Approving the California Debtors' Entry into and Assumption of the Stalking Horse Asset Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-Up Fee, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing, and (E) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Lease and Determining Cure Amounts; and (II) an Order (A) Authorizing the Sale of Substantially all of the California Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; Memorandum of Points and Authorities in Support Thereof* [Docket No. 256] (the "California Sale Motion"). Through the California Sale Motion, the California Debtors sought approval of the bidding procedures as well as the form of Asset Purchase Agreement (the "California Stalking Horse Agreement") and approval of National Mentor Healthcare, LLC d/b/a

17

California Mentor (the "California Stalking Horse") as the "stalking horse" bidder for the California Assets with an initial bid of $4.4 million.

Under the California Stalking Horse Purchase Agreement, the California Stalking Horse Purchaser proposed to acquire the substantially of the assets owned by the California Debtors (the "California Assets") for the cash purchase price of approximately $4.4 million, subject to certain adjustments set forth in the Stalking Horse Agreement and subject to higher and better offers pursuant to a Bankruptcy Court-approved auction and sale process, free and clear of all liens, claims, encumbrances, and interests.

On September 14, 2020 the Bankruptcy Court entered the *Order Granting the Motion for Entry of an (I) an Order (A) Authorizing and Approving the California Debtors' Entry into and Assumption of the Stalking Horse Asset Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-Up Fee, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing, and (E) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Lease and Determining Cure Amounts; and (II) an Order (A) Authorizing the Sale of Substantially all of the California Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; Memorandum of Points and Authorities in Support Thereof* [Docket No. 326], approving, among other things, bidding procedures and authorizing the California Debtors to conduct an Auction to select the party or parties to purchase the California Assets.

In accordance with the Bidding Procedures, the California Debtors received a qualifying bid from Broadstep Behavioral Health, Inc. ("Broadstep") in addition to a qualified bid from the California Stalking Horse Bidder in the form of the California Stalking Horse Agreement. The California Debtors conducted an auction on September 29, 2020. In addition to the California Debtors' counsel and investment banker, representatives from Broadstep and the Stalking Horse Bidder attended the auction in person and via Zoom.

After the auction concluded, the California Debtors selected the California Stalking Horse Bidder as the Winning Bidder. The California Stalking Horse Bidder's final offer for the California

Purchased Assets as stated on the record at the auction was $9,350,000. This bid was declared the highest and best offer and was accepted by the California Debtors. Broadstep's final offer for the assets of the California Debtors as stated on the record at the auction was $9,150,000, and the California Debtors declared Broadstep as the Backup Bidder at that offer amount.

On October 9, 2020, the Bankruptcy Court entered the *Order: (A) Authorizing the Sale of Substantially all of the California Debtors' Assets Free and Lear of Liens, Claims, Encumbrances, and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 404]. The sale of the California Assets closed on November 16, 2020.

### 6.  The Arizona Sale & DES-DDD Lift Stay Motion

On September 4, 2020, CPES AZ filed the *Motion for Entry of (I) an Order (A) Authorizing and Approving the Debtor's Entry Into the Stalking Horse Asset Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-Up Fee, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing, and (E) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Determining Cure Amounts* [Docket. No. 296] (the "Arizona Sale Motion"). Through the Arizona Sale Motion, CPES AZ sought approval of the bidding procedures as well as the form of Asset Purchase Agreement and approval of CTB AZ, LLC (the "Arizona Stalking Horse") as the "stalking horse" bidder for substantially all assets of CPES AZ, with a bid of $420,000.00 (the "Arizona Stalking Horse Bid").

On September 10, 2020, the Arizona Department of Economic Security, Division of Developmental Disabilities ("DES-DDD") filed the *Notice of Motion and Motion for Relief under the Automatic Stay under 11 U.S.C. § 362* [Docket No. 308] (the "DES-DDD Lift Stay Motion") requesting authority to take all actions necessary to complete the operational transition for members residing in group homes operated by CPES AZ. The next day, the DES-DDD filed the *Objection by Arizona Department of Economic Security, Division of Developmental Disabilities to Debtor's Motion for Entry of (I) an Order (A) Authorizing and Approving the Debtor's Entry Into the Stalking Horse Asset Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-*

*Up Fee, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing, and (E) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Determining Cure Amounts; and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; Memorandum of Points and Authorities in Support Thereof* [Docket No. 318] (the "DES-DDD Bid Procedures Objection").

In response to the DES-DDD Bid Procedures Objection, on September 11, 2020, CPES AZ filed the *Debtor's Preliminary Objection to Arizona Department of Economic Security, Division of Developmental Disabilities Motion for Relief from the Automatic Stay under 11 U.S.C. § 362 (Action in Nonbankruptcy Forum)* [Docket No. 321], and the Arizona Stalking Horse filed *CTB AZ, LLC's Preliminary Reply in Support of Motion to Approve Sale Procedures* [Docket No. 322]. In addition, on September 12, 2020, CohnReznick filed the *Declaration of Jeffrey R. Manning in Support of the Debtors' Objection to Arizona Department of Economic Security, Division of Developmental Disabilities Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362* [Docket No. 323].

On September 14, 2020, CapGrow Holdings JV Sub III LLC and CapGrow Holdings JV Sub IV LLC (collectively, "CapGrow") filed the *Limited Preliminary Objection to CPEZ AZ Sale Motion and ADES Lift Stay Motion* [Docket No. 327] thereby objecting to (i) the Arizona Sale Motion and (ii) the DES-DDD Lift Stay Motion.

The Bankruptcy Court held an initial hearing on the DES-DDD Lift Stay Motion and the Arizona Sale Motion on September 14, 2020, and continued both motions to September 24, 2020.

Prior to the continued hearing, the DES-DDD filed the *Supplemental Brief in Support of Arizona Department of Economic Security, Division of Developmental Disabilities': (A) Motion for Relief under the Automatic Stay under 11 U.S.C. § 362 [Dkt. 308]; and (B) Objection to the Debtors' "Arizona Sale Motion [Dkt. 318]"* [Docket No. 343]. In response, CPES AZ filed the *Debtor's Supplemental Brief (I) In Support of (A) the Arizona Bidding Procedures and (B) Debtor's Preliminary Objection and (II In Opposition to DES-DDD's Supplemental Brief* [Docket No. 352].

On September 24, 2020, the Bankruptcy Court held the continued hearing on the Arizona Sale Motion and the DES-DDD Lift Stay Motion [Docket No. 357] and granted both motions on the record.

Following the September 24 hearing, the Debtors filed a proposed order with respect to the Arizona Bidding Procedures. On September 25, 2020, the DES-DDD filed the *Arizona Department of Economic Security, Division of Developmental Disabilities Objection to the Proposed Order (A) Authorizing and Approving the Debtor's Entry Into and Assumption of the Stalking Horse Asset Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-Up Fees; (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing; and (E) Approving Procedures For Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Determining Cure Amounts* [Docket No. 360]. In addition, Bob Bennetti, Linki Peddy, Linda Mariano, Chip Foust, and certain other participants in CPES Employee Stock Ownership Plan and Trust filed the *CPES ESOP Participants' Response and Objections to [Proposed] Order (A) Authorizing and Approving the Debtors Entry Into the Stalking Horse Asset Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-Up Fee, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing, and (E) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Determining Cure Amounts [Dkt. 355]* [Docket No. 361].

On September 28, 2020, CPES AZ filed the *Debtor's Objection to Proposed Order Regarding Arizona Department of Economic Security Division of Developmental Disabilities' Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Action In Nonbankruptcy Forum) [Dkt. 308]* [Docket No. 363] as well as the *Debtor's Reply to Objections to Proposed Order (A) Authorizing and Approving the Debtor's Entry Into and Assumption of the Stalking Horse Asset Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-Up Fees; (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing; and (E) Approving Procedures For Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Determining Cure Amounts* [Docket No. 366].

1

2    On October 1, 2020, the Bankruptcy Court entered the *Order Granting Motion for Relief from*

3    *the Automatic Stay under 11 U.S.C. § 362* [Docket No. 375] with respect to the DES-DDD Lift Stay

     Motion.

4    On October 5, 2020, the Bankruptcy Court entered the *Order Granting Motion for Entry of*

5    *(I) an Order (A) Authorizing and Approving the Debtor's Entry Into the Stalking Horse Asset*

6    *Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-Up Fee, (C)*

7    *Approving Notice Procedures, (D) Scheduling a Sale Hearing, and (E) Approving Procedures for*

8    *Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Determining*

9    *Cure Amounts* [Docket No. 386] (the "Arizona Bidding Procedures Order"), approving, among other

10   things, the Arizona Bidding Procedures and authorizing CPES AZ to conduct an Auction to select

11   the party or parties to purchase the Arizona Debtors' assets.

