<u>**EXHIBIT A**</u>

**The Plan**

**FAEGRE DRINKER BIDDLE & REATH LLP**
JEREMY M. PELPHREY (CA Bar # 249862)
Jeremy.Pelphrey@faegredrinker.com
SCOTT F. GAUTIER (CA Bar # 211742)
Scott.Gautier@faegredrinker.com
1800 Century Park East, Suite 1500
Los Angeles, CA 90067
Telephone:    (310) 203-4000
Facsimile:    (310) 229-1285

*Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION**

| | |
|---|---|
| In re: | Lead Case No. 9:20-bk-10554-DS |
| CPESAZ Liquidating, Inc., et al., EIN: 86-0804057 | Jointly Administered With: |
| | Case No. 9:20-bk-10553-DS |
| NDS Liquidating, Inc. EIN: 27-5174435 | Case No. 9:20-bk-10994-DS |
| CPESCA Liquidating, Inc. EIN: 27-2315212 | Chapter 11 Cases |
| Debtors. | **DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION** |
| [•] Affects All Debtors | |
| [ ] CPESAZ Liquidating, Inc. [ ] NDS Liquidating, Inc. [ ] CPESCA Liquidating, Inc. | Plan Confirmation Hearing: Date:  [To Be Scheduled] Time: [To Be Scheduled] Place: Courtroom 201   United States Bankruptcy Court   1415 State Street   Santa Barbara, CA 93101 |
| Debtors and Debtors in Possession | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ....................................... 1

1.1    Defined Terms ............................................................................................... 1

1.2    Rules of Interpretation................................................................................. 15

1.3    Computation of Time .................................................................................. 16

1.4    Governing Law ............................................................................................ 16

1.5    Reference to Monetary Figures................................................................... 16

1.6    Controlling Document................................................................................. 16

1.7    Nonconsolidated Plan................................................................................. 17

ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS ................................. 17

2.1    Administrative Claims ................................................................................ 17

2.2    Professional Claims..................................................................................... 17

2.3    Priority Tax Claims ..................................................................................... 19

2.4    Statutory Fees .............................................................................................. 19

2.5    ESOP ........................................................................................................... 19

ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS ...................................................................................................... 19

3.1    Classification of Claims and Interests........................................................ 19

3.2    Treatment of Classes of Claims and Interests ........................................... 20

3.3    Special Provision Governing Unimpaired Claims and Interests................ 23

3.4    Elimination of Vacant Classes ................................................................... 23

3.5    Voting Classes; Presumed Acceptance by Non-Voting Classes................ 23

3.6    Nonconsensual Confirmation...................................................................... 23

ARTICLE IV PROVISIONS REGARDING THE LIQUIDATING TRUST ............. 24

4.1    Overview...................................................................................................... 24

4.2    Settlement and Adjustment of Claims and Interests of the Debtors and their Estates ......................................................................................................... 24

4.3    Sources of Consideration for Distributions under the Plan........................ 24

4.4    Vesting and Transfer of Assets to the Liquidating Trust .......................... 24

4.5    Appointment of the Liquidating Trustee..................................................... 25

4.6    Rights and Powers of the Liquidating Trustee............................................ 26

ARTICLE V ADDITIONAL MEANS FOR IMPLEMENTATION OF THE PLAN ............... 28

5.1   Plan Transactions ................................................................................. 28

5.2   Preservation of Causes of Action ......................................................... 29

5.3   Preservation of Right to Conduct Investigations ................................. 30

5.4   Prosecution and Resolution of Litigation Claims ................................ 30

5.5   Privileges as to Certain Causes of Action ........................................... 31

5.6   Corporate Action .................................................................................. 31

5.7   Termination of ESOP. ........................................................................... 32

5.8   Effectuating Documents; Further Transactions ................................... 32

5.9   Insurance Policies ................................................................................ 33

5.10  Filing of Monthly and Quarterly Reports and Payment of Statutory Fees ........... 33

5.11  Exemption from Certain Taxes and Fees .............................................. 34

5.12  Tax Returns ........................................................................................... 34

5.13  Wind-Down ........................................................................................... 34

5.14  Dissolution of the Debtors ................................................................... 35

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
............................................................................................................................... 35

6.1   Assumption or Rejection of Executory Contracts and Unexpired Leases ........... 35

6.2   Rejection Damages Claims and Objections to Rejections .................... 36

6.3   Indemnification Obligations .................................................................. 36

6.4   Director and Officer Insurance .............................................................. 37

6.5   Modifications, Amendments, Supplements, Restatements, or Other Agreements 37

6.6   Reservation of Rights ............................................................................ 38

6.7   Non-occurrence of the Effective Date ................................................... 38

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 38

7.1   Distributions on Account of Claims and Interests Allowed as of the Effective Date
............................................................................................................................... 38

7.2   Special Rules for Distributions to Holders of Disputed Claims and Interests ...... 39

7.3   Delivery of Distributions ...................................................................... 39

7.4   Claims Paid or Payable by Third Parties .............................................. 41

7.5   Setoffs ................................................................................................... 42

7.6   Allocation Between Principal and Accrued Interest ............................. 43

7.7   De-Minimis Distribution and Donation ................................................ 43

ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS
................................................................................................................................. 43

    8.1    Disputed Claims Process.................................................................................. 43

    8.2    Prosecution of Objections to Claims and Interests ........................................ 44

    8.3    Interest ............................................................................................................ 44

    8.4    Disallowance of Claims and Interests ............................................................ 45

ARTICLE IX EFFECT OF CONFIRMATION OF THE PLAN.............................................. 45

    9.1    Term of Injunctions or Stays.......................................................................... 45

    9.2    Releases by the Debtors ................................................................................. 45

    9.3    Exculpation .................................................................................................... 47

    9.4    Injunction ...................................................................................................... 48

    9.5    Release of Liens and Cancellation of Documents.......................................... 51

    9.6    Reimbursement or Contribution..................................................................... 51

ARTICLE X CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................... 52

    10.1    Conditions Precedent to the Effective Date. ................................................. 52

    10.2    Waiver of Conditions Precedent ................................................................... 53

    10.3    Establishing the Effective Date..................................................................... 53

    10.4    Effect of Non-Occurrence of Conditions to Consummation.......................... 53

ARTICLE XI MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ...... 53

    11.1    Modification of Plan ..................................................................................... 53

    11.2    Revocation or Withdrawal of Plan................................................................ 54

ARTICLE XII RETENTION OF JURISDICTION .............................................................. 54

ARTICLE XIII MISCELLANEOUS PROVISIONS ............................................................ 56

    13.1    Additional Documents ................................................................................. 56

    13.2    Reservation of Rights.................................................................................... 57

    13.3    Successors and Assigns................................................................................. 57

    13.4    Service of Documents ................................................................................... 57

    13.5    Entire Agreement ......................................................................................... 58

    13.6    Plan Supplement Exhibits ............................................................................ 58

    13.7    Non-Severability .......................................................................................... 58

1

**INTRODUCTION**

2      CPESAZ Liquidating, Inc., *fka* Community Provider of Enrichment Services, Inc. dba

3  CPES, Inc. ("CPES AZ"), NDS Liquidating, Inc., *fka* Novelles Developmental Services, Inc.

4  ("Novelles"), and CPESCA Liquidating, Inc. *fka* CPES California, Inc. ("CPES CA" and

5  collectively with CPES AZ and Novelles, the "Debtors") as debtors and debtors in possession in

6  the above-captioned Chapter 11 Cases jointly propose this Plan for the resolution of outstanding

7  Claims against, and Interests in, the Debtors. Capitalized terms used in this Plan shall have the

8  meanings set forth in ARTICLE I below.

