SCOTT MCNUTT (CSB 104696)
324 Warren Road
San Mateo, California 94402
Telephone: 415-760-5601
smcnutt@ML-SF.com

DAVID R. JOHANSON (CSB 164141)
DOUGLAS A. RUBEL (NC 29824)
HAWKINS PARNELL & YOUNG, LLP
1776 Second Street
Napa, CA 94559
Telephone: (707) 299-2470
Facsimile: (707) 581-1704
djohanson@hpylaw.com
drubel@hpylaw.com

Attorneys for Bob Bennetti, Linki Peddy, Linda Mariano,
Chip Foust, and in excess of 92 other CPES Employee
Stock Ownership Plan and Trust Participants

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
NORTHERN DIVISION

| | |
|---|---|
| In re | Lead Case No. 9:20-bk-10554-DS |
| CPESAZ Liquidating, Inc., fka Community Provider of Enrichment Services, Inc. | Jointly Administered With:<br>Case No. 9:20-bk-10553-DS<br>Case No. 9:20-bk-10994-DS |
| NDS Liquidating, Inc. fka Novelles Developmental Services, Inc., | Chapter 11 Cases |
| CPESCA Liquidating, Inc., fka CPES California, Inc., | **INDIVIDUAL CPES ESOP PARTICIPANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY FAEGRE DRINKER BIDDLE & REATH LLC AND REQUEST FOR ISSUANCE OF SHOW CAUSE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| Debtors | [Fed. R. Bankr. P. 2016, 9011, 9013 and 9024; LBR 2016, 9011-3, and 9013-1] |
| | Date:        November 9, 2021<br>Time:        11:30 a.m. (PST)<br>Location:    Courtroom 201 |

1
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

United States Bankruptcy Court
Central District of California
1415 State Street
Santa Barbara, CA 93101

[Relates to ECF 101; ECF 961]

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; DEBTORS AND DEBTORS' COUNSEL; COUNSEL FOR THE CPES ESOP TRUSTEE; AND ALL OTHER PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that Robert Bennetti, Linda Mariano, Linki Peddy, Charles Foust, Jr., and in excess of 92 other participants (the "Individual CPES ESOP Participants") in the Community Provider of Enrichment Services, Inc. Employee Stock Ownership Plan and Trust ("CPES ESOP"), through undersigned counsel, respectfully submits the attached motion (this "Motion") for (i) the issuance of an order requiring Faegre Drinker to show cause why it should not be disqualified from this proceeding and the related Appeal[1]; (ii) entry of an order disqualifying Faegre Drinker Biddle & Reath LLC ("Faegre Drinker") as counsel for the Debtors in this proceeding and all related proceedings, including as counsel for the Appellee in the related appeal styled, *In re: CPESAZ Liquidating, Inc., et al.; Robert Bennetti, et al. v. CPESAZ Liquidating, Inc., et al.*, BAP No. CC-21-1123, United States Bankruptcy Appellate Panel of the Ninth Circuit (the "Appeal"); and (iii) entry of any order that Faegre Drinker disgorge all attorneys' fees and costs that it previously received and be prevented from receiving any further fees and costs herein.

**PLEASE TAKE FURTHER NOTICE** that this Motion is brought pursuant to Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") Rules 9011, 9013, and 9026, and Rules 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("Local Rules"), and is made on the grounds that Faegre Drinker did not disclose its long-

---

[1] *In Re: CPESAZ Liquidating, Inc., fka Community Provider of Enrichment Services, Inc., et al*, United States Bankruptcy Appellate Panel of the Ninth Circuit, BAP Docket Number CC-21-1123, Bankruptcy Case No. (9:20-bk-10554-DS, Jointly Administered with 9:20-bk-10553-DS and 9:20-bk-19554-DS (the "Appeal")

2

CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

standing connection with Miguel Paredes ("Paredes") of Prudent Fiduciary Services, LLC ("Prudent Fiduciary"), which is a conflict of interest, and Faegre Drinker failed to notify this Court of such conflict of interest at the time of Debtors' Application for Employment of Faegre Drinker as Counsel for Debtors [ECF 101, dated May 7, 2020 ("Application of Debtors Pursuant to 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014(a) and 2016, and L.B.R. 2014-1 For Authority to Retain and Employ Faegre Drinker Biddle & Reath LLP as Attorneys for the Debtors Effective as of the Petition Date With Compensation to be Determined Pursuant to 11 U.S.C. § 330") and at any time thereafter.  Faegre Drinker violated the disinterestedness provisions of the applicable Bankruptcy Code and Bankruptcy Rules.

**PLEASE TAKE FURTHER NOTICE** that this Motion has been served upon counsel for the Debtors, Brian D. Fittipaldi of the United States Trustee, counsel for the CPES ESOP Trustee, and all other parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE** that this Motion has been filed with the Clerk of the United States Bankruptcy Court and may be viewed at the Clerk's office located at the 1415 State Street, Santa Barbara, California, 93101, and/or through the Court's Case Management/Electronic Case Filing System.  A copy of this Motion also may be obtained by contacting Scott McNutt, Esq., at smcnutt@ML-SF.com, or at the address and telephone number indicated in the upper left corner of the first page of this Notice.

**PLEASE TAKE FURTHER NOTICE** that to the extent any party objects to this Motion, such party must file and serve its objection no later than October 26, 2021.

**WHEREFORE**, for the reasons set forth in the Motion, the Individual ESOP Participants respectfully request that the Court enter an Order:

1.      Granting this Motion in its entirety;

2.      Disqualifying Faegre Drinker from acting as Debtors' counsel in this proceeding and in the Appeal;

3.      Denying Faegre Drinker's Second and Final Application for Attorneys' Fees and Expenses;

3
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

4.      Disgorging any and all attorneys' fees and costs previously paid and ordering such disgorgement payment to be made within fifteen (15) days of the date of the Order to the Liquidating Trustee for the sole purpose of distributing such monies to the CPES ESOP participants and beneficiaries; and

4.      Granting such other and further relief as this Court deems just and proper under the circumstances.

Dated: October 7, 2021

/s/ Scott McNutt
SCOTT McNUTT (CSB 104696)
324 Warren Road
San Mateo, California 94402
Telephone: 415-760-5601
E-Mail: smcnutt@ML-SF.com

and

HAWKINS PARNELL & YOUNG LLP

By:      /s/ David R. Johanson
David R. Johanson (SBN 164141)
Douglas A. Rubel (*Pro Hac Vice*)
1776 Second Street
Napa, CA 94559
Telephone: (707) 299-2470
djohanson@hpylaw.com

*Attorneys for Robert Bennetti, Linda Mariano, Linki Peddy, and Charles Foust, Jr., and in excess of 92 Other CPES Employee Stock Ownership Plan and Trust Participants*

4
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

# TABLE OF CONTENTS

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.      INTRODUCTION ..................................................................................................... 1

II.     PROCEDURAL BACKGROUND ............................................................................. 3

III.    FAEGRE DRINKER'S CONFLICT OF INTEREST AND BREACH OF THIS
        COURT'S DISINTERESTEDNESS REQUIREMENTS.......................................... 8

IV.     LEGAL ARGUMENT................................................................................................ 15

V.      CONCLUSION........................................................................................................... 21

CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

# TABLE OF AUTHORITIES

**Cases**

*Barnes-Wallace v. City of San Diego*, 704 F.3d 1067 (9th Cir. 2012) ................................ 18

*Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship*, 248 B.R. 668 (D. Mass. 2000) ................................ 19

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985) ................................ 20

*DeRonde v. Shirley (In re Shirley)*, 134 B.R. 940 (BAP 9th Cir. 1992) ................................ 16