12   In accordance with the Bidding Procedures Order, CPES AZ received qualifying bids from

13   six (6) additional qualified bidders in addition to the Stalking Horse Bid from the Stalking Horse

14   Bidder. On October 15, 2020, CPES AZ conducted an auction via Zoom beginning at 10:00 a.m.

15   Pacific Daylight Time. In addition to the CPES AZ's counsel and CohnReznick, representatives from

16   the Arizona DES-DDD, the Stalking Horse Bidder, other Qualified Bidders, and certain DES-DDD

17   designates for CPES AZ's group homes attended the auction. After the auction concluded, CPES AZ

18   selected multiple qualifying bidders as the winning bidders of multiple properties of CPES AZ (the

19   "Arizona Purchased Assets").

20   On October 19, 2020, CohnReznick filed the *Declaration of Jeffrey R. Manning in Support of*

21   *Debtor CPES Inc.'s Asset Sale Under Section 363 of the Bankruptcy Code and in Summary of the*

22   *October 15, 2020 Auction* [Docket No. 412].

23   On October 28, 2020, the DES-DDD filed the *Arizona Department of Economic Security,*

24   *Division of Developmental Disabilities' ("DES-DDD") Objection to the Sale of CPES AZ Homes to*

25   *Non-DES-DDD Designated Vendors and Response and Opposition to Declaration of Jeffrey R.*

26   *Manning in Support of Debtor CPES Inc.'s Asset Sale Under Section 363 of the Bankruptcy Code*

27   *and in Summary of the October 15, 2020 Auction* [Doc. 412] [Docket No. 425].

28

ACTIVE.125189347.02

On October 30, 2020, CPES AZ filed the *Debtor's Reply in Support of the Sale Motion and in Response to the DES-DDD's Objection* [Docket No. 430]. On November 3, 2020, CPES AZ filed the *Declaration of Mark G. Monson in Support of the Debtor's Sale Motion* [Docket No. 444].

On November 2, 2020, the DES-DDD filed the *Arizona Department of Economic Security, Division of Developmental Disabilities' ("DES-DDD") Supplemental Brief Regarding Objection to the Sale of CPES AZ Homes to Non-DES-DD Designated Vendors* [Docket No. 436].

On November 2, 2020, CapGrow filed *the Limited Objection and Reservation of Rights with Respect to CPES AZ Sale Motion* [Docket No. 439].

On November 3 and 10, 2020, the Bankruptcy Court held a hearing on the Arizona Sale Motion. On November 18, 2020, the Bankruptcy Court entered the *Order: (A) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 467] and the *Supplemental Order Authorizing Debtor to Assume and Assign Certain Unexpired Real Property Leases Pursuant to 11 U.S.C. Section 365* [Docket No. 486] approving the sale of the Arizona Purchased Assets.

In the aggregate, the winning bids for the Arizona Purchased Assets totaled $210,000. The Arizona Purchased Assets include 19 CapGrow leases that were assumed and assigned, which eliminated, at minimum, approximately $400,000.00 in potential rejection damages claims.

### 7. <u>Settlement Motions</u>

The Debtors filed three motions pursuant to Bankruptcy Rule 9019 seeking approval of settlements of prepetition litigation matters covered by the Debtors' applicable Insurance Policies: (i) *Motion to Approve Settlement Agreements Pursuant to Rule 9019* [Docket No. 212] (the "<u>Trevizo Settlement Motion</u>"); (ii) *Motion to Approve the Goetz Settlement Agreement Pursuant to Rule 9019* [Docket No. 461] (the "<u>Goetz Settlement Motion</u>"); and (iii) *Motion to Approve the Lynch Settlement Agreement Pursuant to Rule 9019* [Docket No. 505] (the "<u>Lynch Settlement Motion</u>"). The Trevizo Settlement Motion was approved on August 28, 2020 [Docket No. 289]. The Goetz Settlement

1    Motion was approved on December 22, 2020 [Docket No. 567].  The Lynch Settlement Motion was

2    approved on December 30, 2020 [Docket No. 574].

3                              **8.  ESOP-Related Litigation**

4            Prior to the Petition Date, Miguel Paredes was named as the Trustee of the ESOP (the "ESOP

5    Trustee"). Subsequent to his engagement, the ESOP Trustee was notified of an allegation that the

6    December 31, 2018 valuation of the CPES AZ shares in the ESOP had been overvalued. The ESOP

7    Trustee has conducted a preliminary investigation of the 2018 valuation and has engaged an

8    independent third-party valuation firm to perform an independent review of the 2018 valuation so

9    that he can determine the full extent of the impact on the ESOP and its participants. The ESOP Trustee

10   is also working with the valuation firm to finalize the December 31, 2019 valuation. The ESOP

11   Trustee is represented by Tucker Ellis LLP. The ESOP Trustee has filed a Proof of Claim in these

12   Chapter 11 Cases based upon the 2018 valuation described above.

13           Separate from the ESOP Trustee, a group of ninety-three ESOP participants (the "Ad Hoc

14   Group") have retained David R. Johanson of Hawkins Parnell & Young LLP as counsel. No

15   Disclosure under Bankruptcy Rule 2019 has been filed by Mr. Johanson in these Chapter 11 Cases.

16   On October 27, 2020, CPES AZ received a letter from Mr. Johanson asserting various violations of

17   the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and demanding

18   immediate action from the Debtor (the "October 27 Letter"). Specifically, Mr. Johanson alleges

19   various claims for breaches of fiduciary duty and other ERISA violations against current and former

20   administrators and trustees of the ESOP and current and former members of the CPES AZ Board of

21   Directors (the "ESOP Plan Fiduciaries").

22           For relief against the ESOP Plan Fiduciaries, the October 27 Letter seeks an amended and

23   corrected 2018 capital stock valuation and payment of all losses relating to benefits paid out based

24   on that allegedly incorrect valuation; reporting of the correct 2019 stock valuation and payment of

25   any drop in value due to ESOP Plan Fiduciaries improper management; payment by ESOP Plan

26   Fiduciaries for excessive cost of insurance purchased to cover their actions; repayment of costs of

27

28

pursuing the Debtors' bankruptcy cases and payment of losses due to the sale of CPES AZ and its affiliates.

Further, Mr. Johanson stated in the October 27 Letter on behalf of the Ad Hoc Group that if the demands were not met, his firm was authorized to file a legal action in the U.S. District Court in Tucson, Arizona against the Debtor and others on or after November 30, 2020. On November 25, 2020, CPES AZ responded to the October 27 Letter denying any impropriety and raising and reserving potential claims for violations of the Automatic Stay.

Hudson Specialty Insurance Company ("Hudson") is the issuer of the Debtors' Fiduciary Liability and D&O Insurance Policy, effective January 1, 2020 to January 1, 2021 (the "Hudson Policy"). The Hudson Policy is a claims-made policy. Accordingly, to preserve coverage of the asserted claims, the Debtor tendered to Hudson the claims asserted in the October 27 Letter.  The Debtors' potential Litigation Claims and Causes of Action with respect to the October 27 Letter are preserved under the Plan and vest in the Liquidating Trust.

In addition, the Debtors tendered to the Insurance Providers (i) a letter from counsel to the ESOP Trustee to CPES AZ describing potential claims against CPES AZ, its directors and officers, and its past trustees and demanding that CPES AZ notify its insurance carrier of the claims set forth in the correspondence and provide the carrier with a copy of the letter; and (ii) the *ESOP Participants' Joint Objection to the Ombudsman's and His Counsel's First and Final Fee Applications* [Docket No. 573], as the Debtors believe that the assertions made in this pleading are expansions of previous allegations made in the October 27 Letter.

### 9.  Prepetition Litigation

Prior to the Petition Date, the Debtors were party to several pending litigation matters.  All of the prepetition litigation cases pending against the Debtors were stayed as of the Petition Date.  Under the Debtors' insurance policies implicated by the prepetition litigation, the Debtors are required to pay out of pocket for defense counsel fees until they reach a certain self-insured retention ("SIR") limit, after which the Debtors' defense counsel fees are paid directly by the insurance company.  As of the Petition Date, certain of the prepetition litigation cases had progressed sufficiently to allow the

1
2
Debtors and the respective plaintiff to finalize a settlement during these Chapter 11 Cases, in each case within the limits of the Debtors' applicable insurance policies. *See supra* Art.II.E.8.