9      Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan

10  for each Debtor. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the

11  Bankruptcy Code. The classifications of claims and interests set forth in ARTICLE III shall be

12  deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The

13  Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to

14  the Disclosure Statement for a discussion of the Debtors' history, business, properties and

15  operations, projections, risk factors, a summary and analysis of this Plan and certain related

16  matters.

17      ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE

18  PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO

19  ACCEPT OR REJECT THE PLAN.

20

**ARTICLE I**

21

**DEFINED TERMS, RULES OF INTERPRETATION,**

22

**COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

23  **1.1    Defined Terms**

24      1.    "*Administrative Claim*" means a Claim for costs and expenses of administration of

25  the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the

26  Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after

27  the Petition Date until and including the Effective Date of preserving the Estates and operating the

28  businesses of the Debtors; (b) Allowed Professional Claims; (c) all fees and charges assessed

against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code; and (d) any other obligation designated as an Allowed Administrative Claim pursuant to a Final Order of the Bankruptcy Court.

2.    "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, except as otherwise set forth in the Plan or a Final Order, which: (a) with respect to Administrative Claims other than Professional Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Claims, shall be 45 days after the Effective Date; *provided* that Filing requests for payment of Administrative Claims is not required where the Plan, Bankruptcy Code, or a Final Order does not require such Filing.

3.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    "*Allowed*" means, as to a Claim or an Interest, that (a) such Claim or Interest was expressly allowed under this Plan or otherwise by a Final Order, (b) proof of such Claim or Interest was properly and timely filed in accordance with all applicable orders of the Bankruptcy Court and provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules, and the applicable time for parties in interest to bring objections to allowance of such Claim or Interest has passed (or if such an objection was brought by a party in interest, such objection has been determined by a Final Order in favor of the Holder of such Claim or Interest), (c) such Claim or Interest has been listed in the applicable Debtor's Schedules or list of equity security Holders, as applicable, as liquidated in amount and not disputed or contingent, and no contrary proof of Claim or Interest has been filed on account of such Claim or Interest, or (d) a Claim or Interest as to which a Proof of Claim or Proof of Interest, as applicable, was filed timely and as to which no objection was filed.

5.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code.

6.      "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

7.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Central District of California, Northern Division, or such other court having jurisdiction over the Chapter 11 Cases.

8.      "*Bankruptcy Rules*" means, collectively, the following, as applicable to the Chapter 11 Cases: (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, (b) the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, and (c) any applicable general orders or chambers procedures of the Bankruptcy Court, all as may be amended from time to time.

9.      "*Bar Date*" means the dates established by the Bankruptcy Court by which Proofs of Claim must be filed.

10.      "*Beneficiary*" means any Holder of an Allowed Claim that may, or that is entitled to, receive a Distribution from the Liquidating Trust under the terms of the Plan and the Liquidating Trust Agreement.

11.      "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

12.      "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

13.      "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of any of the Debtors, the debtors in possession, and/or the Estates (including those actions set forth in the Plan Supplement), whether

known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced by the Liquidating Trustee after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

14.     "*Certificate*" means any instrument evidencing a Claim or an Interest.

15.     "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

16.     "*Claim*" means a claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor.

17.     "*Claims and Solicitation Agent*" means BMC Group, the claims and solicitation agent retained by the Debtors in the Chapter 11 Cases pursuant to order of the Bankruptcy Court.

18.     "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court upon the request by the Liquidating Trustee.

19.     "*Claims Register*" means the official register of Claims against or Interests in the Debtors maintained by the Claims and Solicitation Agent.

20.     "*Class*" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

21.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

22.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

23.     "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

24.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

25.     "*Consummation*" means the occurrence of the Effective Date.

26.     "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

27.     "*D&O Insurance*" means all primary and excess Insurance Policies that provide coverage for liability related to the Litigation Claims, and, if applicable, "tail" or "runoff" coverage for such policies.

28.     "*Debtors*" means, collectively, each of the following (the debtors and debtors in possession in the Chapter 11 Cases): CPESAZ Liquidating, Inc., *fka* Community Provider of Enrichment Services, Inc. dba CPES, Inc.; NDS Liquidating, Inc., *fka* Novelles Developmental Services, Inc.; and CPESCA Liquidating, Inc., *fka* CPES California, Inc.

29.     "*Direct ESOP Claim*" means solely and exclusively a direct cause of action held by the ESOP Trustee or any other party with respect to the ESOP which, for the avoidance of doubt, excludes any Causes of Action related to the ESOP held by the Debtors and their Estates.

30.     "*Directors and Officers*" means the current and former directors and officers of the Debtors.

31.     "*Disclosure Statement*" means the Bankruptcy Court-approved disclosure statement for the Plan as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

32.     "*Disputed*" means, as to a Claim or an Interest, that the Claim or an Interest is not yet Allowed.

33.     "*Disputed Claim Reserve*" means a reserve established by the Debtors prior to the Effective Date and funded with Cash in the amount of $1,500,000.00 for the payment of Disputed Claims, if and to the extent that they should become Allowed Claims, as well as any future Claims that are unknown as of the Effective Date and are Allowed or otherwise determined by the Liquidating Trustee or the Court to be properly asserted against the Estates.

34.     "*Distribution*" means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, or Beneficiaries, as applicable, under the Plan and/or the Liquidating Trust Agreement.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

35.     "*Distribution Agent*" means the Debtors, the Liquidating Trustee, or the Entity or Entities selected by the Debtors or the Liquidating Trustee, to make or facilitate distributions contemplated under the Plan.

36.     "*Distribution Date*" means the date or dates determined by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Agreement upon which the Liquidating Trustee shall make Distributions to Holders of Allowed Claims entitled to receive Distributions under the Plan.

37.     "*Distribution Proceeds*" means all Cash of the Debtors available on the Effective Date, including any proceeds of the Sale Transactions, and any funds received after the Effective Date, after (a) the payment of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims, Allowed General Unsecured Claims, and (b) the creation and funding of the Disputed Claims Reserve, the Professional Fee Escrow Account, and the Wind-Down Reserve.

38.     "*Distribution Record Date*" means the record date for purposes of making Distributions under the Plan and the Liquidating Trust Agreement on account of Allowed Claims, which date or dates shall be set forth in the Liquidating Trust Agreement.

39.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Section 10.1 have been satisfied or waived in accordance with Section 10.2.

40.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

41.     "*Equity Interest*" means any Equity Security in any Debtor, including, without limitation, all issued, unissued, authorized or outstanding shares of stock.

42.     "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

43.     "*ESOP*" means the CPES Employee Stock Ownership Plan, together with the CPES Employee Stock Ownership Trust.

44.     "*ESOP Trustee*" means Miguel Parades in his capacity as Trustee of the ESOP and his successors and assigns.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

45.    "*Estate*" means the bankruptcy estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

46.    "*Exculpated Party*" means each of the following in its capacity as such: (a) the Debtors; (b) the Patient Care Ombudsman, and (c) with respect to each of the foregoing, such Entity's successors and assigns and current affiliates, subsidiaries, officers, directors, trustees, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

47.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

48.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Claims and Solicitation Agent.