*Dye v. Brown (In re AFI Holding, Inc.) (AFI Holding I)*, 355 B.R. 139 (9th Cir. BAP 2006) ......... 18

*Fernandez v. K-M Indus. Holding Co.*, 646 F. Supp. 2d 1150, 1155 (N.D. Cal. 2009) ..................... 4

*Howard v. Shay*, 100 F.3d 1484 (9th Cir. 1996) ................................ 2

*Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2018 U.S. Dist. LEXIS 118128 (C.D. Cal. July 9, 2018) ................................ 3, 11

*In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925 (2d Cir. 1979) ................................ 17

*In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228 (Bankr. E.D. Cal. 1988) ................................ 19

*In re Centennial Textiles*, 227 B.R. 606 (Bankr. S.D.N.Y. 1998) ................................ 20

*In re Coastal Equities, Inc.*, 39 B.R. 304 (Bankr. S.D. Cal. 1984) ................................ 17

*In re EWC, Inc.*, 138 B.R. 276 (Bankr. W.D. Okla. 1992) ................................ 17

*In re Granite Partners L.P.*, 219 B.R. 22 (Bankr. S.D.N.Y. 1998) ................................ 16

*In re Haldeman Pipe & Supply Co.*, 417 F.2d 1302 (9th Cir. 1969) ................................ 17

*In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 747 n.1 (Bankr. N.D. Tex. 1988) ................................ 19

*In re Kobra Props.*, 406 B.R. 396 (Bankr. E.D. Cal. 2009) ................................ 1, 17

*In re Lee*, 94 B.R. 172, 176 (Bankr. C.D. Cal. 1988) ................................ 20

*In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987) ................................ 18, 19

*In re Maui 14K, Ltd.*, 133 B.R. 657, 660 (Bankr. D. Hawaii 1991) ................................ 19

*In re Plaza Hotel Corp.*, 111 B.R. 882, 883 (Bankr. E.D. Cal. 1990), *aff'd*, 123 B.R. 466 (9th Cir. BAP 1990) ................................ 17

*In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 624-25 (Bankr. E.D. 2012) ............ passim

*In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 840 (Bankr. C.D. Cal. 1991) ................................ 2, 20

*Jewel Companies, Inc. v. Pay Less Drug Stores NW., Inc.*, 741 F.2d 1555 (9th Cir. 1984) ............... 11

*Johnson v. Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009) ................................ 4

*Kun v. Mansdorf (In re Woodcraft Studios, Inc.)*, 464 B.R. 1 (N.D. Cal. 2011) ................................ 17

*Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877 (9th Cir. 1995) ................................ 17, 18

*Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715 (Bankr. E.D. Cal. 1992) ................................ 17

*Raj Kamal Corp. v. Fukushima (In re Raj Kamal Corp.)*, BAP No. EC-12-1648-KiPaJu, 2013 Bankr. LEXIS 5305 (BAP 9th Cir. Dec. 17, 2013) ................................ 1, 16, 17, 18

*Rome v. Braunstein*, 19 F.3d 54 (1st Cir. 1994) ................................ 16

*Shat v. Kistler (In re Shat)*, BAP No. NV-09-1092-MoDK, 2009 Bankr. LEXIS 4547, 2009 WL 7809004 (BAP 9th Cir. Nov. 25, 2009) ................................ 18, 19

*Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679 (BAP 9th Cir. 2006) ................................ 19

**Statutes**

11 U.S.C. § 101(31)(B)(iii) ................................ 14

11 U.S.C. § 1107(a) ................................ 16

11 U.S.C. § 1109(b) ................................ 15

11 U.S.C. § 327(a) ................................ 16, 17

11 U.S.C. § 328(c) ................................ 16

28 U.S.C. § 1334 ................................ 3

28 U.S.C. § 157(b)(2)(A) ................................ 3

29 U.S.C. § 101(14) (A) and (C) ................................ 18

CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA")...................................................................................................................... 2

**Rules**

Fed. R. Bankr. P. 2014.................................................................................................... 18

Fed. R. Bankr. P. 2014(a) ......................................................................................... 16, 17

**Regulations**

29 CFR 2510.3-101 ......................................................................................................... 4

**Pleadings**

ECF 1 (Voluntary Petition).......................................................................................... 3, 9

ECF 101 (Debtors' Application for Employment of Faegre Drinker)............................... 4

ECF 101-1 (Slusher Declaration in Support of First Faegre Fee Application)........... 4, 5, 8

ECF 496 (First Faegre Drinker Fee Application) ............................................................ 5

ECF 542 (ESOP Participants' Objection to First Faegre Drinker Fee Application).......... 5

ECF 604 (Fee Reduction Stipulation Between U.S. Trustee and Faegre Drinker)............ 5

ECF 613 (ESOP Participants' Objection to Fee Reduction Stipulation) ......................... 6

ECF 620 (Order Granting First Faegre Drinker Fee Application).................................... 6

ECF 646 (Debtors' First Amended Plan of Liquidation) ................................................ 6

ECF 796 (ESOP Participants' Rule 2004 Motion) ......................................................... 6

ECF 802 (Debtors' First Amended Joint Chapter 11 Plan of Liquidation, as Modified)...... 3, 6

ECF 824 (ESOP Trustee's Motion to Quash Rule 2004 Subpoena) ............................... 6

ECF 836 (Order Confirming Amended Plan of Liquidation) .......................................... 6

ECF 898 (Order Denying ESOP Trustee's Motion to Quash Rule 2004 Subpoena).......... 6

ECF 923 (ESOP Trustee's Application for Allowance of Administrative Expense Claim) ............... 7

ECF 942 (ESOP Participants' Opposition to ESOP Trustee's Application for Allowance of Administrative Expense Claim) ................................................................................ 7

ECF 942, Exhibit A.......................................................................................................... 9

ECF 942, Exhibit D.......................................................................................................... 9

ECF 961 (Faegre Drinker Second Interim and Final Fee Application) ............................ 7

ECF 963 (ESOP Participants' Objection to the Faegre Drinker Second Interim and Final Fee Application) ............................................................................................................ 7

ECF 963-1 (Exhibit A, Participants' Objection to Faegre Drinker Second Interim and Final Fee Application) ................................................................................................... 9, 11

ECF 963-2, (Exhibit B, Participants' Objection to Faegre Drinker Second Interim and Final Fee Application) ................................................................................................... 9

ECF 963-3 (Exhibit C, Participants' Objection to Faegre Drinker Second Interim and Final Fee Application) ................................................................................................... 9

ECF 963-4 (Exhibit D, Participants' Objection to Faegre Drinker Second Interim and Final Fee Application) ................................................................................................... 9

ECF 966 (Order Granting Rule 2004 Motion)................................................................. 6

ECF 968 (ESOP Participants' Reply in Support of Opposition to ESOP Trustee's Application) ....... 8

ECF 968-1 (Exhibit H, Participants' Opposition to CPES ESOP Trustee's Application) ............. 9, 11

ECF 968-2 (Exhibit I, Participants' Opposition to CPES ESOP Trustee's Application).................... 9

ECF 968-3 (Exhibit J, Participants' Opposition to CPES ESOP Trustee's Application).................... 9

ECF 968-4 (Exhibit K, Participants' Reply in Support of Objection to CPES ESOP Trustee's Application) ............................................................................................................ 9

ECF 968-7 (Exhibit N, Participants' Reply in Support of Objection to CPES ESOP Trustee's Application) ............................................................................................................ 8

ECF 975 (Johanson Declaration in Support of Opposition to ESOP Trustee's Application)............... 8

ECF 981 (Notice of Hearing on Faegre Drinker Second Interim and Final Fee Application) ............ 8