3
4
5
6
7
8
9
10
11
12
Plaintiffs' counsel in certain other prepetition litigation cases have been pursuing relief from the automatic stay in order to liquidate their claims against the Debtors' Estates. These matters include: (i) *Hernandez v. Novelles Developmental Services, Inc.*, No. 19CV05590 (Cal. Super. Ct. Santa Barbara Cnty.) (the "<u>Hernandez Case</u>"), which asserts various claims and causes of action relating to the alleged wrongful death of Mr. Hernandez in February 2019; (ii) *Primbs v. Novelles Developmental Services, Inc.*, No. 19CV06105 (Cal. Super. Ct. Santa Barbara Cnty.) (the "<u>Primbs Case</u>"), which asserts various claims and causes of action relating to the alleged wrongful death of Mr. Primbs in November 2017; and (iii) *DeSpain v. Community Provider of Enrichment Services, Inc.*, No. C20200326 (Ariz. Super. Ct., Pima Cnty.) (the "<u>DeSpain Case</u>"), asserting various claims and causes of action relating to injuries allegedly incurred in or around January 2018.[2]

13
14
15
16
17
18
19
20
The Debtors have not reached the SIR limits in the Hernandez Case, Primbs Case, and DeSpain Case, and the Debtors estimate that they may be required to pay more than $300,000 in aggregate defense fees in these cases before the SIR limits are met. The Debtors have resisted agreeing to stay relief because they would be required to pay these defense fees out of the Estates' resources, which funds were significantly more limited prior to the closing of the Debtors' Sale Transactions in late 2020. However, it has become clear that these plaintiffs' claims will indeed need to be liquidated as none of the cases had progressed sufficiently prepetition to make settlement a viable option thus far in these Chapter 11 Cases.

21
22
23
24
25
26
The Debtors already planned to reserve the remaining deductible amounts for each of these pending prepetition litigation matters through the "Future Claims Reserve" established under the Plan. After the Debtors have met the applicable deductible or SIR amounts, the Debtors' defense counsel fees will be paid by the applicable insurance provider. Therefore, the Debtors believe that consenting to stay relief in order to allow these prepetition litigation cases to proceed (provided, of

27
28
[2] Descriptions of the prepetition litigation cases against the Debtors are taken from the complaints filed by plaintiff(s) in each case and are provided here for summary purposes only. The Debtors do not admit any liability and reserve all rights with respect to each of these cases.

course, that the Debtors are able to retain defense counsel) will not impact creditors' recovery under the Plan, and the Debtors will avoid incurring additional counsel fees that would result from litigating plaintiffs' demands to lift the automatic stay.

### 10. Claim Objections

The Debtors are reviewing the Proofs of Claim filed in these Chapter 11 Cases and their books and records and have identified Proofs of Claim that the Debtors believe should be modified or disallowed under the Bankruptcy Rules and intend to file omnibus objections to such Proofs of Claim.

### ARTICLE III

### SUMMARY OF THE PLAN

### A. Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor can reorganize its business for the benefit of itself, its holders of claims and interests. Chapter 11 also strives to promote equality of treatment of similarly situated holders of claims and similarly situated holders of interests with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all the legal and equitable interests of a debtor as of the petition date. The Bankruptcy Code provides that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a chapter 11 plan is the principal objective of a chapter 11 case. A plan sets forth the means for satisfying claims against, and interests in, a debtor. Confirmation of a plan by a bankruptcy court makes the plan binding upon the debtor, its estate, any person or entity acquiring property under the plan and any holder of claims against or interests in the debtor, whether or not such holder of claims or interests is impaired under or has accepted the plan or receives or retains any property under the plan.

Section 1123 of the Bankruptcy Code provides that a chapter 11 plan will classify the debtor's holders of claims and interests. Pursuant to section 1122 of the Bankruptcy Code, each class of claims against and interests in a debtor must contain claims or interests, whichever is applicable, that are

substantially similar to the other claims or interests in such class. Further, a chapter 11 plan may specify that the legal, contractual and equitable rights of the holders of claims or interests in certain classes are to remain unaltered by the reorganization effectuated by the plan. Such classes are unimpaired and, because of such favorable treatment, are deemed to accept the plan. Accordingly, a debtor need not solicit votes from the holders of claims or interests in such classes. A chapter 11 plan also may specify that certain classes will not receive any distribution of property or retain any claim against a debtor. Such classes are deemed not to accept the plan and, therefore, need not be solicited to vote to accept or reject the plan. Any classes with claims or interests which are receiving a distribution under the plan but which are not unimpaired will be solicited to vote to accept or reject the plan.

In compliance with the requirements of Section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into various Classes and sets forth the treatment for each class. Further, the Debtors believe that the Plan is in compliance with the requirements of Section 1122 of the Bankruptcy Code, but it is possible that a Holder of a Claim or Interest may challenge the classification of Claims and Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In such event, the Debtors intend, to the extent permitted by the Bankruptcy Court and the Plan, to make such reasonable modifications to the classifications under the Plan to permit Confirmation and to use the Plan acceptances received in this solicitation for the purpose of obtaining the approval of the reconstituted Class or Classes of which the accepting Holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan.

The foregoing language, indicating that the Debtors may seek to modify classifications to overcome classification challenges, is disclosure only. It does not commit the Debtors to seek any such modification and it does not require the Bankruptcy Court to permit any such modification. If the Debtors do seek to modify any classifications, any party in interest is free to oppose the

modification at that time. The Bankruptcy Court will then determine whether the modification should be permitted.

**B. <u>Classification of Claims and Interests</u>**

    **1.    <u>Introduction</u>**

The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtors for all purposes of the Plan. A Claim or Interest will be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest in a particular Class is entitled to the treatment provided for such Class only to the extent that such Claim or Interest is Allowed and has not been paid or otherwise settled prior to the Effective Date. The treatment with respect to each Class of Claims and Interests provided for in the Plan will be in full and complete satisfaction of such Claims and Interests.

    **2.    <u>Classification</u>**

Article III of the Plan classifies Claims (except for Administrative Claims, Professional Claims, Priority Tax Claims, and Statutory Fee Claims) and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan, as set forth on the following table. As provided in section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, Professional Claims, Priority Tax Claims, and Statutory Fee Claims shall not be classified for the purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in Article II of the Plan.

Except as otherwise provided in the Plan, nothing under the Plan is intended to or will affect the Debtors' rights and defenses in respect of any Claim that is "unimpaired" under the Plan, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupment against such Unimpaired Claims. The classification of Claims against and Interests in the Debtors under the Plan is as follows:

ACTIVE.125189347.02

29

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| Class 1 | Other Secured Claims | Unimpaired; presumed to accept. |
| Class 2 | Other Priority Claims | Unimpaired; presumed to accept. |
| Class 3 | General Unsecured Claims | Impaired; entitled to vote. |
| Class 4 | Intercompany Claims | Impaired; deemed to reject. |
| Class 5 | Intercompany Interests | Unimpaired; presumed to accept |
| Class 6 | Equity Interests | Impaired; entitled to vote. |

Consistent with section 1122 of the Bankruptcy Code, a Claim is classified by the Plan in a particular Class only to the extent the Claim is within the description of the Class, and a Claim is classified in a different Class to the extent it is within the description of that different Class.

3. **Treatment**

Article III of the Plan sets forth the treatment of classified Claims and Interests, which is summarized below. The treatment of Claims and Interests in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Entity holding an Allowed Claim or Interest may have in or against the Debtors or their Estates. This treatment supersedes and replaces any agreements or rights those Entities have in or against the Debtors or their property. The treatment of an Allowed Claim under the Plan is subject in all respects to any agreement by the Holder of such Allowed Claim to accept less favorable treatment. All distributions under the Plan will be tendered to the Entity holding the Allowed Claim in accordance with the terms of the Plan. **EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

*(a) Class 1—Other Secured Claims*

The Plan defines Other Secured Claims as any Secured Claim other than a Secured Tax Claim. A Secured Claim is defined as a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or

ACTIVE.125189347.02

30

(b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code. The Plan provides that except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in settlement, and release of each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall be paid in full in Cash. Allowed Other Secured Claims shall be paid as soon as reasonably practicable after the later of the Effective Date and the date on which such Other Secured Claim becomes an Allowed Other Secured Claim.

**Class 1 is Unimpaired. Each Holder of an Allowed Other Secured Claim is, therefore, not entitled to vote on and is presumed to accept the Plan.**

*(b) Class 2—Other Priority Claims*

The Plan defines an Other Priority Claim as any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code. The Plan provides that except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in settlement, and release of each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall be paid in full in Cash. Allowed Other Priority Claims shall be paid as soon as reasonably practicable after the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim.