49.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

50.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility of a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable non-bankruptcy law, may be filed relating to such order or judgment shall not prevent such order or judgment from being a Final Order.

51.    "*General Unsecured Claim*" means any Claim other than an Administrative Claim, a Professional Claim, a Secured Tax Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, or an Intercompany Claim.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

7

52.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

53.    "*Holder*" means an Entity holding a Claim or an Interest, as the context requires.

54.    "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

55.    "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

56.    "*Insurance Policies*" means all insurance policies of the Debtors, including any D&O Insurance.

57.    "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

58.    "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor.

59.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

60.    "*Interim Compensation Order*" means the order of the Bankruptcy Court establishing procedures for interim compensation and reimbursement of expenses of professionals.

61.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as may be amended from time to time.

62.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

63.    "*Liquidating Trust*" means the trust established on the Effective Date as described in Section VIII of the Plan and in accordance with the Liquidating Trust Agreement.

64.    "*Liquidating Trust Advisors*" means any firm(s) or individual(s) retained by the Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement to serve as legal counsel for the Liquidating Trust or to provide other professional services for the Liquidating Trust in connection with the performance of the Liquidating Trustee's duties and responsibilities under the Plan and the Liquidating Trust Agreement.

65.    "*Liquidating Trust Agreement*" means the trust agreement establishing the Liquidating Trust described in Article IV of the Plan, and which shall be filed in draft form as part of the Plan Supplement.

66.     "*Liquidating Trust Assets"* means (a) all assets, interests, and rights of the Debtors and their Estates that exist as of the Effective Date (whether received or acquired on or after the occurrence of the Effective Date) and any proceeds thereof, whether choate or inchoate, wherever and by whomever held, including, inter alia, the Debtors' Cash, Causes of Action, Insurance Policies, books and records, all of which shall be transferred to the Liquidating Trust on the Effective Date pursuant to the terms of this Plan; (b) the property or assets vested in the Liquidating Trust or the Liquidating Trustee pursuant to the terms of this Plan on or after the Effective Date, and (c) any and all Litigation Claims and Litigation Proceeds.

67.     "*Liquidating Trust Operating Expenses*" means the overhead and other operational expenses of the Liquidating Trust including, but not limited to, (a) reasonable compensation for the Liquidating Trustee and members of the Trust Oversight Committee (which expenses shall not include professional fees of such members) in accordance with the Liquidating Trust Agreement, (b) costs and expenses incurred by the Liquidating Trustee in administering the Liquidating Trust, (c) Statutory Fees incurred after the Effective Date to the U.S. Trustee, and (d) any fees and expenses payable to the Liquidating Trust Advisors.

68.     "*Liquidating Trustee*" means the Person or Persons selected by the Debtors, with the consent of the ESOP Trustee, and after consultation with other parties in interest, and appointed to administer the Liquidating Trust, which shall be disclosed in the Plan Supplement, with such rights, duties, and obligations as set forth in the Plan and in the Liquidating Trust Agreement.

69.     "*Litigation Claims*" means any and all Causes of Action of any Debtor and/or any of the Estates against any Entity, including but not limited to, (a) all claims and Causes of Action related to or arising out of the ESOP that are not Direct ESOP Claims, (b) the Preserved D&O Claims, (c) all claims and Causes of Action arising under Chapter 5 of the Bankruptcy Code (other than Causes of Action that constitute Purchased Assets), and (d) all claims and Causes of Action against insiders of the Debtors.

70.     "*Litigation Proceeds*" means the net proceeds of the Litigation Claims.

71.    "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

72.    "*Other Secured Claim*" means any Secured Claim other than a Secured Tax Claim.

73.    "*Patient Care Ombudsman*" means Timothy J. Stacy, in his capacity as patient care ombudsman, as appointed by the U.S. Trustee [Dkt. 290].

74.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

75.    "*Petition Date*" means the date on which each of the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

76.    "*Plan*" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

77.    "*Plan Documents*" means the Plan, the Disclosure Statement, the Plan Supplement, and the various agreements and other documents formalizing or implementing the Plan and the transactions contemplated thereunder.

78.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors no later than five (5) Business Days before the Plan objection deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement. The Plan Supplement shall include the Liquidating Trust Agreement, the Retained Causes of Action List; and any and all other documentation necessary to effectuate the Plan or that is contemplated by the Plan. The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with ARTICLE XI hereof.

79.    "*Preserved D&O Claims*" means any and all claims and Causes of Action (together with any proceeds thereof, including any proceeds of the D&O Insurance) held by the Debtors and their Estates against the Debtors' Directors and Officers, solely in their capacities as such, including those claims and Causes of Action that are not currently asserted, but could be asserted

Exhibit A - First Amended Plan of Liquidation    Page 16 of 65

against them, including but not limited to, Claims held by the Debtors and their Estates relating to the ESOP.

80.     "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

81.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

82.     "*Privilege*" means the attorney client privilege, work product protections or other immunities (including without limitation those related to common interests or joint defenses with other parties), or protections from disclosure of any kind held by the Debtors or their Estates.

83.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Interest under the Plan.

84.     "*Pro Rata Share*" means the ratio (expressed as a percentage) of the amount of an Allowed Interest or Claim in a Class to the aggregate amount of all Allowed Interests or Claims in the same Class.

85.     "*Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

86.     "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

87.      "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the total Professional Fee Reserve Amount funded by the Liquidating Trustee on the Effective Date.

88.      "*Professional Fee Reserve Amount*" means the aggregate amount of Professional Claims that the Professionals estimate they have incurred or will incur in rendering service to the Estates prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Section 2.2 hereof.

89.      "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

90.      "*Proof of Interest*" means a proof of Interest filed with respect to any of the Debtors in the Chapter 11 Cases.

91.      "*Purchased Assets*" means all assets transferred, conveyed, sold, and assigned to the Purchasers under and in connection with the consummation of the Sale Transactions under the Sale Documents.

92.      "*Purchaser*" means each purchaser of assets of any Debtor pursuant to section 363 of the Bankruptcy Code, together with its successors and permitted assigns.

93.      "*Reinstated*" or "*Reinstatement*" means, with respect to Claims or Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

94.      "*Rejection Damages Claim*" means a Claim for damages arising out of the rejection of an Executory Contract.

95.      "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former shareholders, affiliates (whether by operation of law or otherwise), subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, and any Person claiming by or through them, each in their capacities as such.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

96.    "*Released Parties*" means the Debtors and their Related Persons; *provided, however*, that the Released Parties shall not include any of the Debtors' Directors and Officers.

97.    "*Retained Causes of Action List*" means a list of all retained Causes of Action of the Debtors, identified in the Plan Supplement.

98.    "*Sale Documents*" means the asset purchase agreements, the orders, and all documents, instruments, and agreements executed and delivered in connection with the consummation of the transactions contemplated thereby.

99.    "*Sale Transaction*" means the sales of the Debtors' assets to the Purchasers in accordance with the Sale Documents.

100.    "*Schedules*" means collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

101.    "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

102.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

103.    "*Seller*" means, the Debtor that is a Seller under the applicable Purchase Agreement.

104.    "*Solicitation Procedures Order*" means any order, including the exhibits and schedules thereto, entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan and approving the Disclosure Statement [Dkt. [·]].

105.    "*Statutory Fees*" means any and all fees payable to the U.S. Trustee under section 1930 of title 28 of the United States Code and any interest thereupon.