Proof of Claim 275.......................................................................................................... 9

**Exhibits**

Exhibit "1" .................................................................................................................. 8, 9

CASE NO. 9:20-BK-10554-DS

Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

Exhibit "10" ................................................................................................................ 14

Exhibit "11" ................................................................................................................ 14

Exhibit "2" ..................................................................................................................... 9

Exhibit "3" ..................................................................................................................... 9

Exhibit "4" ..................................................................................................................... 9

Exhibit "5" ..................................................................................................................... 9

Exhibit "6" ..................................................................................................................... 9

Exhibit "7" ................................................................................................................... 10

Exhibit "8" ............................................................................................................. 11, 12

Exhibit "9" ................................................................................................................... 13

CASE NO. 9:20-BK-10554-DS

Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

**MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

1.      Bankruptcy is a realm in which "the paramount requirement [is] that the court act so as to assure public confidence in the integrity of the judicial process". *In re Kobra Props.*, 406 B.R. 396, 405 (Bankr. E.D. Cal. 2009).  *See also Raj Kamal Corp. v. Fukushima (In re Raj Kamal Corp.)*, BAP No. EC-12-1648-KiPaJu, 2013 Bankr. LEXIS 5305 (BAP 9th Cir. Dec. 17, 2013) ("*Raj Kamal*"); *In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 624-25 (Bankr. E.D. 2012) ("*Sundance*").

2.      The Bankruptcy Code imposes significant restrictions on professionals who are employed or compensated by a bankruptcy estate so as to prevent professionals from representing interests adverse to the Estate or have actual or potential conflicts of interest that call their actions into question.  The overarching goals of these restrictions are to ensure undivided loyalty to the Estate and to preserve public confidence in the fairness of the bankruptcy system. *Sundance*, 482 B.R. at 624-25.

3.      In this proceeding, however, this Court has been unable to properly fulfill its duties because of the inappropriate actions and lack of candor of the Debtors, Faegre Drinker Biddle & Reath LLP ("Faegre Drinker"), regarding its relationship with the CPES ESOP Trustee, Miguel Paredes and Prudent Fiduciary Services, LLC ("Prudent Fiduciary").  Faegre Drinker failed to disclose the prior and continuing attorney-client relationship between Faegre Drinker and Paredes and Prudent Fiduciary when Debtors filed their "Application of Debtors Pursuant to 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014(a) and 2016, and L.B.R. 2014-1 For Authority to Retain and Employ Faegre Drinker Biddle & Reath LLP as Attorneys for the Debtors Effective as of the Petition Date With Compensation to be Determined Pursuant to 11 U.S.C. § 330" [ECF 101, "Debtors' Application for Employment of Faegre Drinker"] and thereafter.  Faegre Drinker's failure to disclose borders on the remarkable.  Faegre Drinker has an ongoing financial relationship with Mr. Paredes and Prudent Fiduciary based upon attorney client relationships in matters other than this bankruptcy proceeding.  As to this bankruptcy proceeding, the CPES ESOP Trustee has the power to change

1

CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

Debtors' board of directors and Faegre Drinker's employment and Faegre Drinkers' clients (the Debtors) have control over what is paid to the CPES ESOP Trustee.  If these relationships do not create disclosable conflicts of interest, and also defeat "disinterestedness", then what state of facts could possibly require disclosure?  Faegre Drinker's entire plan of reorganization was built on the foundation of the vote of equity being delivered by a trustee (as opposed to beneficial owners).  Faegre Drinker has never disclosed its multiple relationships with this trustee, which are only now known through discovery.  Faegre Drinker has never disclosed it demanded a conflict waiver from this same trustee.  The entire bankruptcy process has been corrupted because the valid interests of equity have not been fairly represented.  This corruption will not be corrected until this Court takes action.

4.     The CPES ESOP Trustee is a creditor in this proceeding [Proof of Claim 275].  The CPES ESOP Trustee also has fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq*. ("ERISA"), that are the "highest known to law". *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (quotation omitted).  The CPES ESOP Trustee's independence and loyalties to the CPES ESOP participants and beneficiaries cannot, under any circumstances, be in question.

5.     The Debtors, formerly a debtor in possession, and Faegre Drinker, as counsel for the Debtors, are fiduciaries of the Estate. Faegre Drinker's attorneys herein are officers of this Court. They must have an active concern for the interests of the Estate, and its beneficiaries, the unsecured creditors.  Consequently, the attorney may not simply close his or her eyes to matters having a legal and practical consequence for the Estate.  *Sundance; In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 840 (Bankr. C.D. Cal. 1991).

6.     Here, however, the Debtors and Faegre Drinker took it upon themselves to determine which connections and compensation arrangements to disclose and which not to disclose.  In doing so, they interfered with this Court's exercise of its duty.  If they had made the appropriate and required disclosures at the beginning, this Court should have denied Faegre Drinker's employment herein.

7.      As such, Faegre Drinker should be disqualified from acting as Debtors' counsel herein, including in the appeal presently pending, this Court should deny its Second Interim and Final Application for Attorneys' Fees and Reimbursement of Expenses, and this Court should disgorge Faegre Drinker of all of the attorneys' fees and expenses that it previously has received and ordered to pay such monies directly to the CPES ESOP.  If the Liquidating Trustee – who Faegre Drinker selected – does not replace Faegre Drinker with other counsel for purposes of the Appeal herein, this Court should replace the Liquidating Trustee as well.

8.      This is a serious matter.  There is a taint of scandal, and more than a hint of self-dealing and bad faith.  It is of no moment to this Court's determination of this Motion that this Estate would seemingly pay all unsecured creditors and have monies left over to pay the Residual Estate, i.e., the CPES ESOP participants and beneficiaries (which Debtors and Faegre Drinker knew long before it filed this proceeding and which amount has been diminished by in excess of $5.0M as a result of this Bankruptcy).  Faegre Drinker's advice to the Debtors to retain the CPES ESOP Trustee is tainted by its conflict of interest given its prior and continuing relationship with the CPES ESOP Trustee.  Faegre Drinker recommended the CPES ESOP Trustee to the Debtors and was responsible for advising the Debtors to hire its own client to be the CPES ESOP Trustee so that none of Faegre Drinker's actions (and those of the Debtors' directors, officers, and other fiduciaries) would be questioned in this proceeding.  Faegre Drinker not only violated its duties of disclosure to this Estate, it may have knowingly and actively participated in breaches of ERISA.

## II.      PROCEDURAL BACKGROUND

9.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A).

10.      Faegre Drinker and Debtors filed this proceeding on April 24, 2020.  [ECF 1.]

11.      At all times relevant, the Debtors were 100% owned by the CPES ESOP.  The CPES ESOP and the participants and beneficiaries of the CPES ESOP, even though the CPES ESOP has been terminated under the Amended Plan of Liquidation [ECF 802, at ¶ 5.7, pp. 31:26-32:2], are, at

3
Case No. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

a minimum, the holders of the Residual Estate under the Amended Plan of Liquidation herein.  [ECF 802, at ¶ 3.2(f), pp. 22:7-16.]