**Class 2 is Unimpaired. Each Holders of an Allowed Other Priority Claim is, therefore, not entitled to vote on and is presumed to accept the Plan.**

*(c) Class 3—General Unsecured Claims*

The Plan defines General Unsecured Claims as any Claim other than an Administrative Claim, a Professional Claim, a Secured Tax Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, or an Intercompany Claim. The Plan provides that each Holder of an Allowed General Unsecured Claim shall receive payment in Cash in an amount equal to the amount of such Allowed General Unsecured Claim. The Allowed amount of any Class 3 General Unsecured Claim shall include all interest accrued from the Petition Date through the date of distribution at the Federal Judgment Rate; provided, however, that in the event that the Bankruptcy Court determines that

another interest rate should apply the Debtors will modify the Plan accordingly. The Liquidating Trustee will pay undisputed Allowed General Unsecured Claims within 60 days of the Effective Date.

**Class 3 is Impaired. Each Holder of an Allowed General Unsecured Claim is, therefore, entitled to vote to accept or reject the Plan.**

*(d) Class 4—Intercompany Claims*

The Plan defines Intercompany Claims as any Claim held by one Debtor against another Debtor. The Plan provides that Holders of Intercompany Claims will receive no distribution under the Plan.

**Class 4 is Impaired. The Holders of Intercompany Claims are, therefore, not entitled to vote on and are deemed to reject the Plan.**

*(e) Class 5—Intercompany Interests*

The Plan defines Intercompany Interests as an Interest in one Debtor held by another Debtor. The Plan provides that each Allowed Intercompany Interest shall, at the Debtors' election: (a) be Reinstated for administrative convenience; or (b) be canceled and released without any distribution on account to of such Interests. Upon the payment in full of Allowed Class 3 General Unsecured Claims, all Intercompany Interests of CPES CA and Novelles shall be distributed to CPES AZ, their 100% owner, for distribution to creditors of CPES AZ including the ESOP.

**Class 5 is Unimpaired, and the Holders of Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.**

*(f) Class 6—Equity Interests*

The Plan defines Equity Interests as any Equity Security in any Debtor. The Plan provides that each Equity Interest shall be canceled on the Effective Date of the Plan. Allowed Class 6 Equity Interests will be paid a Pro Rata dividend, if any, and only to the extent Allowed Class 3 General Unsecured Claims are paid in full, from the remaining net proceeds of the Liquidating Trust Assets. Notwithstanding anything to the contrary in the Plan, the ESOP Trustee shall retain responsibility, standing, and authority to commence, prosecute and settle lawsuits or actions on behalf of the Holders of beneficial interests to the Equity Interest in the ESOP.

**Class 6 is Impaired. The ESOP Trustee on behalf of the ESOP Trust, the sole Holder of Class 6 Equity Interests, is entitled to vote to accept or reject the Plan.**

C. **Treatment of Unclassified Claims**

1. **Summary**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan. The Plan sets for the treatment of Administrative and Priority Claims in Article II of the Plan.

2. **Treatment of Administrative Claims**

The Plan defines an Administrative Claim as a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code; and (d) any other obligation designated as an Allowed Administrative Claim pursuant to a Final Order of the Bankruptcy Court.

The Plan provides that unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Claims and Statutory Fee Claims will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either: (a) on the Effective Date, or as soon as practicable thereafter; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, then in accordance with the terms and conditions of the particular transaction giving rise to such

Allowed Administrative Claims without any further action by the Holders of such Allowed Administrative Claims.

### 3.    Administrative Claims Bar Date

Requests for the payment of Administrative Claims other than Professional Claims must be filed and served no later than thirty (30) days after the Effective Date (the "Administrative Claims Bar Date"). Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such claims by such date shall be forever barred, estopped, and enjoined from asserting such Claims against the Estates. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously allowed by Final Order, including all Administrative Claims expressly allowed under the Plan.

### 4.    Deadline for Professional Claims

All final requests for payment of Professional Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than forty-five (45) days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Liquidating Trustee shall pay the full unpaid amount of such Allowed Administrative Claim in Cash.

### 5.    Priority Tax Claims

The Plan defines Priority Tax Claims as any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code. Under the Plan, each Holder of an Allowed Priority Tax Claim shall receive, on the Effective Date or as soon as practicable thereafter, payment in Cash in an amount equal to the amount of such Allowed Priority Tax Claim.

### 6.    Statutory Fees

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Liquidating Trustee, on behalf of the Debtors, shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**D.  Means for Implementation**

**1.  Overview**

The Plan provides for the disposition of substantially all the assets of the Debtors and their Estates and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code. The Plan further provides for the winding down of the Debtors and their affairs by the Liquidating Trustee. The Plan also creates a mechanism for the Liquidating Trustee and the ESOP Trustee to pursue Claims and Causes of Action to enable recoveries to Creditors herein.

**2.  Settlement and Adjustment of Claims and Interests of the Debtors and their Estates**

Pursuant to section 1123(b) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action belonging to the Debtors and their Estates that are released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan; and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123(b) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

### 3.  Sources of Consideration for Distributions under the Plan

The Debtors will fund distributions under the Plan with Cash on hand on the Effective Date and the revenues and proceeds of all assets of the Debtors, including the Sale Transaction proceeds and all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date.

### 4.  Vesting and Transfer of Assets to the Liquidating Trust

Under section 1141(b) of the Bankruptcy Code, on the Effective Date, the assets of the Debtors, including their books and records but, for the avoidance of doubt, excluding Direct ESOP Claims, shall vest automatically in the Liquidating Trust for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances. For the avoidance of doubt, the transfer of the Debtors' assets and the proceeds of any Causes of Action to the Liquidating Trust shall not result in the incurrence of fees payable to the U.S. Trustee.

The Liquidating Trustee may abandon or otherwise not accept any assets that the Liquidating Trustee believes, in good faith, to have no value to, or will be unduly burdensome to, the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement. Any assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust. As of the Effective Date, all Liquidating Trust Assets vest in the Liquidating Trust and all assets dealt with in the Plan shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

The books and records shall vest in the Liquidating Trust as of the Effective Date in accordance with all HIPAA requirements and regulations. The Liquidating Trustee is authorized to treat and/or abandon the books and records consistent with the provisions of the Plan and the Liquidating Trust Agreement.

To the extent not paid in full in Cash on the Effective Date, reserves for payment of Disputed Claims and Professional Fee Claims shall be set aside and held by Liquidating Trustee until such Claims are approved, Allowed and authorized to be paid, by the Bankruptcy Court.

### 5.  Appointment of the Liquidating Trustee

Prior to the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement. The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust.

The Liquidating Trustee will be deemed appointed as of the Effective Date. The Liquidating Trustee will pay or otherwise make distributions on account of all Allowed Claims against the Debtors in accordance with the terms of the Plan. The Liquidating Trustee shall be appointed as the Estates' representative by the Bankruptcy Court under section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under the Plan and as otherwise provided in the Confirmation Order.

The Liquidating Trustee shall be appointed for the sole purpose of effectuating the Plan and performing under the terms hereof and the Liquidating Trust Agreement, including liquidating and distributing the Debtors' assets, including, without limitation, the collection of the Debtors' accounts receivable and Causes of Action (excluding Direct ESOP Claims), and with no objective to engage in the conduct of a trade or business. For the avoidance of doubt, collection of the Debtors' accounts receivable shall not constitute engaging in the conduct of a trade or business.

## 6.  Rights and Powers of the Liquidating Trustee

The powers of the Liquidating Trustee shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Proceeds and wind down the business and affairs of the Debtors, including: (a) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Estates; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Proceeds or otherwise; (c) making distributions as contemplated under the Plan; (d) establishing and maintaining bank accounts on behalf of the Estates; (e) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (f) paying all reasonable fees, expenses, debts, charges, and liabilities of the Debtors' Estates; (g) administering and paying

taxes of the Debtors' Estates, including filing tax returns; (h) representing the interests of the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (i) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Liquidating Trustee may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Liquidating Trustee. Upon its appointment, the successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Liquidating Trustee relating to the Debtors' Estates shall be terminated.

## 7.  Retention of Professionals

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of its duties. The reasonable fees and expenses of such professionals shall be paid from the Wind-Down Reserve upon the monthly submission of statements to the Liquidating Trustee. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business from the Wind-Down Reserve and shall not be subject to the approval of the Bankruptcy Court.