106.    "*Transition Services Agreement*" means that certain Transition Services Agreement effective as of November 16, 2020 by and among the Debtors and REM California, LLC.

107.    "*Trust Oversight Committee*" means the committee formed on the Effective Date to be selected by the Debtors, with the consent of the ESOP Trustee, and identified in the Plan Supplement for the purposes set forth in the Liquidating Trust Agreement.

108.    "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Liquidating Trustee of an intent to accept a particular distribution; (c) responded to the Liquidating Trustee's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

109.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

110.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

111.    "*U.S. Trustee*" means the Office of the United States Trustee for the Central District of California.

112.    "*Voting Deadline*" means [·], 2021 at 5:00 p.m. (prevailing Pacific Time).

113.    "*Wind-Down*" means the wind-down and dissolution of the Debtors and their Estates following the Effective Date as set forth in Section 5.12 hereof.

114.    "*Wind-Down Reserve*" means a segregated account established by the Liquidating Trustee on the Effective Date and funded with Cash in an amount determined by the Liquidating Trustee, in the exercise of its reasonable discretion, to satisfy the expenses of the Liquidating Trustee (including, for the avoidance of doubt, the compensation of the Liquidating Trustee) as set forth in the Plan.

## 1.2    Rules of Interpretation

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any immaterial effectuating provisions may be interpreted by the Debtors or the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; and (14) except as otherwise specifically provided in the

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

Plan to the contrary, any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise requires.

**1.3    Computation of Time**

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

**1.4    Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Arizona, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided that corporate governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation of the relevant Debtor, as applicable.

**1.5    Reference to Monetary Figures**

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

**1.6    Controlling Document**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

**1.7    Nonconsolidated Plan**

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, Priority Tax Claims, and Statutory Fee Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III.

**2.1    Administrative Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Claims and Statutory Fee Claims will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either: (a) on the Effective Date, or as soon as practicable thereafter; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, then in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims without any further action by the Holders of such Allowed Administrative Claims.

**2.2    Professional Claims**

**(a)    Final Fee Applications and Payment of Professional Claims**

All final requests for payment of Professional Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than 45 days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy

Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Liquidating Trustee shall pay the full unpaid amount of such Allowed Administrative Claim in Cash.

  **(b) Professional Fee Escrow Account**

  On the Effective Date, the Liquidating Trustee shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates. The amount of Professional Claims owing to the Professionals shall be paid in Cash to such Professionals by the Liquidating Trustee as soon as reasonably practicable after such Professional Claims are Allowed. When all Allowed amounts owing to the Professionals have been paid in full, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Liquidating Trustee without any further action or order of the Bankruptcy Court. If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Claims, the remaining unpaid Allowed Professional Fee Claims will be paid by the Liquidating Trustee.

  **(c) Professional Fee Reserve Amount**

  Professionals shall reasonably estimate their unpaid Professional Claims, and shall deliver such estimate to the Debtors no later than five days before the Effective Date; provided that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or the Liquidating Trustee may estimate the unpaid and unbilled fees and expenses of such Professional.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

18

**2.3**    **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall receive, on the Effective Date or as soon as practicable thereafter, payment in Cash in an amount equal to the amount of such Allowed Priority Tax Claim.

**2.4**    **Statutory Fees**

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Liquidating Trustee, on behalf of the Debtors, shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**2.5**    **ESOP**

Any Holder of a beneficial interest in the ESOP wishing to vote on the Plan must hold a Claim against the Debtors in Class 3 that is separate and apart from a Direct ESOP Claim. Any Direct ESOP Claims held by the Holders of beneficial interests in the ESOP on account of their beneficial interest in the ESOP will be asserted by the ESOP Trustee, in his discretion, on behalf of all Holders of beneficial interests in the ESOP. Notwithstanding anything to the contrary in this Plan, the ESOP Trustee shall retain responsibility, standing, and authority to commence, prosecute and settle lawsuits or actions on behalf of the Holders of beneficial interests in the ESOP.

## ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

**3.1**    **Classification of Claims and Interests**

Except for the Claims addressed in ARTICLE II, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. Because this Plan constitutes a separate Plan proposed by each Debtor, each of the general Classes below shall be deemed a separate Class with respect to Claims against or Interests in each applicable Debtor for all purposes. A Claim or Interest is classified in a particular Class only to the extent that the

Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Intercompany Claims | Impaired | Deemed to Reject |
| 5 | Intercompany Interests | Unimpaired | Presumed to Accept |
| 6 | Equity Interests | Impaired | Entitled to Vote |

**3.2    Treatment of Classes of Claims and Interests**

Except to the extent that a Holder of an Allowed Claim or Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Effective Date, or as soon as practicable thereafter.

(a)    **Class 1 — Other Secured Claims**

(1)    *Classification*: Class 1 consists of all Other Secured Claims against the Debtors.

(2)    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in settlement, and release of each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall be paid in full in Cash.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

20

Allowed Other Secured Claims shall be paid as soon as reasonably practicable after the later of the Effective Date and the date on which such Other Secured Claim becomes an Allowed Other Secured Claim.

(3)     *Voting*: Class 1 is Unimpaired. Each Holder of an Allowed Class 1 Claim is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Each Holder of an Allowed Class 1 Claim is not entitled to vote to accept or reject the Plan.

**(b)     Class 2 — Other Priority Claims**

(1)     *Classification*: Class 2 consists of all Other Priority Claims against the Debtors.

(2)     *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in settlement, and release of each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall be paid in full in Cash. Allowed Other Priority Claims shall be paid as soon as reasonably practicable after the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim.

(3)     *Voting*: Class 2 is Unimpaired. Each Holder of an Allowed Class 2 Claim is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Each Holder of an Allowed Class 2 Claim is not entitled to vote to accept or reject the Plan.

**(c)     Class 3 — General Unsecured Claims**

(1)     *Classification*: Class 3 consists of all General Unsecured Claims against the Debtors.

(2)     *Treatment*: Each Holder of an Allowed General Unsecured Claim shall receive payment in Cash in an amount equal to the amount of such Allowed General Unsecured Claim.  The Allowed amount of any Class 3 General Unsecured Claim shall include all interest accrued from the Petition Date through the date of distribution at the Federal Judgment Rate; provided, however, that in the event that the Court determines that another interest rate should apply the Debtors will modify the Plan accordingly. The Liquidating Trustee will pay undisputed Allowed General Unsecured Claims within 60 days of the Effective Date.

(3)     *Voting*: Class 3 is Impaired. Each Holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

**(d)     Class 4 — Intercompany Claims**

(1)     *Classification*: Class 4 consists of all Intercompany Claims against the Debtors.

(2)     *Treatment*: Holders of Allowed Intercompany Claims will receive no distribution under the Plan.

(3)     *Voting*: Class 4 is Impaired. Each Holder of an Allowed Class 4 Claim is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Each Holder of an Allowed Class 4 Claim is not entitled to vote to accept or reject the Plan.

**(e)     Class 5 — Intercompany Interests**

(1)     *Classification*: Class 5 consists of CPES AZ's Interests in Novelles and CPES CA.

(2)     *Treatment*: Each Allowed Intercompany Interest shall, at the Debtors' election: (a) be Reinstated for administrative convenience; or (b) be canceled and released without any distribution on account to of such Interests. Upon the payment in full of Allowed Class 3 General Unsecured Claims, all Intercompany Interests shall be distributed to CPES AZ, their 100% owner, for distribution to creditors of CPES AZ including the ESOP.