12.    All of the assets of this Estate are assets of the CPES ESOP, and have been from the at least the Debtors' management's decision to file these Voluntary Petitions.  *See*, *e.g.*, *Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2018 U.S. Dist. LEXIS 118128 (C.D. Cal. July 9, 2018) (ESOP participants bear financial burden even though Plan terminated and corporate assets sold to another corporation); *Fernandez v. K-M Indus. Holding Co.*, 646 F. Supp. 2d 1150, 1155 (N.D. Cal. 2009) ("The rationale underlying [Johnson's] holding supports the conclusion that indemnification agreements are invalid any time an ESOP would bear the financial burden of indemnification, whether directly or indirectly"); *Johnson v. Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009) ("But given that TEOHC's plan of liquidation provides for payment of all remaining equity to ESOP participants as shareholders, this is not a case where, in accordance with 29 C.F.R. § 2509.75-4, the indemnification agreement 'merely permit[s] another party [other than the plan] to satisfy any liability incurred by the fiduciary.'  To the contrary, any proceeds taken from TEOHC's remaining funds to pay Defendants' defense costs will, dollar for dollar, reduce the funds available for distribution to ESOP participants. …").  Moreover, the Debtors ceased to be "operating companies" and, as such, under the U.S. Department of Labor's plan asset regulations, 29 CFR 2510.3-101, all of the Debtors' assets long ago became the assets of the CPES ESOP.

13.    On May 7, 2020, the Debtors (then CPES-AZ and Novelles) filed their "Application of Debtors Pursuant to 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014(a) and 2016, and L.B.R. 2014-1 For Authority to Retain and Employ Faegre Drinker Biddle & Reath LLP as Attorneys for the Debtors Effective as of the Petition Date With Compensation to be Determined Pursuant to 11 U.S.C. § 330" [ECF 101, "Debtors' Application for Employment of Faegre Drinker"].

14.    In support of the Debtors' Application for Employment of Faegre Drinker, Debtors tendered the "Declaration of Vincent P. Slusher in Support of Application of Debtors Pursuant to 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014(a) and 2016, and L.B.R. 2014-1 For Authority to Retain Faegre Drinker Biddle & Reath as Attorneys for the Debtors Effective as of the Petition Date with

4
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

Compensation to be Determined Pursuant to 11 U.S.C. § 330". [ECF 101-1, the "Slusher Declaration".]

15.    In the Slusher Declaration, Slusher testifies that "Neither I, Faegre, nor any partner of, counsel to, or associate of the Firm represents any entity other than the Debtors *in connection with the Chapter 11 Cases*. In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Faegre, nor any partner of, counsel to, or associate of the Firm represents any party in interest in the Chapter 11 Cases *in matters related to these Chapter 11 Cases*." [*Id.*, at 2:19-23 (emphasis supplied).] Slusher does not inform this Court of Faegre Drinker's connection to and deep and long-standing relationship with the CPES ESOP Trustee.

16.    In the Slusher Declaration, Slusher also testifies that "Faegre, which employs approximately 1,200 attorneys, has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations. Faegre, has represented, currently represents and may in the future, represent, entities who may be claimants or interest holders of the Debtors in matters unrelated to these Chapter 11 Cases. *While our search described below did not disclose any connections,* some of those entities are, or may consider themselves to be, creditors or parties in interest in these Chapter 11 Cases or otherwise have interests in these cases." [*Id.*, 2:25-3:5 (emphasis supplied).] Slusher and his colleague Jeremy Pelphrey were involved in the selection of the CPES ESOP Trustee.

17.    In the Slusher Declaration, Slusher concludes that "Based on the foregoing, insofar as I have been able to ascertain after diligent inquiry, I believe Faegre does not hold or represent an interest adverse to the Debtors' estates in the matters upon which Faegre is to be employed, and that Faegre is 'disinterested' as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code." [*Id.*, 4:17-21.]

18.    On November 24, 2020, Faegre Drinker filed its "First Interim Application of Faegre Drinker Biddle & Reath LLP for Approval of Fees and Reimbursement of Expenses and Declaration of Vincent P. Slusher in Support Thereof". [ECF 496, the "First Faegre Drinker Fee Application".] Faegre Drinker sought approval of professional fees in the amount of $1,376,120.00 and

5
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

reimbursement of expenses in the amount of $8,606.93 for services rendered and expenses incurred during the period of April 24, 2020 through September 30, 2020.  [*Id*.]

19.     On December 9, 2020, the Individual CPES ESOP Participants objected to and opposed the First Faegre Fee Application.  [ECF 542.]

20.     On January 19, 2021, the U.S. Trustee and Faegre Drinker stipulated to a reduction of merely $30,461.70 in the attorneys' fees sought by Faegre Drinker.  [ECF 604.]  The Individual CPES ESOP Participants objected to the U.S. Trustee's stipulation with Faegre Drinker as being a severely inadequate reduction in Faegre Drinker's attorneys' fees.  [ECF 613.]

21.     On January 28, 2021, this Court granted the First Faegre Drinker Fee Application, taking into account the stipulated reduction in attorneys' fees and holding back twenty percent (20%) of the amount of attorneys' fees sought by Faegre Drinker.  [ECF 620.]  This Court's order permitted that  payment to Faegre Drinker as follows:

> "5.     The court orders as follows:
>   a.   Total amount allowed: $1,076,526.64
>   (80% of requested fees after reduction per stipulation with UST at Dkt. 604)
>   b.   Application for Reimbursement of Interim Expenses is approved and authorized for payment:
>
>   Total amount allowed: $8,606.93"

[*Id*.]

22.     On April 5, 2021, the Individual CPES ESOP Participants filed their "Notice of Motion and Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Authorizing Individual CPES ESOP Participants to Issue Subpoena to the ESOP Trustee Requiring the Production of Documents".  [ECF 796, the "Rule 2004 Motion".]

23.     The CPES ESOP Trustee did not oppose the Rule 2004 Motion.

24.     On April 29, 2021, this Court granted the Rule 2004 Motion.  [ECF 821.]

25.     On April 30, 2021, the CPES ESOP Trustee moved to quash the issuance of the Rule 2004 *subpoena duces tecum*.  [ECF 824.]

6
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

26.     On May 10, 2021, over the objections of Individual CPES ESOP Participants, this Court entered an Order Confirming the Debtors' First Amended Joint Chapter 11 Plan of Liquidation, as Amended [ECF 836, ECF 646, and ECF 802, collectively, the "Amended Plan of Liquidation").]

27.     On June 16, 2021, this Court denied the CPES ESOP Trustee's Motion to Quash Rule 2004, *Subpoena Duces Tecum*.  [ECF 898.]

28.     On July 8, 2021, the CPES ESOP Trustee filed his "Application of Prudent fiduciary Services, LLC for Allowance of Administrative Expense Claim".  [ECF 923, the "CPES ESOP Trustee's Application".]

29.     On July 22, 2021, the Individual CPES ESOP Participants filed their "Notice of Opposition and Request for Hearing" in response to the CPES ESOP Trustee's Application.  [ECF 942, the "Opposition to the CPES ESOP Trustee's Application".]

30.     As part of their Opposition to the CPES ESOP Trustee's Application, the Individual CPES ESOP Participants tendered to this Court certain documents they had then-recently received as a result of the issuance of their Rule 2004 *subpoena duces tecum* to the CPES ESOP Trustee, namely, certain e-mails that indicated the CPES ESOP Trustee had executed a conflict of interest waiver in favor of Faegre Drinker's representation of the Debtors.  [*Id.*, at Exhibits A-B, D-G (discussed below).]

31.     On August 2, 2021, Faegre Drinker filed its "Second Interim and Final Application of Faegre Drinker Biddle & Reath LLP for Approval of Fees and Reimbursement of Expenses" and "Declaration of Vincent P. Slusher in Support Thereof", seeking $1,381,828.00 in attorneys' fees and $9,861.82  in expenses for the Second Interim period and the 20% holdback amount of $269,131.66 for the First Interim period.  [ECF 961, the "Faegre Drinker Second Interim and Final Fee Application".]  Faegre Drinker seeks approval of a total amount of fees and expenses of $2,730,486.30.  [*Id.*]

7
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

32.     On August 16, 2021, the Individual CPES ESOP Participants objected to and opposed the Faegre Drinker Second Interim and Final Fee Application.  [ECF 963, the Objection to the Faegre Drinker Second Interim and Final Fee Application".]