## 8.  Compensation of the Liquidating Trustee

The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Wind-Down Reserve. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Liquidating Trustee on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Liquidating Trustee in connection with such Liquidating Trustee's duties shall be paid without any further notice to, or action, order, or approval

of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

### 9. Liquidating Trustee Expenses

All costs, expenses, and obligations incurred by the Liquidating Trustee in administering the Plan or in any manner connected, incidental, or related thereto, in effecting distributions from the Liquidating Trust (including the reimbursement of reasonable expenses) shall be a charge against the assets of the Estates remaining from time to time in the hands of the Liquidating Trustee. Such costs, expenses, and obligations shall be paid from the Wind-Down Reserve.

The Debtors and the Liquidating Trustee, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the Liquidating Trustee is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Reserve.

### 10. Exculpation, Indemnification, Insurance and Liability Limitation

The Liquidating Trustee and all professionals retained by the Liquidating Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Debtors' Estates. The Liquidating Trustee may obtain, at the expense of the Estates and with funds from the Wind-Down Reserve, commercially reasonable liability, errors and omissions, directors and officers, or other appropriate insurance with respect to the indemnification obligations of the Estates. The Liquidating Trustee may rely upon written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the Liquidating Trustee in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

### E. Additional Means for Implementation of the Plan

#### 1. Plan Transactions

Before, on, and after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall take all actions as may be necessary or appropriate to effectuate the terms of the Plan, including: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Plan; and (e) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

## 2.  Preservation of Causes of Action

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action (excluding Direct ESOP Claims), whether arising before or after the Petition Date, shall vest in the Liquidating Trust and be enforceable by the Liquidating Trustee pursuant to the terms of the Plan. Except for any Cause of Action against an Entity that is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Liquidating Trustee's rights to commence, prosecute, or settle such Causes of Action (excluding Direct ESOP Claims) shall be preserved notwithstanding the occurrence of the Effective Date.

The Liquidating Trustee may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Liquidating Trustee deems appropriate, including on a contingency fee basis. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Liquidating Trustee will not pursue any and all available Causes of Action against them. The Liquidating Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Liquidating Trustee expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Liquidating Trustee reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

For the avoidance of doubt, all references to Causes of Action in this section exclude Direct ESOP Claims which are held by the ESOP Trustee.

### 3.  <u>Preservation of Right to Conduct Investigations</u>

The preservation for the Liquidating Trust of any and all rights to conduct investigations under Bankruptcy Rule 2004 is necessary and relevant to the Liquidating Trust and with respect to the prosecution of Litigation Claims and the administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations under Bankruptcy Rule 2004 held by the Debtors prior to

the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

### 4.  Prosecution and Resolution of Litigation Claims

From and after the Effective Date, the Liquidating Trust shall have the sole responsibility, standing (including derivative standing), and authority to prosecute and settle all Litigation Claims under the Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estates, subject to the provisions of the Plan Documents and the Sale Documents, to pursue, settle, or abandon such Litigation Claims as the sole representatives of the Estates under section 1123(b)(3) of the Bankruptcy Code. Any and all Litigation Claims that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan. No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplements to any Litigation Claim against it as any indication that the Debtors or Liquidating Trustee will not investigate or pursue any and all available Litigation Claims against such Entity. Such Litigation Claims may include, but are not limited to, claims for breach of fiduciary duties by certain officers and directors, claims grounded in tort, claims for negligence, claims based upon breach of contract, and claims for professional malpractice, to the fullest extent permitted by law. The Liquidating Trustee expressly reserves all Litigation Claims, except for Litigation Claims against any Entity that are expressly released or waived under the Plan or have otherwise been released under any agreement or Final Order, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Litigation Claims upon, after, or as a consequence of Confirmation or substantial consummation of the Plan.

### 5.  Privileges as to Certain Causes of Action

Effective as of the Effective Date, all Privileges of the Debtors relating to the Liquidating Trust Assets shall be deemed transferred, assigned, and delivered to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust. The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and is entitled to assert such Privileges. No such Privilege

shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Debtors' Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement. Nothing contained herein or in the Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach of any Privileges of the Debtors.

## 6. **Corporate Action**

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors and any corporate action required by the Debtors in connection with the Plan or corporate structure of the Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security Holders, directors or officers of the Debtors. Before the Effective Date, the appropriate officers of the Debtors, and on or after the Effective Date, the Liquidating Trustee on behalf of the Debtors' Estates, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan). The authorizations and approvals contemplated by Section 5.6 of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

## 7. **Termination of ESOP**

As the Plan provides for liquidation of substantially all of the Debtors' assets, and CPES AZ will have by the Confirmation Date ceased all active business operations and contributions to the ESOP, CPES AZ shall terminate the CPES Employee Stock Ownership Plan effective as of the Confirmation Date. The CPES Employee Stock Ownership Trust will be unaffected.

## 8.  **Effectuating Documents; Further Transactions**

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Liquidating Trustee is, authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

As soon as practicable after the Effective Date, the Liquidating Trustee shall: (1) cause the Debtors to comply with, and abide by, the terms of the Purchase Agreements and any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Liquidating Trustee without need for any action or approval by the shareholders or board of directors of any Debtor. From and after the Effective Date, the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to the Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. Notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Claims.

## 9.  **Insurance Policies**

Nothing in the Plan, the Disclosure Statement, the Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors'

insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies, including any replacement or tail policies or coverages. All of the Debtors' Estates' benefits, rights, interests and proceeds under any Insurance Policy to which the Debtors and/or the Debtors' Estates may be insureds or beneficiaries shall vest with the Liquidating Trust for the benefit of the Beneficiaries of the Liquidating Trust and all of the beneficiaries of such policies.

## 10. Filing of Monthly and Quarterly Reports and Payment of Statutory Fees

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly Liquidating Trust reports shall be the responsibility of the Liquidating Trustee. All Statutory Fees shall be payable as set forth in the Plan and such obligation shall continue until such time as the Chapter 11 Cases are closed, dismissed, or converted. All monthly operating reports covering pre-Effective Date periods shall be prepared and filed by the Debtors.

## 11. Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan, including any issuance, transfer or exchange of any security, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

## 12. Tax Returns

After the Effective Date, the Liquidating Trustee, or an accounting firm that the Liquidating Trustee designates and provides oversight, shall complete and file all final or otherwise required

federal, state, and local tax returns for each of the Debtors, as applicable, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of any Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

### 13. <u>Wind-Down</u>

On and after the Effective Date and except as provided in the Purchase Agreements, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

Unless otherwise provided in the Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date. The Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of such Debtor under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

### 14. <u>Dissolution of the Debtors</u>

Upon a certification to be Filed with the Bankruptcy Court by the Liquidating Trustee of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Debtors shall be deemed to be dissolved without any further action by the Debtors, including the filing of any documents with the secretary of state for the state in which each Debtor is formed or any other jurisdiction. The Liquidating Trustee, however, shall have authority to take all necessary actions to dissolve the Debtors in and withdraw the Debtors from the applicable states.

**F.  Treatment of Unexpired Leases and Executory Contracts**

Article VI of the Plan sets forth the treatment of the Debtors' Executory Contracts and Unexpired Leases.

**1.  Assumption or Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the Sale Transactions; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**2.  Rejection Damages Claims and Objections to Rejections**

Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases. Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Confirmation Date or the effective date of rejection. Any such Proofs of Claim that are not timely filed shall be disallowed without the need for any further notice to or action, order, or approval of the Bankruptcy Court. Such Proofs of Claim shall be forever barred, estopped, and

enjoined from assertion. Moreover, such Proofs of Claim shall not be enforceable against the Debtors' Estates, without the need for any objection by the Liquidating Trustee or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged notwithstanding anything in a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class 3 General Unsecured Claims against the applicable Debtor counterparty thereto.

### 3.  Indemnification Obligations

All indemnification obligations in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the post-petition directors, officers, trustees, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

### 4.  Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases

shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 5.  Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidating Trustee, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### 6.  Non-occurrence of the Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### G.  Provisions Regarding Distributions

Article VII of the Plan sets forth the provisions governing distributions on account of claims and interests allowed as of the Effective Date.

### 1.    Distributions on Account of Claims and Interests Allowed as of the Effective Date

Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the Debtors or the or Liquidating Trustee, as applicable, and the Holder of the applicable Claim or Interest, on the first Distribution Date, the Distribution Agent shall make initial distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date, subject to the Liquidating Trustee's right to object to Claims and Interests; *provided*, *however*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of

any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims and Allowed Secured Tax Claims shall be paid in accordance with Sections 2.3 and 3.2 of the Plan, respectively. The first Distribution Date for Claims Allowed on or before the Effective Date shall be as soon as reasonably practical after the Effective Date, but no later than ten (10) Business Days following the Effective Date. To the extent any Allowed Priority Tax Claim or Allowed Secured Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors or Liquidating Trustee and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

## 2. Special Rules for Distributions to Holders of Disputed Claims and Interests

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order, *provided, however* that if a portion of a Claim is not Disputed, the Distribution Agent shall make a partial distribution based on such portion of such Claim that is not Disputed.