(3)     *Voting*: Class 5 is Unimpaired, and each Holder of an Allowed Class 5 Intercompany Interest is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

**(f)     Class 6 — Equity Interests**

(1)     *Classification*: Class 6 consists of Equity Interests in CPES AZ held by the ESOP.

(2)     *Treatment*: Each Equity Interest shall be canceled on the Effective Date of the Plan. Allowed Class 6 Equity Interests will be paid a Pro Rata dividend, if any, and only to the extent Allowed Class 3 General Unsecured Claims are paid in full, from the remaining net proceeds of the Liquidating Trust Assets. Notwithstanding anything to the contrary in this Plan, the ESOP

Trustee shall retain responsibility, standing, and authority to commence, prosecute and settle lawsuits or actions on behalf of the holders of beneficial interests to the Equity Interest in the ESOP.

(3)     *Voting*: Class 6 is Impaired. The ESOP Trustee, on behalf of the ESOP Trust, the sole Holder of Class 6 Equity Interests, is entitled to vote to accept or reject the Plan.

**3.3     Special Provision Governing Unimpaired Claims and Interests**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Liquidating Trustee's rights regarding any Unimpaired Claim or Interest, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim or Interest.

**3.4     Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**3.5     Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

**3.6     Nonconsensual Confirmation**

If any Class of Claims or Interests entitled to vote does not vote to accept the Plan, the Debtors reserve the right to amend the Plan, to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both. With respect to any Impaired Classes that are deemed to reject the Plan, the Debtors intend to request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by those Classes.

# ARTICLE IV

## PROVISIONS REGARDING THE LIQUIDATING TRUST

**4.1**    <u>**Overview**</u>

The Plan provides for the disposition of substantially all the assets of the Debtors and their Estates and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code. The Plan further provides for the winding down of the Debtors and their affairs by the Liquidating Trustee. The Plan also creates a mechanism for the Liquidating Trustee and the ESOP Trustee to pursue Claims and Causes of Action to enable recoveries to Creditors herein.

**4.2**    <u>**Settlement and Adjustment of Claims and Interests of the Debtors and their Estates**</u>

Pursuant to section 1123(b) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action belonging to the Debtors and their Estates that are released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan; and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123(b) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

**4.3**    <u>**Sources of Consideration for Distributions under the Plan**</u>

The Debtors will fund distributions under the Plan with Cash on hand on the Effective Date and the revenues and proceeds of all assets of the Debtors, including the Sale Transaction proceeds and all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date.

**4.4**    <u>**Vesting and Transfer of Assets to the Liquidating Trust**</u>

Under section 1141(b) of the Bankruptcy Code, on the Effective Date, the assets of the Debtors, including their books and records but, for the avoidance of doubt, excluding Direct ESOP

Claims, shall vest automatically in the Liquidating Trust for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances. For the avoidance of doubt, the transfer of the Debtors' assets and the proceeds of any Causes of Action to the Liquidating Trust shall not result in the incurrence of fees payable to the U.S. Trustee.

The Liquidating Trustee may abandon or otherwise not accept any assets that the Liquidating Trustee believes, in good faith, to have no value to, or will be unduly burdensome to, the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement. Any assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust. As of the Effective Date, all Liquidating Trust Assets vest in the Liquidating Trust and all assets dealt with in the Plan shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

The books and records shall vest in the Liquidating Trust as of the Effective Date in accordance with all HIPAA requirements and regulations. The Liquidating Trustee is authorized to treat and/or abandon the books and records consistent with the provisions of this Plan and the Liquidating Trust Agreement.

To the extent not paid in full in Cash on the Effective Date, reserves for payment of Disputed Claims and Professional Fee Claims shall be set aside and held by Liquidating Trustee until such Claims are approved, Allowed and authorized to be paid, by the Bankruptcy Court.

**4.5    Appointment of the Liquidating Trustee**

Prior to the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement. The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust.

The Liquidating Trustee will be deemed appointed as of the Effective Date. The Liquidating Trustee will pay or otherwise make distributions on account of all Allowed Claims against the Debtors in accordance with the terms of the Plan. The Liquidating Trustee shall be appointed as the Estates' representative by the Bankruptcy Court under section 1123(b)(3)(B) of

the Bankruptcy Code. The Liquidating Trustee shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under the Plan and as otherwise provided in the Confirmation Order.

The Liquidating Trustee shall be appointed for the sole purpose of effectuating this Plan and performing under the terms hereof and the Liquidating Trust Agreement, including liquidating and distributing the Debtors' assets, including, without limitation, the collection of the Debtors' accounts receivable and Causes of Action (excluding Direct ESOP Claims), and with no objective to engage in the conduct of a trade or business. For the avoidance of doubt, collection of the Debtors' accounts receivable shall not constitute engaging in the conduct of a trade or business.

**4.6    <u>Rights and Powers of the Liquidating Trustee</u>**

The powers of the Liquidating Trustee shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Proceeds and wind down the business and affairs of the Debtors, including: (a) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Estates; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Proceeds or otherwise; (c) making distributions as contemplated under the Plan; (d) establishing and maintaining bank accounts on behalf of the Estates; (e) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (f) paying all reasonable fees, expenses, debts, charges, and liabilities of the Debtors' Estates; (g) administering and paying taxes of the Debtors' Estates, including filing tax returns; (h) representing the interests of the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (i) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Liquidating Trustee may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Liquidating Trustee. Upon its appointment, the

successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Liquidating Trustee relating to the Debtors' Estates shall be terminated.

**(a)      Retention of Professionals**

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of its duties. The reasonable fees and expenses of such professionals shall be paid from the Wind-Down Reserve upon the monthly submission of statements to the Liquidating Trustee. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business from the Wind-Down Reserve and shall not be subject to the approval of the Bankruptcy Court.

**(b)      Compensation of the Liquidating Trustee**

The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Wind-Down Reserve. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Liquidating Trustee on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Liquidating Trustee in connection with such Liquidating Trustee's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

**(c)      Liquidating Trustee Expenses**

All costs, expenses, and obligations incurred by the Liquidating Trustee in administering this Plan or in any manner connected, incidental, or related thereto, in effecting distributions from the Liquidating Trust (including the reimbursement of reasonable expenses) shall be a charge against the assets of the Estates remaining from time to time in the hands of the Liquidating Trustee. Such costs, expenses, and obligations shall be paid from the Wind-Down Reserve.

The Debtors and the Liquidating Trustee, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the

Bankruptcy Court. However, in the event that the Liquidating Trustee is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Reserve.

**(d)    Exculpation, Indemnification, Insurance and Liability Limitation**

The Liquidating Trustee and all professionals retained by the Liquidating Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Debtors' Estates. The Liquidating Trustee may obtain, at the expense of the Estates and with funds from the Wind-Down Reserve, commercially reasonable liability, errors and omissions, directors and officers, or other appropriate insurance with respect to the indemnification obligations of the Estates. The Liquidating Trustee may rely upon written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the Liquidating Trustee in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

**ARTICLE V**

**ADDITIONAL MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1    Plan Transactions**

Before, on, and after the Effective Date, the Debtors or the Liquidating Trustee , as applicable, shall take all actions as may be necessary or appropriate to effectuate the terms of this Plan, including: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or

dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Plan; and (e) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

**5.2**     **Preservation of Causes of Action**

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action (excluding Direct ESOP Claims), whether arising before or after the Petition Date, shall vest in the Liquidating Trust and be enforceable by the Liquidating Trustee pursuant to the terms of the Plan. Except for any Cause of Action against an Entity that is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Liquidating Trustee's rights to commence, prosecute, or settle such Causes of Action (excluding Direct ESOP Claims) shall be preserved notwithstanding the occurrence of the Effective Date.