33.     As part of their Objection to the Faegre Drinker Second Interim and Final Fee Application, the Individual CPES ESOP Participants tendered to this Court essentially the same documents that they had tendered in response to the CPES ESOP Trustee's Application, *i.e.*, certain documents that indicated that the CPES ESOP Trustee had executed a conflict of interest waiver in favor of Faegre Drinker's representation of the Debtors. [*Id.*, at Exhibits A-E (discussed below).]

34.     On August 27, 2021, as part of their Reply in Support of their Opposition to the CPES ESOP Trustee's Application, the Individual CPES ESOP Participants tendered additional exhibits in support of their discovery that the CPES ESOP Trustee and Faegre Drinker had a conflict of interest. [ECF 968, Exhibits H-R (discussed below).]

35.     On September 2, 2021, the Individual CPES ESOP Participants tendered the Amended Declaration of David R. Johanson in Support of their Opposition to the CPES ESOP Trustee's Application, including Exhibits S and T (discussed below).  [ECF 975.]

36.     The hearing on Faegre Drinker's Second and Final Fee Application is presently scheduled for September 28, 2021.  [ECF 981.]

**III.    FAEGRE DRINKER'S CONFLICT OF INTEREST AND BREACH OF THIS COURT'S DISINTERESTEDNESS REQUIREMENTS**

37.     What is presently known – and is a sufficient basis on which to either grant this Motion or issue an order requiring Faegre Drinker to show cause why it should not be disqualified as counsel for the Debtors, including in the Appeal, and enter an order disgorging Faegre Drinker of the monies it already has received – is as follows.

38.     Faegre Drinker has represented the Debtors since at least October 2019.  [ECF 101-1, at 4:8-9.]

39.     Alberto J. Tarajano of Custos Fiduciary Services, LLC, was the former CPES ESOP Trustee.  He was hired on August 6, 2019.  Attached as Exhibit "1" to the accompanying Declaration

8
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

of Scott McNutt (the "McNutt Declaration") is a true and correct copy of Mr. Tarajano's Trustee

Services Agreement, dated August 6, 2019.  [*See also* ECF 968-7.]

40.     The Board of Directors of CPES-AZ hired Mr. Tarajano because, among other

reasons, the CPES-AZ Board of Directors was "evaluating a transaction or series of transactions

whereby National Mentor Holdings LLC or its affiliate (in either case, the 'Buyer') would either (a)

acquire the stock of the Company from the CPES Employee Stock Ownership Trust (the 'Trust'),

which implements and forms a part of the CPES Employee Stock Ownership Plan (the 'Plan,' and

together with the Trust, the 'ESOP'), or (b) acquire all of substantially all of the assets of the

Company and its Subsidiaries (in either case, the 'Contemplated Transactions')".  Exhibit 1, at p. 1,

First Recital.

41.     CPES-AZ did not pay Mr. Tarajano and, as a result of conversations with CPES-AZ

management, he resigned his position effective April 16, 2020.  Attached as Exhibit "2" to the

accompanying McNutt Declaration is a true and correct copy of Mr. Tarajano's resignation letter,

dated April 16, 2020.  [*See also* ECF 963-2; ECF 968-2.]

42.     Faegre Drinker recommended Miguel Paredes of Prudent Fiduciary to succeed Mr.

Tarajano as CPES ESOP Trustee.  Attached as Exhibit "3" to the accompanying McNutt Declaration

is a true and correct copy of the relevant excerpts of the deposition of Miguel Paredes in *Secretary of

Labor v. Heritage, et al.*, 1:18-cv-155-SOM-WRP (D. Haw.).  [*See also* ECF 963-3; ECF 968-3.]

43.     On April 14, 2020, Mr. Paredes made a proposal to CPES-AZ for the CPES ESOP

Trustee position.  Attached as Exhibit "4" to the accompanying McNutt Declaration is a true and

correct copy of Paredes' successor trustee proposal.  [*See also* ECF 963-4; ECF 968-4.]

44.     On April 14, 2020, CPES-AZ hired Mr. Parades as CPES ESOP Trustee, effective

April 16, 2020.  Attached as Exhibit "5" to the accompanying McNutt Declaration is a true and

correct copy of Paredes' Retention Agreement with CPES-AZ.  [*See also* ECF 942, Exhibit D.]

45.     During his conversations with Faegre Drinker about the CPES ESOP Trustee

position, Mr. Paredes was informed that CPES-AZ was filing this bankruptcy proceeding.  Attached

as Exhibit "6" to the accompanying McNutt Declaration is a true and correct copy of Paredes'

9
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

August 5, 2020, e-mail with Jeremy Pelphrey of Faegre Drinker.  [*See also* ECF 942, Exhibit A;
ECF 963-1; ECF 968-1.]

46.    Debtors instituted these proceedings eight days after hiring Mr. Paredes.  [ECF 1.]

47.    Mr. Paredes is a creditor of this Estate.  He filed Proof of Claim 275 with respect to
his $13,000 annual fee for 2020, a pre-petition obligation of the Debtor. [*See* Proof of Claim 275.]

48.    Mr. Paredes did not review or otherwise monitor the Debtors' management's decision
to institute these proceedings before the voluntary petitions were filed.

49.    Mr. Paredes did not approve of the Debtors' management's decision to institute these
proceedings before the voluntary petitions were filed, and did not conduct an analysis of whether the
filing of these proceedings were solely in the best interests of the CPES ESOP participants and
beneficiaries.

50.    Mr. Paredes, however, was aware that Debtors' management was trying to liquidate
the Debtors.  For example, Mark Monson, Debtors' Chief Executive Officer (CEO), testified at the
June 18, 2020, continued 341(a) meeting of creditors as follows:

> Q. And is the ESOP trustee been involved in any of the discussions with
> CohnReznick and/or whoever this suitor is that you're not willing to publicly
> disclose right now?
> A. Yes, the trustee is aware of the one potential offer.
> Q. Has he been involved in the discussions?
> A. I would defer to counsel.
> Q. Are you saying you don't know or you just want the lawyer to answer for you?
> A. The lawyer is the one that's been working on this arrangement, so I would like
> the lawyer to respond to the question.
> Q. Well, have you been involved -- have you been involved in any conversations
> with the trustee?
> A. Yes, I have.
> Q. ESOP trustee? And have you discussed the details of these potential offers
> with Mr. Perretes [Paredes]?
> A. Not at this point.
> Q. So he doesn't know any details. He just knows that there's an offer out there or
> potential offer out there, is that what you're saying?
> A. I'm saying the request needs to be directed to our attorney.
> Q. I'm just asking what you discussed with the trustee. You're on the board of
> directors, right?
> A. Yes.

10
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

1

2    Faegre Drinker and the U.S. Trustee (Mr. Fittipaldi) thereafter prevented Mr. Monson from

3    answering the questions.  Attached as Exhibit "7" to the accompanying McNutt Declaration is a

4    copy of the relevant excerpts from the Transcript of June 18, 2020, Continued 341(a) Meeting of

5    Creditors.  *See* Exhibit 7, at 50:15-51:15.  (Mr. Paredes did not appear at the May 28, 2020, or June

6    18, 2020 Meetings of Creditors.  He delegated such duties to two of his colleagues at Prudent

7    Fiduciary, Ty Fukumoto and/or Paul Zielinski.)

8          51.     Despite instituting these proceedings for the purpose of liquidating the Debtors, either

9    through a stock sale or an asset sale, there was no provision in the entire bankruptcy process to

10   conduct a direction pass-through vote required under the CPES ESOP Plan Document, ERISA,

11   applicable state law, and the Internal Revenue Code of 1986, as amended (the "Code"), so that the

12   CPES ESOP participants and beneficiaries could vote and direct the CPES ESOP Trustee how to

13   vote with respect to the proposed liquidation of the Debtors and the sale of their assets.