## 3. Delivery of Distributions

### (a) Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim or Interest, other than one based on a publicly traded Certificate, is transferred fewer than 20 days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

**(b) Distribution Process**

The Distribution Agent shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims or Interests governed by a separate agreement and administered by a servicer ("Servicer") shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement. Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Interests, including Claims and Interests that become Allowed after the Distribution Record Date, shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent or a Servicer, as appropriate: (1) to the address of such Holder as set forth in the books and records of the applicable Debtor (or if the Debtors have been notified in writing, on or before the date that is 14 days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors books and records, no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address on or before the date that is 14 days before the Effective Date; or (3) to any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. The Debtors, the Liquidating Trustee, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

**(c) Compliance Matters**

In connection with the Plan, to the extent applicable, the Liquidating Trustee and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate

such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

### (d) Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date, without further notice, hearing, or order of the Bankruptcy Court.

### (e) Undeliverable, and Unclaimed Distributions

1) *Undeliverable Distributions*. If any distribution to a Holder of an Allowed Claim or Interest is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes deliverable or is cancelled pursuant to Section **Error! Reference source not found.** of the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

2) *Reversion*. Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Liquidating Trust. Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

### 4. Claims Paid or Payable by Third Parties

### (a) Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Liquidating Trustee. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Liquidating Trustee on account of such Claim, such Holder shall repay, return or deliver any distribution held by or transferred to the Holder to the Liquidating Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

#### (b) Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be disallowed to the extent of any agreed-upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

#### (c) Applicability of Insurance Policies

Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

#### 5.  **Setoffs**

Except as otherwise provided herein, the Debtors and Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records. Rights of a setoff against any Entity are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action of the Debtors, their Estates, or the Liquidating Trustee and regardless of whether such Entity is the Holder of an Allowed Claim. In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtors or the Liquidating Trustee, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

## 6. <u>Allocation Between Principal and Accrued Interest</u>

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Petition Date.

## 7. <u>De-Minimis Distribution and Donation</u>

There shall be no Distribution on account of Allowed General Unsecured Claims to the extent such Distribution will result in a payment of less than $50.00 to the Holder of such Claim, and such amount otherwise payable upon such Claim shall revert back to the Liquidating Trust. Unless otherwise set forth in the Plan, the Liquidating Trustee may donate remaining Liquidating Trust Assets to a charitable institution if the Distribution of such assets is too costly, too burdensome, or impracticable.

## H. <u>Procedures for Resolving Disputed Claims and Interests</u>

Article VII of the Plan sets forth the procedures for resolving Disputed Claims and Interests.

## 1. <u>Disputed Claims Process</u>

Except as otherwise provided herein, if a party files a proof of claim and the Debtors or Liquidating Trustee, as applicable, do not determine in their sole discretion, and without the need for

notice to or action, order or approval of the Bankruptcy Court, that the Claim subject to such proof of claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in Article VII of the Plan. Except as otherwise provided herein, all proofs of claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor's Estate, without the need for any objection by the Liquidating Trustee or any further notice to or action, order, or approval of the Bankruptcy Court.

## 2. Prosecution of Objections to Claims and Interests

Except insofar as a Claim or Interest is Allowed under the Plan, the Debtors, the Liquidating Trustee or any other party in interest shall be entitled to object to the Claim or Interest. Any objections to Claims and Interests shall be served and filed on or before the Claims Objection Bar Date. All Claims and Interests not objected to by the end of such period shall be deemed Allowed. From and after the Effective Date, the Liquidating Trustee shall have exclusive rights, powers, and interests of the Estates, subject to the Plan Documents, to pursue, settle or abandon such claims objections as the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses each Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including any Causes of Action against the Holder of such Disputed Claim or Interest. Late Claims

## 3. Interest

Except as provided for in the Plan or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## 4. Disallowance of Claims

ACTIVE.125189347.02

55

All Claims and Interests of any Entity from which property is sought by the Debtors under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## I.   Effect of Confirmation of the Plan

### 1.   Term of Injunctions or Stays

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### 2.  Releases by the Debtors

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by each of the Debtors and the Estates from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, their Estates, or the Liquidating Trust would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:**

(a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Plan Documents;

(b) any Plan Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Person or Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan;

(c) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Purchase Agreements, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement; or

(d) the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any Person or Entity under the Plan, any Plan Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Cause of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (iii) any of the Litigation Claims, but in all respects the Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

1

2    For the avoidance of doubt, the releases set forth in Section 9.2 of the Plan shall not

3    prohibit the Liquidating Trustee from asserting any and all defenses and counterclaims in

     respect of any Disputed Claim asserted by any Released Parties.

4    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of

5    the release set forth in Section 9.2 of the Plan, which includes by reference each of the related

6    provisions and definitions contained herein, and further, shall constitute the Bankruptcy

7    Court's finding that such release is: (a) in exchange for the good and valuable consideration

8    provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of

9    Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice

10   and opportunity for hearing; and (e) a bar to any of the Debtors asserting any Claim or Cause

11   of Action released by Section 9.2 of the Plan.

12          **3.  Exculpation**

13          Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or

14   incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action

15   for any claim related to any act or omission in connection with, relating to, or arising out of,

16   the Chapter 11 Cases, the Disclosure Statement, the Plan, the Sale Transactions, the Purchase

17   Agreements, or any Plan Document, contract, instrument, release or other agreement or

18   document (including providing any legal opinion requested by any Person or Entity regarding

19   any transaction, contract, instrument, document, or other agreement contemplated by the Plan

20   or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such

21   legal opinion) created or entered into in connection with the Disclosure Statement or the Plan,

22   the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation,

23   the administration and implementation of the Plan, including the distribution of property

24   under the Plan or any other related agreement, except for claims related to any act or omission

25   that is determined in a final order to have constituted actual fraud, willful misconduct, or gross

26   negligence, but in all respects such Persons and Entities shall be entitled to reasonably rely upon

27   the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The

28

**Exculpated Parties have, and upon closing of the Chapter 11 Cases or the Effective Date shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

### 4. <u>Injunction</u>

Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan does not operate to discharge the Debtors; provided, however, that, upon confirmation of the Plan, the occurrence of the Effective Date, and the distributions provided for under the Plan, the Holders of Claims and Equity Interests may not seek payment or recourse against or otherwise be entitled to any distribution from the Estates or Liquidating Trust except as expressly provided in the Plan. Further, the following terms apply except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan:

(a) Except as otherwise provided in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Estates, the Trust Oversight Committee, the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied under the Plan or the Confirmation Order.

(b) Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Estates, the Trust Oversight Committee, the Liquidating Trust, the Liquidating Trustee, or their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents,

instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed under the Plan or the Confirmation Order.

(c)    The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtors or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions, or assertions of Liens relate to property that will be distributed under the Plan or the Confirmation Order. On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

(d)    **Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released under the Plan or Confirmation Order, from (a) commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, the Trust Oversight Committee, the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, the Trust Oversight Committee, the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties; (c) creating, perfecting or enforcing any encumbrance of any kind against any Debtor, or the property or estate of any Debtor, the Trust Oversight Committee, the Liquidating Trust, or the Liquidating Trustee; and (d) commencing or continuing in any manner any action or other proceeding of**

**any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.**

(e) Upon the entry of the Confirmation Order, all Holders of Claims and Equity Interests and other parties in interest, along with their respective Related Persons, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(f) **As of the Effective Date, to the extent not enjoined by the other provisions of Article IX of the Plan, all Persons and Entities who have held, hold, or may hold Claims against the Debtors, are permanently enjoined, on and after the Confirmation Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Debtors' respective property, the Debtors' Estates, the Trust Oversight Committee, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee with respect to any such Claim or taking any act to recover such Claim outside of the claims allowance procedure discussed in the Plan and the Bankruptcy Code and Bankruptcy Rules; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Debtors' respective property, the Debtors' Estates, the Trust Oversight Committee, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee on account of any such Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Debtors' respective property, the Debtors' Estates, the Trust Oversight Committee, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidation Trustee on account of any such Claim; and (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Debtors' Estates, the Trust Oversight Committee, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee, or against the property or**

**interests in property of the Debtors, the Debtors' Estates, the Trust Oversight Committee, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee on account of any such Claim, unless such Person or Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve, any right of setoff pursuant to applicable law or otherwise.**

(g) All injunctive provisions of Article IX of the Plan shall extend for the benefit of the Liquidating Trustee and any successors of the Debtors, and to any property and interests in property subject to the Plan.