The Liquidating Trustee may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Liquidating Trustee deems appropriate, including on a contingency fee basis. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Liquidating Trustee will not pursue any and all available Causes of Action against them. The Liquidating Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Liquidating Trustee expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes

of Action upon, after, or as a consequence of the Confirmation or Consummation. The Liquidating Trustee reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

For the avoidance of doubt, all references to Causes of Action in this section exclude Direct ESOP Claims which are held by the ESOP Trustee.

**5.3    Preservation of Right to Conduct Investigations**

The preservation for the Liquidating Trust of any and all rights to conduct investigations under Bankruptcy Rule 2004 is necessary and relevant to the Liquidating Trust and with respect to the prosecution of Litigation Claims and the administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations under Bankruptcy Rule 2004 held by the Debtors prior to the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

**5.4    Prosecution and Resolution of Litigation Claims**

From and after the Effective Date, the Liquidating Trust shall have the sole responsibility, standing (including derivative standing), and authority to prosecute and settle all Litigation Claims under the Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estates, subject to the provisions of the Plan Documents and the Sale Documents, to pursue, settle, or abandon such Litigation Claims as the sole representatives of the Estates under section 1123(b)(3) of the Bankruptcy Code. Any and all Litigation Claims that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan. No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplements to any Litigation Claim against it as any indication that the Debtors or Liquidating Trustee will not investigate or pursue any and

all available Litigation Claims against such Entity. Such Litigation Claims may include, but are not limited to, claims for breach of fiduciary duties by certain officers and directors, claims grounded in tort, claims for negligence, claims based upon breach of contract, and claims for professional malpractice, to the fullest extent permitted by law. The Liquidating Trustee expressly reserves all Litigation Claims, except for Litigation Claims against any Entity that are expressly released or waived under the Plan or have otherwise been released under any agreement or Final Order, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Litigation Claims upon, after, or as a consequence of Confirmation or substantial consummation of the Plan.

**5.5**     **Privileges as to Certain Causes of Action**

Effective as of the Effective Date, all Privileges of the Debtors relating to the Liquidating Trust Assets shall be deemed transferred, assigned, and delivered to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust. The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and is entitled to assert such Privileges. No such Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Debtors' Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement. Nothing contained herein or in the Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach of any Privileges of the Debtors.

**5.6**     **Corporate Action**

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects (whether to occur before, on, or after the Effective Date). All matters provided for in the

Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors and any corporate action required by the Debtors in connection with the Plan or corporate structure of the Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security Holders, directors or officers of the Debtors. Before the Effective Date, the appropriate officers of the Debtors, and on or after the Effective Date, the Liquidating Trustee on behalf of the Debtors' Estates, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan). The authorizations and approvals contemplated by this Section 5.6 shall be effective notwithstanding any requirements under non-bankruptcy law.

**5.7    Termination of ESOP.**

As the Plan provides for liquidation of substantially all of the Debtors' assets, and CPES AZ has ceased all business operations and contributions to the ESOP, CPES AZ shall terminate the CPES Employee Stock Ownership Plan effective as of the Confirmation Date. The CPES Employee Stock Ownership Trust will be unaffected.

**5.8    Effectuating Documents; Further Transactions**

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Liquidating Trustee is, authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

As soon as practicable after the Effective Date, the Liquidating Trustee shall: (1) cause the Debtors to comply with, and abide by, the terms of the Purchase Agreements and any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

32

formation (as applicable); and (3) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Liquidating Trustee without need for any action or approval by the shareholders or board of directors of any Debtor. From and after the Effective Date, the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. Notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Claims.

**5.9**     **Insurance Policies**

Nothing in the Plan, the Disclosure Statement, the Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies, including any replacement or tail policies or coverages. All of the Debtors' Estates' benefits, rights, interests and proceeds under any Insurance Policy to which the Debtors and/or the Debtors' Estates may be insureds or beneficiaries shall vest with the Liquidating Trust for the benefit of the Beneficiaries of the Liquidating Trust and all of the beneficiaries of such policies.

**5.10**    **Filing of Monthly and Quarterly Reports and Payment of Statutory Fees**

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly Liquidating Trust reports shall be the responsibility of the Liquidating Trustee. All Statutory Fees shall be payable as set forth in Section 2.4 hereof and such obligation shall continue until such time as the Chapter 11 Cases are closed, dismissed, or

converted. All monthly operating reports covering pre-Effective Date periods shall be prepared and filed by the Debtors.

**5.11**    **Exemption from Certain Taxes and Fees**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under this Plan, including any issuance, transfer or exchange of any security, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**5.12**    **Tax Returns**

After the Effective Date, the Liquidating Trustee, or an accounting firm that the Liquidating Trustee designates and provides oversight, shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, as applicable, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of any Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**5.13**    **Wind-Down**

On and after the Effective Date and except as provided in the Purchase Agreements, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

Unless otherwise provided in this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date. The Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company

Case 9:20-bk-10554-DS   Doc 634-1   Filed 02/02/21   Entered 02/02/21 16:50:05   Desc
Exhibit A - First Amended Plan of Liquidation   Page 40 of 65

documents, to effect the dissolution of such Debtor under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**5.14    Dissolution of the Debtors**

Upon a certification to be Filed with the Bankruptcy Court by the Liquidating Trustee of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Debtors shall be deemed to be dissolved without any further action by the Debtors, including the filing of any documents with the secretary of state for the state in which each Debtor is formed or any other jurisdiction. The Liquidating Trustee, however, shall have authority to take all necessary actions to dissolve the Debtors in and withdraw the Debtors from the applicable states.

**ARTICLE VI**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1    Assumption or Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the Sale Transactions; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan. Entry of the

& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

35

Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**6.2**    **Rejection Damages Claims and Objections to Rejections**

Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases. Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Confirmation Date or the effective date of rejection. Any such Proofs of Claim that are not timely filed shall be disallowed without the need for any further notice to or action, order, or approval of the Bankruptcy Court. Such Proofs of Claim shall be forever barred, estopped, and enjoined from assertion. Moreover, such Proofs of Claim shall not be enforceable against the Debtors' Estates, without the need for any objection by the Liquidating Trustee or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged notwithstanding anything in a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class 3 General Unsecured Claims against the applicable Debtor counterparty thereto.

**6.3**    **Indemnification Obligations**

All indemnification obligations in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the post-petition directors, officers, trustees, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed and remain in full force and effect after the Effective Date, and shall

not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

**6.4    Director and Officer Insurance**

To the extent that the D&O Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Debtors shall be deemed to have assumed all D&O Insurance Policies with respect to the Debtors' and each of its or their, as appropriate, Affiliates', directors, trustees, managers, officers, and employees serving on or before the Petition Date pursuant to section 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Insurance Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed.