14         52.     California law "attempt[s] to treat all methods of corporate fusion identically" in

15   order to prevent the "circumvention of shareholders' voting and appraisal rights".  *See Jewel*

16   *Companies, Inc. v. Pay Less Drug Stores NW., Inc.*, 741 F.2d 1555, 1561 n.7 (9th Cir. 1984);

17   *Hurtado*, 2018 U.S. Dist. LEXIS 118128, at *19.  As such, there is no difference between a

18   shareholder vote required for a stock sale, an asset sale, or the filing of a voluntary petition in

19   bankruptcy for the liquidation of a corporation.  *See id*.  Indeed, the Debtors' management's decision

20   to file these voluntary petitions requires greater scrutiny and a direction pass-through vote of the

21   shareholders than would a shareholder vote for an asset sale or stock sale given the ability of a

22   bankruptcy court to determine such a vote unnecessary for a sale of assets within such a proceeding

23   or a vote upon confirmation of a plan of liquidation.

24         53.     As a result of their Rule 2004 Motion and continued diligence in obtaining the

25   attachments to the e-mails initially produced by Paredes and Tucker Ellis without attachments, the

26   Individual CPES ESOP Participants learned that Paredes and Faegre Drinker executed a conflict of

27   interest waiver.  Attached as Exhibit "8" to the accompanying McNutt Declaration is a true and

28

11

CASE NO. 9:20-BK-10554-DS

Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

correct copy of the conflict of interest waiver, dated August 12, 2020, and executed by Mr. Paredes

on August 13, 2020.  [*See also* ECF 963-1; ECF 968-1.]

        54.     The conflict of interest waiver letter, dated August 12, 2020, provides, in pertinent

part, as follows:

> "This letter is **following-up our telephone conversation of April 13, 2020** during which I informed you that we represent Community Provider of Enrichment Services, Inc. (the 'Company') **in various matters**, including a potential sale of the Company and any financial restructuring that may result. I also informed you the Company was considering engaging you to act as trustee of the Community Provider of Enrichment Services, Inc. Employee Stock Ownership Trust, and the accompanying Community Provider of Enrichment Services, Inc. Employee Stock Ownership Plan (the 'ESOP'). The Company thereafter engaged your services to act as trustee of the ESOP. **As you know, we represent you in other matters relating to employee stock ownership plan transactions; however, we will not be representing you in any matter with the Company. This may involve a conflict of interest, and the firm could not continue to undertake the representation without both clients consent**.

> We do not believe that our representation of the Company regarding the potential sale of the Company or any financial restructuring that may result **will adversely affect our representation of you in other matters in which we represent you**. We discussed this more fully on our telephone conversation of April 13, 2020. The matters that we represent you are transactional in nature and do not pertain to the Company. **However, we ask that you acknowledge your express and informed consent to our continued representation of the Company**.

> **By giving your consent, you acknowledge that we have made full disclosure to you of the facts and circumstances surrounding any conflict of interest or potential conflict which may exist now or in the future with regard to our representation of the Company.**

> We are also requesting the Company to consent to our continuing representation of you in matters in which your interests do not conflict with those of the Company and we will not continue the representation of the Company unless we obtain that consent.

> **Despite any such conflict which may exist, you hereby agree to our continued representation of the Company**. You further agree to our right to withdraw our continued representation if, in our opinion, it might violate applicable rules of professional conduct."

Exhibit 8 at p. 1 (emphasis supplied).

CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

55.    Mr. Paredes, as CPES ESOP Trustee, controls the Debtors.  For example, the 2017 year-end valuation of the Debtors that underlies the 2017 year-end Form 5500 filing (accepted by the predecessor CPES ESOP Trustee), applies a "control premium" to the 2017 valuation. To that end the 2017 valuation provides, in pertinent part, as follows:

"ADJUSTMENTS BASED ON CONTROL FACTORS

Non-controlling interests in companies are typically less valuable on a per share basis than a controlling interest with all other things being equal. An adjustment for lack of control is defined as:

An amount or percentage deducted from the pro rata share of value of one hundred percent (100%) of an equity interest in a business to reflect the absence of some or all of the powers of control.

An analysis of merger transactions reveals that controlling interests acquired in mergers typically sell at a premium from their respective publicly traded minority price. The observed premiums suggest that a discount would be applicable when valuing equity interests using methods that result in a control indication of value. There are many reasons why a control position in a company is typically worth more on a pro-rata basis than a minority position. Some of these reasons are embodied in the rights of controlling shareholders that can:

♦  Elect directors
♦  Select and/or remove management
♦  Set dividend policies
♦  Establish compensation and benefits
♦  Set corporate strategies and goals
♦  Acquire and liquidate assets
♦  Self-dissolve, or recapitalize the company
♦  Revise articles of incorporation and bylaws
♦  Establish or change buy-sell agreements or clauses
♦  Go public
♦  Acquire or merge with another company"

Attached as Exhibit "9" to the accompanying McNutt Declaration is a true and correct copy of the Appraisal Report of CPES, Tucson, Arizona, Valued as of December 31, 2017", issued on April 30, 2018 (the "2017 Appraisal"). *See* Exhibit 9 at p. 104 (Bates PAREDES-0000112).

56.    The 2017 Appraisal also provides:

Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

> An investor typically perceives certain quantitative and qualitative advantages to owning a controlling equity interest as opposed to a non-controlling equity interest. Quantitatively, a control owner can dictate the available cash flow by setting levels of compensation and perquisites, determine the capital structure of a company, and dictate other similar discretionary items. Qualitatively, the controlling owner can set policy, elect the board of directors, and change organizational documents. In determining our preliminary controlling per share value of the Company we did not make any adjustments to the earnings or cash flows representing quantitative control benefits. Therefore, we added a control premium of 15% to the preliminary indication of value for CPES, representing the quantitative and qualitative control benefits.

*Id.*, at p. 105 (PAREDES-0000113) (emphasis supplied).

57.     The Debtors' management obviously adopted the 2017 Appraisal for purposes of the related Form 5500 filing. Teresa Thienhaus, an ERISA fiduciary, signed the 2017 CPES ESOP Form 5500 on behalf of the Debtors.  Attached as Exhibit "10" to the accompanying McNutt Declaration is a true and correct copy of the CPES ESOP's 2017 Form 5500 from the U.S. Department of Labor's E-FAST2 website.

58.     The Debtors' management and Mr. Paredes were fully aware of Mr. Paredes' control over the Debtors. Attached as Exhibit "11" to the accompanying McNutt Declaration is a true and correct copy of the September 30, 2020, e-mail from Mary Lynn Greenhow to Mr. Paredes, copy to Douglas Zimmerman, David Johnson, Mark Monson and Tiki Thompson, with respect to the November 2, 2020, meeting of the CPES Board of Directors.[2] Among the questions that Ms. Greenhow and the other members of the board of directors had of Mr. Paredes were the following:

> "Describe the close out process for an ESOP that has gone bankrupt and handing things over to the Trustee? Describe the Board of Directors structure after 12/31/20.
> What will you charge over time?
> If there are distributions to be made, do shareholders need to do anything to receive that money?
> What ongoing support does the Trustee need from the organization? If there is a dedicated individual…"

---

[2] Paredes has not produced the responsive e-mail, if one exists, or the minutes of the board of directors' meeting, if such minutes were e-mailed to him.

CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

Exhibit 11 at p. 1 (PAREDES-0002100).

59.    The CPES Board of Directors knew that Mr. Paredes technically and legally controlled the makeup of the Debtors' Board of Directors and other policy matters with respect to the Debtors.

60.    11 U.S.C. § 101(31)(B)(iii) defines an insider of a corporate debtor as a person in control of the debtor.  Mr. Paredes is such an insider.  The CPES ESOP paid a premium for such control.

61.    Faegre Drinker did not disclose in this proceeding the following conflict of interest (as described in detail above in the conflict waiver letter) – the fact of Faegre Drinker's prior and continuing representation of Mr. Paredes and/or Prudent Fiduciary, or the nature and scope of such representation of Mr. Paredes and/or Prudent Fiduciary.  This failure includes the failure to disclose the ongoing financial relationships between Faegre Drinker and Mr. Paredes and Prudent Fiduciary.

62.    Nobody disclosed to the CPES ESOP participants and beneficiaries the fact of Faegre Drinker's representation of Paredes and/or Prudent Fiduciary or the nature and scope of such representation of Mr. Paredes and/or Prudent Fiduciary.  This failure to disclose included the failure to disclose the ongoing financial relationships between Faegre Drinker and Mr. Paredes and Prudent Fiduciary.  The Individual CPES ESOP Participants spent months attempting to obtain this information from Mr. Paredes and Prudent Fiduciary and the Debtors, Faegre Drinker, Mr. Paredes, Prudent Fiduciary, and Mr. Paredes' legal counsel fought very hard to prevent them from obtaining this conflict of interest information.  It is specifically noteworthy that there were no disclosures made about the relationships between Faegre Drinker and Mr. Paredes and Prudent Fiduciary in the Disclosure Statement approved by this Court.

## IV.    LEGAL ARGUMENT

63.    Pursuant to section 1109(b) of the Bankruptcy Code, a party in interest may raise and may appear and be heard on any issue in a case under this chapter.  11 U.S.C. § 1109(b).

64.    The Individual CPES ESOP Participants are parties-in-interest herein and have

15

Case No. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

standing to bring this Motion.

65.     Faegre Drinker represents the Debtors and represents "in other matters" the CPES ESOP Trustee (Mr. Paredes), an insider and a creditor.

66.     The Bankruptcy Code imposes significant restrictions on professionals who are employed or compensated by a bankruptcy estate so as to prevent professionals from representing interests adverse to the Estate.  The overarching goals of these restrictions are to ensure undivided loyalty to the Estate and to preserve public confidence in the fairness of the bankruptcy system. *Sundance*, 482 B.R. at 624-25.

67.     "[T]he [debtor-in-possession], with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor-in-possession] in carrying out the [debtor-in-possession]'s duties under this title."  *Sundance*, 482 B.R. at 625 (citing 11 U.S.C. § 327(a) and 11 U.S.C. § 1107(a); *see also DeRonde v. Shirley (In re Shirley)*, 134 B.R. 940, 943 (BAP 9th Cir. 1992) (holding that 11 U.S.C. § 327 "is made equally applicable to a debtor in possession as it is to a trustee by § 1107(a)")).

68.     The dual requirement that professionals representing trustees and debtors-in-possession may not hold or represent "an interest adverse to the estate" and must be "disinterested persons" does not evaporate once the attorney's employment is approved.  "[T]he need for professional self-scrutiny and avoidance of conflicts of interest does not end upon appointment." *Sundance*, 482 B.R. at 625 n.32 (citing *Rome v. Braunstein*, 19 F.3d 54, 57-58 (1st Cir. 1994)).  This continuing duty to disclose preserves the integrity of the bankruptcy system by ensuring that professionals working for a trustee or debtor-in-possession do not have conflicts at any point during their employment.  *Id*. (citing *In re Granite Partners L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998)).

69.     This Court "may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 . . . if, at any time during such professional person's employment . . . , such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate . . . ."  *Sundance*, 482 B.R. at 625

CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

(citing 11 U.S.C. § 328(c) (emphasis added)).

70.     11 U.S.C. § 328(c) essentially operates as a "penalty" for a professional's failure to avoid a disqualifying conflict of interest.  *Sundance*, 482 B.R. at 625 (citing *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)).

71.     As the Bankruptcy Appellate Panel highlighted in *Raj Kamal*, 2013 Bankr. LEXIS 5305, Rule 2014(a) establishes the procedure for the employment of attorneys and other professionals.  It requires the professional to file an application disclosing, "to the best of the applicant's knowledge, *all of the person's connections with the debtor, creditors, any other party in interest*, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Rule 2014(a) (emphasis supplied).  "This rule assists the court in ensuring that the attorney has no conflicts of interest and is disinterested, as required by 11 U.S.C. § 327(a)."  *Raj Kamal* (citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995)).

72.     The disclosure requirements of Rule 2014 are strictly applied.  *Id*.  "[T]he [professional] has the duty to disclose all relevant information to the court, and may not exercise any discretion to withhold information."  *Id*. (citing *Kun v. Mansdorf (In re Woodcraft Studios, Inc.)*, 464 B.R. 1, 8 (N.D. Cal. 2011) (citing *In re Park-Helena*, 63 F.3d at 880, 882; *In re Coastal Equities, Inc.*, 39 B.R. 304, 308 (Bankr. S.D. Cal. 1984) ("It is the duty of the attorney to reveal all connections.") (citing *In re Haldeman Pipe & Supply Co.*, 417 F.2d 1302, 1304 (9th Cir. 1969); *In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925, 932 (2d Cir. 1979)); *In re Plaza Hotel Corp.*, 111 B.R. 882, 883 (Bankr. E.D. Cal. 1990) ("The duty is one of complete disclosure of all facts."), *aff'd*, 123 B.R. 466 (9th Cir. BAP 1990)).

73.     The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest. . . . They cannot pick and choose which connections are irrelevant or trivial. . . . No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it.  *In re Park-Helena Corp.*, 63 F.3d at 882 (quoting *In re EWC, Inc.*, 138 B.R. 276, 280-81 (Bankr. W.D. Okla. 1992) (other citations

17
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

omitted)).  "The duty to disclose is a continuing obligation as to which the risk of defective disclosure always lies with the discloser."  *In re Kobra Props.*, 406 B.R. 396, 402 (Bankr. E.D. Cal. 2009) (citing *In re Park-Helena Corp.*, 63 F.3d at 880-81; *cf Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 719-20 (Bankr. E.D. Cal. 1992)).

74.    A "[d]isclosure that later turns out to be incomplete can be remedied by denial of fees."  *In re Kobra Props.*, 406 B.R. at 402 (citing *In re Park-Helena Corp.*, 63 F.3d at 880-81); *Raj Kamal*, 2013 Bankr. LEXIS 5305, at *15.

75.    "Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees."  *Raj Kamal*, 2013 Bankr. LEXIS 5305, at *15 (quoting *In re Park-Helena Corp.*, 63 F.3d at 882 (citations omitted)).

76.    The denial of all compensation is appropriate even if the failure to disclose was negligent or inadvertent, and even if some of the fees are based upon benefit to the Estate.  *Raj Kamal*, 2013 Bankr. LEXIS 5305, at *15-16.  This Court is bound by Ninth Circuit precedent.  *See id. (citing Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1077 (9th Cir. 2012)).

77.    As bankruptcy attorneys, Faegre Drinker is aware of the requirements of Rule 2014. It cited the Rule in Debtors' Application for Employment of Faegre Drinker.