## 5.  Release of Liens and Cancellation of Documents

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns. In addition, on the Effective Date, except to the extent otherwise provided in the Plan, any and all notes, instruments, debentures, certificates, and other documents evidencing Claims against the Debtors shall be deemed inoperative and unenforceable solely as against the Debtors and their Estates. Nothing contained in the Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to any prior order of the Bankruptcy Court.

## 6.  Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent or (b) the relevant Holder of a Claim has filed a noncontingent Proof of Claim on

account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## J.   Conditions Precedent to the Effective Date

### 1.   Conditions Precedent to the Effective Date

Under Section 10.1 of the Plan, it shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 10.2 of the Plan:

(a) The Plan Documents shall be in form and substance reasonably acceptable to the Debtors and the ESOP Trustee.

(b) The Confirmation Order shall have been entered, shall be in form and substance reasonably acceptable to the Debtors and the ESOP Trustee, and shall have become a Final Order in full force and effect with no stay thereof then in effect.

(c) The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Plan Documents, including, without limitation, the transactions contemplated by the Liquidating Trust Agreement.

(d) The Debtors shall have paid or reserved for all Statutory Fees due to the U.S. Trustee.

(e) The appointment of the Liquidating Trustee and the terms of his service and compensation shall have been confirmed by the Bankruptcy Court in the Confirmation Order, and the Liquidating Trustee shall have accepted in writing such terms.

(f) All agreements and instruments that are exhibits to the Plan, including the Liquidating Trust Agreement, shall be in a form reasonably acceptable to the Debtors and the ESOP Trustee and have been duly executed and delivered.

(g) The Debtors shall have paid or reserved for all expenses and payments due to be made on the Effective Date of the Plan.

(h) All other actions, authorizations, consents and regulatory approvals required (if any) and necessary to implement the provisions of the Plan shall have been obtained,

effected or executed in a manner acceptable to the Debtors and the ESOP Trustee or,

if waivable, waived by the Person or Persons entitled to the benefit thereof.

### 2.    Waiver of Conditions Precedent

The Debtors, with the written consent of the ESOP Trustee, may waive any of the conditions

to the Effective Date set forth in Section 10.1 of the Plan any time without any notice to any other

parties in interest and without any further notice to or action, order, or approval of the Bankruptcy

Court, and without any formal action other than proceeding to confirm or consummate the Plan.

### 3.    Establishing the Effective Date

The calendar date to serve as the Effective Date shall be a Business Day of, on, or promptly

following the satisfaction or waiver of all conditions the Effective Date, which date will be selected

by the Debtors in consultation with the ESOP Trustee.

### 4.    Effect of Non-Occurrence of Conditions to Consummation

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then

except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan

will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall:

(a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any

manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment,

offer, or undertaking of any sort by any Debtor or any other Entity.

### K.  Modification, Revocation, or Withdrawal of the Plan

### 1.    Modification and Amendments

Effective as of the date hereof: (a) the Debtors reserve the right, in accordance with the

Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan and any exhibits thereto,

including, without limitation, the Plan Supplement, before the entry of the Confirmation Order,

subject to the limitations set forth herein; and (b) after the entry of the Confirmation Order, the

Debtors or the Liquidating Trustee, with the consent of the ESOP Trustee, as applicable, may, upon

order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the

Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such

manner as may be necessary to carry out the purpose and intent of the Plan, subject to the limitations set forth herein and, if effective, the Purchase Agreements.

### 2.   Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

### L.   Retention of Jurisdiction by the Bankruptcy Court

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction, to the maximum extent permitted by applicable law, over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including specifically jurisdiction to:

(a) allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b) decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c) resolve any matters related to Executory Contracts or Unexpired Leases, including:

(a) the assumption, assumption and assignment, or rejection of any Executory Contract

or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Liquidating Trustee's amendment, modification, or supplement, after the Effective Date, pursuant to Article VI of the Plan, of the list of Executory Contracts and Unexpired Leases to be assumed; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(d) ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(e) adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f) enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan or the Confirmation Order, including contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

(g) enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(h) grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

(i) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(j) hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Section 7.4(a) of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article IX of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan or the Confirmation Order, or any Entity's obligations incurred in connection with the Plan or the Confirmation Order, including those arising under agreements, documents, or instruments executed in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

(k) enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(l) consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(m) hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n) enter an order or Final Decree concluding or closing the Chapter 11 Cases;

(o) enforce all orders previously entered by the Bankruptcy Court; and

(p) hear any other matter not inconsistent with the Bankruptcy Code.

## M. Miscellaneous Provisions

### 1. Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Liquidating Trustee, as applicable,

and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 2.    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

### 3.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

### 4.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, trustee, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

### 5.    Service of Documents

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or the Liquidating Trustee shall be served on the following parties:

**If to the Debtors (prior to the Effective Date):**

CPESAZ, Inc.
4805 E. Speedway
Tucson, Arizona 85712
Attn: Mark G. Monson
President & CEO

ACTIVE.125189347.02

68

mmonson@cpes.com

 – with a copy to –
Faegre Drinker Biddle & Reath, LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Attn: Jeremy Pelphrey
jeremy.pelphrey@faegredrinker.com

**If to the Liquidating Trustee (after the Effective Date):**

[To be provided following election of Liquidating Trustee and counsel thereto]

### 6.    Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 7.    Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from https://www.bmcgroup.com/CPES or the Bankruptcy Court's website at https://www.cacb.uscourts.gov. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

### 8.    Non-Severability

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full

force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

## ARTICLE IV

## CERTAIN FACTORS TO BE CONSIDERED REGARDING THE PLAN

**PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL IMPAIRED HOLDERS OF CLAIMS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.**

The following provides a summary of various important considerations and risk factors associated with the Plan. However, it is not exhaustive. In considering whether to vote for or against the Plan, Holders of Claims or Interests should read and carefully consider the factors set forth below, as well as all other information set forth or otherwise referenced in this Disclosure Statement.

### A. Parties in Interest May Object to Debtors' Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a chapter 11 plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created seven classes of Claims and Interests, each encompassing Claims or Interests that are substantially similar to the other Claims or Interests in each such class.

### B. The Debtors May Not Be Able to Secure Confirmation of the Plan

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting creditor or interest Holder might challenge the adequacy of this Disclosure Statement or the balloting procedures and results as not being in compliance with the

Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that this Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including that the terms of the Plan are fair and equitable to non-accepting Classes. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Bankruptcy Court that the Plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes, confirmation of the Plan is not likely to be followed by a liquidation or a need for further financial reorganization, and the value of distributions to non-accepting Holders of claims and interests within a particular class under the Plan will not be less than the value of distributions such Holders would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. While there can be no assurance that these requirements will be met, the Debtors believe that the Plan will not be followed by a need for further financial reorganization and that non-accepting Holders within each Class under the Plan will receive distributions at least as great as would be received following a liquidation under Chapter 7 of the Bankruptcy Code when taking into consideration all administrative expense claims and costs associated with any such Chapter 7 case. The Debtors believe that Holders of unsecured Claims would receive significantly less of a distribution under a liquidation pursuant to Chapter 7.

If the Plan is not confirmed, it is unclear whether a restructuring of the Debtors could be implemented and what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests. If an alternative reorganization could not be agreed to, it is possible that the Debtors would have to liquidate its assets, in which case Holders of Claims would receive substantially less favorable treatment than they would receive under the Plan.

### C. Nonconsensual Confirmation

The "cramdown" provisions of section 1129 of the Bankruptcy Code permit the Bankruptcy Court to confirm the Plan if at least one Impaired Class of Claims against the Debtor has accepted the Plan (with such acceptance being determined without including the acceptance of any "insider" in such Class) and, as to each Impaired Class of Claims that has not accepted the Plan, the Bankruptcy

Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Impaired Class.

The Debtors reserve the right to modify the terms of the Plan as necessary for Confirmation without the acceptance of all Impaired Classes. Such modification could result in less favorable treatment for any non-accepting Classes than the treatment currently provided by the Plan.

**D. Risk of Non-Occurrence of the Effective Date**

Although the Debtors believe that the Effective Date may occur shortly following the Confirmation Date, there can be no assurance that the Effective Date will occur or as to the actual timing of the Effective Date.

Any delay in Confirmation and effectiveness of the Plan could result in, among other things, increased Administrative Claims (including Professional Claims). These or any other negative effects of delays in Confirmation or effectiveness of the Plan could endanger the ultimate consummation of the Plan and materially alter creditor outcomes.