**6.5    Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**6.6**    **Reservation of Rights**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidating Trustee, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**6.7**    **Non-occurrence of the Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VII**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**7.1**    **Distributions on Account of Claims and Interests Allowed as of the Effective Date**

**(a)**    **Delivery of Distributions in General**

Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the Debtors or the or Liquidating Trustee, as applicable, and the Holder of the applicable Claim or Interest, on the first Distribution Date, the Distribution Agent shall make initial distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date, subject to the Liquidating Trustee's right to object to Claims and Interests; *provided*, *however*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims and Allowed Secured Tax Claims shall be paid in accordance with Sections 2.3 and 3.2, respectively. The first Distribution Date for Claims Allowed on or before the Effective Date shall be as soon as reasonably practical after the Effective Date,

but no later than ten (10) Business Days following the Effective Date. To the extent any Allowed Priority Tax Claim or Allowed Secured Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors or Liquidating Trustee and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

**7.2** **Special Rules for Distributions to Holders of Disputed Claims and Interests**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order, *provided, however* that if a portion of a Claim is not Disputed, the Distribution Agent shall make a partial distribution based on such portion of such Claim that is not Disputed.

**7.3** **Delivery of Distributions**

**(a)** **Record Date for Distributions**

On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim or Interest, other than one based on a publicly traded Certificate, is transferred fewer than 20 days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

**(b)** **Distribution Process**

The Distribution Agent shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims or Interests governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement. Except as otherwise provided

in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Interests, including Claims and Interests that become Allowed after the Distribution Record Date, shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent or a Servicer, as appropriate: (1) to the address of such Holder as set forth in the books and records of the applicable Debtor (or if the Debtors have been notified in writing, on or before the date that is 14 days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors books and records, no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address on or before the date that is 14 days before the Effective Date; or (3) to any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. The Debtors, the Liquidating Trustee, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

(c)    **Compliance Matters**

In connection with the Plan, to the extent applicable, the Liquidating Trustee and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trustees reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

(d)    **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date, without further notice, hearing, or order of the Bankruptcy Court.

**(e)** **Undeliverable, and Unclaimed Distributions**

(1) *Undeliverable Distributions*. If any distribution to a Holder of an Allowed Claim or Interest is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes deliverable or is cancelled pursuant to Section 7.3(e)(2), and shall not be supplemented with any interest, dividends, or other accruals of any kind.

(2) *Reversion*. Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Liquidating Trust. Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

**7.4** **Claims Paid or Payable by Third Parties**

**(a)** **Claims Paid by Third Parties**

A Claim shall be reduced in full, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Liquidating Trustee. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is

not a Debtor or Liquidating Trustee on account of such Claim, such Holder shall repay, return or deliver any distribution held by or transferred to the Holder to the Liquidating Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

**(b)    Claims Payable by Insurance Carriers**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be disallowed to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**(c)    Applicability of Insurance Policies**

Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**7.5    Setoffs**

Except as otherwise provided herein, the Debtors and Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records. Rights of a setoff against any Entity are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action of the Debtors, their Estates, or the Liquidating Trustee and regardless of whether such Entity is the Holder of an Allowed Claim. In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtors or the Liquidating Trustee, as applicable, unless such Holder has filed a motion

with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

**7.6      Allocation Between Principal and Accrued Interest**

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Petition Date.

**7.7      De-Minimis Distribution and Donation**

There shall be no Distribution on account of Allowed General Unsecured Claims to the extent such Distribution will result in a payment of less than $50.00 to the Holder of such Claim, and such amount otherwise payable upon such Claim shall revert back to the Liquidating Trust. Unless otherwise set forth in the Plan, the Liquidating Trustee may donate remaining Liquidating Trust Assets to a charitable institution if the Distribution of such assets is too costly, too burdensome, or impracticable.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

**8.1      Disputed Claims Process**

Except as otherwise provided herein, if a party files a proof of claim and the Debtors or Liquidating Trustee, as applicable, do not determine in their sole discretion, and without the need for notice to or action, order or approval of the Bankruptcy Court, that the Claim subject to such proof of claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VIII. Except as otherwise provided herein, all proofs of claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor's Estate, without the need for any objection by the Liquidating Trustee or any further notice to or action, order, or approval of the Bankruptcy Court.

**8.2**     __Prosecution of Objections to Claims and Interests__

Except insofar as a Claim or Interest is Allowed under the Plan, the Debtors, the Liquidating Trustee or any other party in interest shall be entitled to object to the Claim or Interest. Any objections to Claims and Interests shall be served and filed on or before the Claims Objection Bar Date. All Claims and Interests not objected to by the end of such period shall be deemed Allowed. From and after the Effective Date, the Liquidating Trustee shall have exclusive rights, powers, and interests of the Estates, subject to the Plan Documents, to pursue, settle or abandon such Claims objections as the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses each Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including any Causes of Action against the Holder of such Disputed Claim or Interest.

**8.3**     __Interest__

Unless otherwise specifically provided for in the Plan or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim. To the extent that the Debtors hold any real or personal property, including cash, or any Distribution Proceeds or funds remain in the Disputed Claim Reserve or Wind-Down Reserve after the payment of all Allowed Claims in Class 3 in accordance with the terms of the Plan, the Liquidating Trustee shall file a motion or any other Creditor may file a motion with the Bankruptcy Court on notice to the ESOP Trustee and the U.S. Trustee seeking payment of postpetition interest at an interest rate to be decided by the Bankruptcy Court in accordance with applicable law and equity.

**8.4    Disallowance of Claims and Interests**

All Claims and Interests of any Entity from which property is sought by the Debtors under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE IX

## EFFECT OF CONFIRMATION OF THE PLAN

**9.1    Term of Injunctions or Stays**

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**9.2    Releases by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by each of the Debtors and the Estates from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, their Estates, or the Liquidating Trust would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:**

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

(a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Plan Documents;

(b) any Plan Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Person or Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan;

(c) the Chapter 11 Cases, the Disclosure Statement, the Plan, the Purchase Agreements, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement; or

(d) the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any Person or Entity under the Plan, any Plan Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Cause of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (iii) any of the Litigation Claims, but in all respects the Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

1    For the avoidance of doubt, the releases set forth in this Section 9.2 shall not prohibit

2   the Liquidating Trustee from asserting any and all defenses and counterclaims in respect of

3   any Disputed Claim asserted by any Released Parties.

4    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval

5   of the release set forth in this Section 9.2, which includes by reference each of the related

6   provisions and definitions contained herein, and further, shall constitute the Bankruptcy

7   Court's finding that such release is: (a) in exchange for the good and valuable consideration

8   provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of

9   Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice

10  and opportunity for hearing; and (e) a bar to any of the Debtors asserting any Claim or

11  Cause of Action released by this Section 9.2.

12  **9.3    Exculpation**

13   Except as otherwise specifically provided in the Plan, no Exculpated Party shall have

14  or incur, and each Exculpated Party is hereby released and exculpated from any Cause of

15  Action for any claim related to any act or omission in connection with, relating to, or arising

16  out of, the Chapter 11 Cases, the Disclosure Statement, the Plan, the Sale Transactions, the

17  Purchase Agreements, or any Plan Document, contract, instrument, release or other

18  agreement or document (including providing any legal opinion requested by any Person or

19  Entity regarding any transaction, contract, instrument, document, or other agreement

20  contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the

21  Confirmation Order in lieu of such legal opinion) created or entered into in connection with

22  the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of

23  Confirmation, the pursuit of Consummation, the administration and implementation of the

24  Plan, including the distribution of property under the Plan or any other related agreement,

25  except for claims related to any act or omission that is determined in a final order to have

26  constituted actual fraud, willful misconduct, or gross negligence, but in all respects such

27  Persons and Entities shall be entitled to reasonably rely upon the advice of counsel with

28  respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have,

**and upon closing of the Chapter 11 Cases or the Effective Date shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**9.4**    **Injunction**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan does not operate to discharge the Debtors; provided, however, that, upon confirmation of the Plan, the occurrence of the Effective Date, and the distributions provided for under the Plan, the Holders of Claims and Equity Interests may not seek payment or recourse against or otherwise be entitled to any distribution from the Estates or Liquidating Trust except as expressly provided in the Plan. Further, the following terms apply except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan:

(a)    Except as otherwise provided in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Estates, the Committee, the Debtor Representative, the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied under the Plan or the Confirmation Order.