78.    Moreover, the term "disinterested person" is defined in the Bankruptcy Code to include one who is not a creditor and "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."  *Sundance*, 482 B.R. at 625 (citing 29 U.S.C. § 101(14) (A) and (C)).  A person who is disinterested "is one that can make unbiased decisions, free from personal interest, in any matter pertaining to the debtor's estate." *Id*. (citing *Shat v. Kistler (In re Shat)*, BAP No. NV-09-1092-MoDK, 2009 Bankr. LEXIS 4547, 2009 WL 7809004, at *6 (BAP 9th Cir. Nov. 25, 2009) (citation omitted) (internal quotation marks omitted).  The goal is to achieve undivided loyalty to a cause that is being administered for the benefit of many.

79.    A generally accepted definition of "adverse interest" is the (1) possession or assertion

18
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate. *Sundance*, 482 B.R. at  625-26 (citing *Dye v. Brown (In re AFI Holding, Inc.) (AFI Holding I)*, 355 B.R. 139, 148-49 (9th Cir. BAP 2006). *See also In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987) (stating that a bankruptcy court must inquire whether the connection created "either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors – an incentive sufficient to place those parties at more than acceptable risk – or the reasonable perception of one")).  "To represent an adverse interest means to serve as an attorney for an entity holding such an adverse interest.  For the purposes of disinterestedness, a lawyer has an interest materially adverse to the interest of the estate if the lawyer either holds or represents such an interest." *Sundance*, 482 B.R. at 626 (citing *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 688 (BAP 9th Cir. 2006) (citations omitted).

80.     The "adverse interest" language under § 327(a) and the "material adverse interest" prong of the "disinterested person" definition under § 101(14) (C) "telescope into what amounts to a single hallmark". *Id.* (citing *Martin*, 817 F.2d at 180).  "This unitary hallmark is designed to filter out conflicts that may jeopardize a fair and equitable administration of the bankruptcy estate.  It is equally important in terms of policy that these rules are also meant to preserve the integrity of the bankruptcy system.  Therefore, in addition to avoiding conflicts detrimental to a particular case, the rules were drafted to avoid conflicts and questionable relationships that had historically cast the bankruptcy system itself in an unfavorable light." *Sundance*, 482 B.R. at 626 (citing *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 747 n.1 (Bankr. N.D. Tex. 1988) (citing legislative history of disinterestedness requirement).

81.     "There can be a disqualifying conflict even absent proof of actual loss or injury." *Sundance*, 482 B.K. at 626 (citing *Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship*, 248 B.R. 668, 695 (D. Mass. 2000).  *See also In re Maui 14K, Ltd.*, 133 B.R. 657, 660 (Bankr. D. Hawaii 1991) (citation omitted) ("Denial of all compensation is justified regardless of actual harm to the estate.").

19
CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

82.     Furthermore, a conflict of interest need not be actual to be disqualifying.  "An actual conflict mandates disqualification of a professional to serve in a bankruptcy case.  A potential conflict also provides sufficient grounds for a court to deny a professional's employment."  *Shat*, 2009 Bankr. LEXIS 4547, 2009 WL 7809004, at *6 (citation omitted); *see also In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236 (Bankr. E.D. Cal. 1988) ("Appearances count.  Even conflicts more theoretical than real will be scrutinized.").

83.     "Indeed, the willingness of courts to leave debtors in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee."  *Sundance*, 482 B.R. at 630 n.44 (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985) (citation omitted) (internal quotation marks omitted).

84.     As fiduciaries, the debtor in possession and its managers, and its counsel are obligated to treat all parties to the case fairly, maximize the value of the estate, and protect and conserve the debtor's property.  These duties parallel those imposed by section 549 [unauthorized post-petition transfers]: to avoid depletion of the estate.  Not surprisingly, therefore, the debtor in possession and the managers and its counsel breach their fiduciary duties when they violate section 549.  *Sundance*, 482 B.R. at 630 n.44 (citing *In re Centennial Textiles*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998) (citations omitted)).

85.     Because the attorney for [a] debtor in possession is a fiduciary of the estate and an officer of the Court, the duty to advise the client goes beyond responding [to] the client's requests for advice.  It requires an active concern for the interests of the estate, and its beneficiaries, the unsecured creditors.  Consequently, the attorney may not simply close his or her eyes to matters having a legal and practical consequence for the estate – especially where the consequences may have an adverse effect.  The attorney has the duty to remind the debtor in possession, and its principals, of its duties under the Bankruptcy Code, and to assist the debtor in fulfilling those duties. *Sundance*; *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 840 (Bankr. C.D. Cal. 1991).

86.     "A decision to disclose a potential conflict of interest should not be left to counsel,

Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

whose judgment may be clouded by the benefits of the potential employment." *Sundance*; *In re Lee*, 94 B.R. 172, 176 (Bankr. C.D. Cal. 1988).

87.    Again, bankruptcy is a realm in which "the paramount requirement [is] that the court act so as to assure public confidence in the integrity of the judicial process". *Kobra Props.*, 406 B.R. at 405.  Here, Faegre Drinker took it upon itself to determine which connections and compensation arrangements to disclose and which not to disclose.  In doing so, Faegre Drinker interfered with this Court's exercise of its duty.  If Faegre Drinker had made the appropriate and required disclosures at the beginning, this Court might well have denied its employment as the Debtors' counsel.  At a minimum, interested parties, including, without limitation, the CPES ESOP participants and beneficiaries, would have had the opportunity to object to a situation fraught with un-waivable conflicts of interest.

## V.    CONCLUSION

WHEREFORE, for the reasons set forth above, the Individual CPES ESOP Participants respectfully requests this Court to enter an Order:

A.    Granting this Motion to Disqualify in its entirety or issuing an Order for Faegre Drinker to show cause why it should not be disqualified as counsel for Debtors in this proceeding, including the Appeal; and

B.    Denying Faegre Drinker's Second and Final Application for Attorneys' Fees and Expenses;

C.    Disgorging any and all attorneys' fees and costs previously paid and ordering such disgorgement payment to be made within fifteen (15) days of the date of the Order to the Liquidating Trustee for the sole purpose of distributing such monies to the CPES ESOP participants and beneficiaries; and

D.    Granting such other and further relief as this Court deems just and proper under the circumstances.

Dated: October 7, 2021

CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

1

2

3

4

5

6

7

8

9

By:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Scott McNutt
SCOTT MCNUTT (CSB 104696)
324 Warren Road
San Mateo, California 94402
Telephone: 415-760-5601
smcnutt@ML-SF.com

and


HAWKINS PARNELL & YOUNG LLP

/s/ David R. Johanson
David R. Johanson (SBN 164141)
Douglas A. Rubel (*Pro Hac Vice*)
1776 Second Street
Napa, CA 94559
Telephone: (707) 299-2470
djohanson@hpylaw.com

*Attorneys for Robert Bennetti, Linda Mariano,
Linki Peddy, and Charles Foust, Jr., and in
excess of 92 Other CPES Employee Stock
Ownership Plan and Trust Participants*

22
CASE No. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support

1

2
## CERTIFICATE OF SERVICE

3
     I hereby certify that on October 7, 2021, I caused the foregoing to be served on the following

4
via this Court's NEF system, which provided notice of same to all parties of record, including the
U.S. Trustee, Debtors' Counsel, and the CPES ESOP Trustee's Counsel.

5

6
                             */s/ Scott McNutt*
                             Scott McNutt

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 9:20-BK-10554-DS
Individual CPES ESOP Participants' Notice of Motion and Motion to Disqualify Faegre Drinker Biddle & Reath LLC
and Request for Issuance of Show Cause Order; Memorandum of Points and Authorities in Support