**E. Risk of Post-Effective Date Default**

In the Confirmation Order, the Bankruptcy Court will be required to make a judicial determination that the Plan is feasible, but that determination does not serve as any guarantee that there will not be any post-Effective Date defaults. The Debtors believe that the post-Effective Date cash reserves will be sufficient to meet the Liquidating Trust's operating requirements and other post-Effective Date obligations under the Plan.

**F. Amount or Classification of a Claim or Interest May be Subject to Objection**

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim may not receive its specified share of the estimated distributions described in this Disclosure Statement.

**G. Estimated Claim Amounts by Class May Not be Accurate**

There can be no assurance that the estimated Claim amounts assumed for the purposes of preparing the Plan are correct. The actual amount of Allowed Claims likely will differ in some respect

from the estimates. The estimated amounts are subject to certain risks, uncertainties, and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual amount of Allowed Claims may vary from those estimated for the purpose of preparing the Disclosure Statement. Depending on the outcome of claims objections, the estimated recovery percentages provided in this Disclosure Statement may be different than the actual recovery percentages that are realized under the Plan.

**H.  Validity of Votes Cast to Accept Plan Not Affected by Contingencies**

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Claims to be subordinated to other Claims. The occurrence of any and all such contingencies that could affect distributions available to Holders of Allowed Claims under the Plan, however, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

**ARTICLE V**

**FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

Confirmation of a chapter 11 plan can have a number of tax implications for the debtor and for Holders of claims against and interests in the debtor, including discharge/cancellation of indebtedness and capital gains/losses. The tax consequences to Holders of claims or interests may vary based upon the individual circumstances of each Holder. Moreover, the tax consequences of certain aspects of a plan may be uncertain due to, in some cases, the lack of applicable legal precedent and the possibility of changes in the law.

Given the relative size of the Debtors' Estates and the diverse nature of the Claims against and Interests in the Debtors, the Debtors have not undertaken an analysis of the tax consequences of the Plan upon the Debtors or the Holders of Claims or Interests, as applicable. In addition, no ruling has been applied for or obtained from the Internal Revenue Service or any State or local taxing authority, and no opinion of counsel has been requested or obtained, by the Debtors with respect to the tax aspects of the Plan.

ACTIVE.125189347.02

73

Accordingly, there can be no assurance that the Internal Revenue Service or any State or local taxing authority will not challenge any position taken by a Holder of a Claim or Interest as to the tax consequences of the Plan, or that such a challenge, if asserted, would not be upheld. Furthermore, the Debtors do not provide any representations or warranties to any Holders of Claims or Interests with respect to any tax attributes of the Debtors or their extent or availability following confirmation and consummation of the Plan.

**\*\*Please note that the foregoing discussion does not constitute tax advice or a tax opinion concerning the Plan. Holders of Claims and Interests and other parties in interest are strongly urged to consult with their own tax advisors regarding the tax consequences of the Plan.\*\***

## ARTICLE VI

## CONFIRMATION OF THE PLAN; VOTING REQUIREMENTS

### A. Requirements for Confirmation

The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must make a series of findings concerning the Plan and the Debtor, including that (i) the Plan has classified Claims in a permissible manner; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) the Debtors have complied with applicable provisions of the Bankruptcy Code; (iv) the Debtors have proposed the Plan in good faith and not by any means forbidden by law; (v) the disclosure required by section 1125 of the Bankruptcy Code has been made; (vi) the Plan has been accepted by the requisite votes of Creditors in each class (except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code); (vii) the Plan is feasible and confirmation is not likely to be followed by further financial restructuring of the Debtors; (viii) the Plan is in the "best interests" of all Holders of Claims in an Impaired class (see "Best Interests Test" below); and (ix) all Statutory Fees have been paid or the Plan provides for the payment of such fees on the Effective Date. The Debtors believe that the Plan satisfies all the requirements for confirmation.

### B. Best Interests Test

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an impaired allowed claim or interest either (i) accepts the plan or (ii) receives or retains under the plan property of a value,

1    as of the effective date, that is not less than the value such Holder would receive or retain if the debtor

2    were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date (the "Best Interests

3    Test"). To determine whether the Best Interests Test is satisfied, the Bankruptcy Court must estimate

4    the aggregate cash proceeds that would be generated from the liquidation of the Debtors' assets by a

5    chapter 7 trustee, net of administrative expenses, and the aggregate claims that would be allowed

6    against the chapter 7 estate, to determine the estimated creditor payout, which is then compared to

7    the estimated creditor payouts under the Plan.

8        A hypothetical chapter 7 liquidation analysis prepared by the Debtors (the "Liquidation

9    Analysis") is attached to this Disclosure Statement as Exhibit B. As is evident from the Liquidation

10   Analysis, the Debtors believe that Creditors will receive a higher percentage payout on their Claims

11   under the Plan than they would receive in a chapter 7 liquidation. The conversion to chapter 7 may

12   also give rise to certain Causes of Action against the Estate. In addition, chapter 7 liquidation would

13   result in a significant delay in payments being made to Creditors.

14       For the reasons set forth above and in the Liquidation Analysis, the Debtors believe that

15   confirmation of the Plan would provide a superior outcome for the Holders of Claims and Interests

16   when compared to a chapter 7 liquidation. Accordingly, the Plan meets the requirements of the Best

17   Interests Test.

18   **C.  Financial Feasibility Test**

19       Under section 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that a

20   bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for

21   further financial reorganization of the debtor under the plan, unless such liquidation or reorganization

22   is proposed under the plan. Under the Plan, the Debtors' remaining assets are being transferred to the

23   Liquidating Trust to be liquidated and distributed to Holders of Claims and Interests. Therefore, as

24   the Plan is a liquidating plan, the Bankruptcy Court's confirmation of the Plan will not be followed

25   by liquidation or the need for any further reorganization.

26   **D.  Acceptance by Impaired Classes**

27       Section 1129(a) of the Bankruptcy Code requires that each Class of Claims or Interests that

28

ACTIVE.125189347.02

75

is Impaired under the Plan accept the Plan, subject to the "cramdown" exception contained in section 1129(b) of the Bankruptcy Code. Under section 1129(b), if at least one but not all Impaired Classes do not accept the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Bankruptcy Code. The process by which non-accepting Classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting Classes if (i) the Plan meets all confirmation requirements except the requirement of section 1129(a)(8) of the Bankruptcy Code (*i.e.,* that the Plan be accepted by each Impaired Class) and (ii) the Plan does not "discriminate unfairly" and is "fair and equitable" toward each Impaired Class that has not voted to accept the Plan, as referred to in section 1129(b) of the Bankruptcy Code and applicable case law.

Voting Classes under the Plan will "accept" the Plan if the Plan is accepted by Creditors that hold at least two-thirds in amount and more than one-half in number of the Allowed Claims in the Class that actually vote on the Plan.

Classes that are not Impaired under the Plan will be conclusively presumed to accept the Plan, so solicitation of acceptances from such Classes is not required. A Class is "impaired" unless (i) the legal, equitable and contractual rights to which a Claim or Interest in the Class entitles the Holder are not modified or (ii) the effect of any default is cured and the original terms of the obligation are reinstated. Under the Plan, Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired and are presumed to accept the Plan. Class 4 (Intercompany Claims) is deemed to reject the Plan. Classes 3 and 6 are Impaired under the Plan and Holders of Claims or Interests in such Classes are entitled to vote to accept or reject the Plan.

## ARTICLE VII

## RECOMMENDATION AND CONCLUSION

THE DEBTORS BELIEVE THAT CONFIRMATION AND CONSUMMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND THAT THE PLAN SHOULD BE CONFIRMED. THE DEBTORS STRONGLY RECOMMEND THAT ALL CREDITORS RECEIVING A BALLOT VOTE IN FAVOR OF THE PLAN.

1

Dated: February 2, 2021

**FAEGRE DRINKER BIDDLE & REATH LLP**

2

3       By: */s/ Scott F. Gautier*
        Jeremy M. Pelphrey (CA Bar #249862)
        Jeremy.Pelphrey@faegredrinker.com
4       Scott F. Gautier (CA Bar #211742)
        Scott.Gautier@faegredrinker.com
5       1800 Century Park East, Suite 1500
        Los Angeles, CA 90067
6       Telephone: (310) 203-4000
        Facsimile: (310) 229-1285
7

8       Vince Slusher (admitted *pro hac vice*)
        1717 Main Street, Suite 5400
9       Dallas, Texas 75201
        Telephone: (469) 357-2500
10      Facsimile: (469) 327-0860
        Vince.Slusher@faegredrinker.com
11

12      *Counsel for the Debtors and Debtors in Possession*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ACTIVE.125189347.02