(b)    Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Estates, the Committee, the Debtor Representative, the Liquidating Trust, the Liquidating Trustee, or their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other

activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order.

(c)    The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtors or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions, or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order. On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

(d)    **Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released under the Plan or Confirmation Order, from (a) commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties; (c) creating, perfecting or enforcing any encumbrance of any kind against any Debtor, or the property or estate of any Debtor, the Liquidating Trust, or the Liquidating Trustee; and (d) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.**

(e)     Upon the entry of the Confirmation Order, all Holders of Claims and Equity Interests and other parties in interest, along with their respective Related Persons, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(f)     **As of the Effective Date, to the extent not enjoined by the other provisions of this Article IX, all Persons and Entities who have held, hold, or may hold Claims against the Debtors, are permanently enjoined, on and after the Confirmation Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Debtors' respective property, the Debtors' Estates, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee with respect to any such Claim or taking any act to recover such Claim outside of the claims allowance procedure discussed in this Plan and the Bankruptcy Code and Bankruptcy Rules; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Debtors' respective property, the Debtors' Estates, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee on account of any such Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Debtors' respective property, the Debtors' estates, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidation Trustee on account of any such Claim; and (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Debtors' estates, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee, or against the property or interests in property of the Debtors, the Debtors' estates, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee on account of any such Claim, unless such Person or Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff,**

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

**and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve, any right of setoff pursuant to applicable law or otherwise.**

(g)    All injunctive provisions of this Article IX shall extend for the benefit of the Liquidating Trustee and any successors of the Debtors, and to any property and interests in property subject to this Plan.

**9.5    Release of Liens and Cancellation of Documents**

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

In addition, on the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates, and other documents evidencing Claims against the Debtors shall be deemed inoperative and unenforceable solely as against the Debtors and their Estates.

Nothing contained in this Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to any prior order of the Bankruptcy Court.

**9.6    Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of a Person or Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent or (b) the relevant Holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

**ARTICLE X**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**10.1**    **Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 10.2:

(a)    **The Plan Documents shall be in form and substance reasonably acceptable to the Debtors and the ESOP Trustee.**

(b)    **The Confirmation Order shall have been entered, shall be in form and substance reasonably acceptable to the Debtors and the ESOP Trustee, and shall have become a Final Order in full force and effect with no stay thereof then in effect.**

(c)    **The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Plan Documents, including, without limitation, the transactions contemplated by the Liquidating Trust Agreement.**

(d)    **The Debtors shall have paid or reserved for all Statutory Fees due to the U.S. Trustee.**

(e)    **The appointment of the Liquidating Trustee and the terms of his service and compensation shall have been confirmed by the Bankruptcy Court in the Confirmation Order, and the Liquidating Trustee shall have accepted in writing such terms.**

(f)    **All agreements and instruments that are exhibits to the Plan, including the Liquidating Trust Agreement, shall be in a form reasonably acceptable to the Debtors and the ESOP Trustee and have been duly executed and delivered.**

(g)    **The Debtors shall have paid or reserved for all expenses and payments due to be made on the Effective Date of the Plan.**

(h)    **All other actions, authorizations, consents and regulatory approvals required (if any) and necessary to implement the provisions of the Plan shall have been obtained, effected or executed in a manner acceptable to the Debtors and the ESOP Trustee or, if waivable, waived by the Person or Persons entitled to the benefit thereof.**

**10.2    Waiver of Conditions Precedent**

The Debtors, with the written consent of the ESOP Trustee, may waive any of the conditions to the Effective Date set forth in Section 10.1 any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan.

**10.3    Establishing the Effective Date**

The calendar date to serve as the Effective Date shall be a Business Day of, on, or promptly following the satisfaction or waiver of all conditions the Effective Date, which date will be selected by the Debtors in consultation with the ESOP Trustee.

**10.4    Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

**ARTICLE XI**

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**11.1    Modification of Plan**

Effective as of the date hereof: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan and any exhibits thereto, including, without limitation, the Plan Supplement, before the entry of the Confirmation Order, subject to the limitations set forth herein; and (b) after the entry of the Confirmation Order, the Debtors or the Liquidating Trustee, with the consent of the ESOP Trustee,, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, subject to the limitations set forth herein and, if effective, the Purchase Agreement.

**11.2**    <u>**Revocation or Withdrawal of Plan**</u>

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

**ARTICLE XII**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction, to the maximum extent permitted by applicable law, over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including specifically jurisdiction to:

**(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;**

**(b)    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;**

**(c)    resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor**

may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Liquidating Trustee's amendment, modification, or supplement, after the Effective Date, pursuant to **ARTICLE VI**, of the list of Executory Contracts and Unexpired Leases to be assumed; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(e)     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)     enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan or the Confirmation Order, including contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

(g)     enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(h)     grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

(i)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(j)     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of

additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Section 7.4(a); (b) with respect to the releases, injunctions, and other provisions contained in **ARTICLE IX,** including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan or the Confirmation Order, or any Entity's obligations incurred in connection with the Plan or the Confirmation Order, including those arising under agreements, documents, or instruments executed in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

(k)   enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(l)   consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(m)   hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)   enter an order or Final Decree concluding or closing the Chapter 11 Cases;

(o)   enforce all orders previously entered by the Bankruptcy Court; and

(p)   hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.1   Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Liquidating Trustee, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements

or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**13.2    Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**13.3    Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, trustee, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

**13.4    Service of Documents**

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or the Liquidating Trustee shall be served on the following parties:

**If to the Debtors (prior to the Effective Date):**

CPESAZ, Inc.
4805 E. Speedway
Tucson, Arizona 85712
Attn: Mark G. Monson
President & CEO
mmonson@cpes.com

- with a copy to –

Faegre Drinker Biddle & Reath, LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Attn: Jeremy Pelphrey
jeremy.pelphrey@faegredrinker.com

**If to the Liquidating Trustee (after the Effective Date):**

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

[To be provided following election of Liquidating Trustee and counsel thereto]

After the Effective Date, the Liquidating Trustee shall have the authority to send a notice to parties in interest providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**13.5    Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**13.6    Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from https://www.bmcgroup.com/CPES or the Bankruptcy Court's website at www.cacb.uscourts.gov. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

**13.7    Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired,

or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

*[Signature page follows.]*

Dated: February 1, 2021

**CPESAZ Liquidating, Inc.**
**NDS Liquidating, Inc.**
**CPESCA Liquidating, Inc.**

By: _____

Name:    Mark G. Monson
Title:    President and Chief Executive Officer

*Signature Page – Debtors' First Amended Joint Chapter 11 Plan*